**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JED WALLACE,** | § | |
| **STREET RELATIONS, INC.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **CASE NO. 1:25-CV-00163-DAE** |
| | § | |
| **BLAKE LIVELY,** | § | |
| | § | |
| **Defendant.** | § | |

---

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION, IMPROPER VENUE, AND FAILURE TO STATE A CLAIM
UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), 12(b)(3), AND 12(b)(6)**

---

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................................ii

TABLE OF AUTHORITIES ......................................................................................................... iv

I.      INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II.     FACTUAL BACKGROUND.............................................................................................. 3

     A.      Wallace Is A "Hired Gun" Who Specializes In Launching "Untraceable Campaigns" To Mitigate His Clients' Public Relations Crises And Shape Public Perception. .................................................................................................. 3

     B.      Plaintiffs Executed A Retaliatory Campaign Against Ms. Lively For Speaking Up About Harassment And Other Misconduct That Occurred On The Set Of The Film. ............................................................................................ 4

     C.      In December 2024, Ms. Lively Filed The CRD Complaint And The New York Litigation Based On The Same Claims Of Sexual Harassment And Retaliation. ............................................................................................................ 7

     D.      Wallace Evaded And Obstructed Ms. Lively's Persistent Efforts To Seek Information From Him Before Filing This Lawsuit In Anticipation Of Becoming A Party In The New York Litigation.................................................... 10

III.    ARGUMENT.................................................................................................................... 12

     A.      PLAINTIFFS' CLAIMS REQUIRE DISMISSAL AS A MATTER OF PROCEDURAL LAW..................................................................................... 12

          1.      Ms. Lively Is Not Subject To Personal Jurisdiction In Texas. ................ 12

               a.      The Rule 202 Petition does not subject Ms. Lively to personal jurisdiction in this case. .................................................. 13

               b.      Personal jurisdiction cannot be premised on Plaintiffs' allegation that Ms. Lively "aimed" statements at Texas or "caused harm in Texas." ............................................................... 15

          2.      The First-To-File Rule Requires Dismissal Of The Complaint In Full. ........................................................................................................... 17

          3.      The Court Should Dismiss This Lawsuit Based On Improper Venue. ....................................................................................................... 20

     B.      FRCP 12(B)(6) REQUIRES DISMISSAL OF BOTH COUNTS FOR FAILURE TO STATE A CLAIM. ...................................................................... 22

          1.      Count One Requires Dismissal Because Declaratory Relief Is Not An Independent Cause of Action. ........................................................... 22

          2.      Count Two Requires Dismissal Because Ms. Lively's Statements Are Subject to California Law and are Privileged, and Plaintiffs Fail to Plead the Basic Elements of Defamation. ................................... 23

a.    Count Two requires dismissal because Plaintiffs fail to adequately plead defamation...........................................................23

i.     Plaintiffs have not identified any specific defamatory statements. ......................................................24

ii.    Ms. Lively's inclusion of Plaintiffs in a pleading caption page cannot support a claim for defamation by implication. ...............................................24

iii.   Plaintiffs fail to plead fault. .............................................26

iv.    Plaintiffs fail to adequately allege that they suffered damages attributable to the CRD Form and CRD Complaint. .........................................................28

b.    Count Two must be dismissed because the CRD Form and CRD Complaint constitute protected speech under the California law...................................................................28

i.     California law applies to render the CRD Form and CRD Complaint privileged and therefore nonactionable. ...............................................................29

ii.    The litigation privilege provides absolute protection for all statements contained within the CRD Form and CRD Complaint. .....................................31

iii.   The fair report privilege bars any claims based on provision of the CRD Form and CRD Complaint to the media. ...................................................................32

iv.    The sexual harassment privilege protects Ms. Lively's allegedly defamatory statements whether made in legal filings, to the media, or to others. ............33

IV.    CONCLUSION..............................................................................35

CERTIFICATE OF SERVICE ........................................................................36

# TABLE OF AUTHORITIES

**Cases**             **Page(s)**

*Abraham v. Lancaster Cmty. Hosp.*,
217 Cal. App. 3d 796 (1990) ..............................................................................33

*Action Apartment Assn., Inc. v. City of Santa Monica*,
41 Cal. 4th 1232 (2007) ......................................................................................31

*Anderson v. Durant*,
550 S.W.3d 605 (Tex. 2018)................................................................................28

*Anderson v. Holder*,
673 F.3d 1089 (9th Cir. 2012)..............................................................................35

*Argentieri v. Zuckerberg*,
8 Cal. App. 5th 768 (2017) ..................................................................................33

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024)..................................................................23

*Bennett v. Zucker*,
No. 05-19-01445-CV, 2021 WL 3701365 (Tex. App.—Dallas Aug. 20, 2021,
pet. denied) (mem. op.)........................................................................................14

*Block v. Barnes*,
No. 1:22-CV-869-LY, 2023 WL 2732552 (W.D. Tex. Mar. 30, 2023)
(Howell, M.J.) ......................................................................................................17

*Brown v. Kelly Broad. Co.*,
48 Cal. 3d 711 (1989) ..........................................................................................28

*Cadle Co. v. Whataburger of Alice, Inc.*,
174 F.3d 599 (5th Cir. 1999) ...................................................................17, 18, 19

*Calder v. Jones*,
465 U.S. 783 (1984)..............................................................................................15

*Caress v. Fortier*,
576 S.W.3d 778 (Tex. App.—Houston [1st Dist.] 2019, pet. denied)....................14

*Centex Homes v. St. Paul Fire & Marine Ins. Co.*,
237 Cal. App. 4th 23 (2015) ................................................................................23

*Chapa v. Mitchell*,
No. A-05-CV-769-JN, 2005 WL 2978396 (W.D. Tex. Nov. 4, 2005)...................19

*City of Reno v. Netflix, Inc.*,
   52 F.4th 874 (9th Cir. 2022) .......................................................................................22

*Clemens v. McNamee*,
   615 F.3d 374 (5th Cir. 2010) .......................................................................................15

*Cruey v. Gannett Co.*,
   64 Cal. App. 4th 356 (1998) ........................................................................................31

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).....................................................................................................12

*Dallas Morning News, Inc. v. Tatum*,
   554 S.W.3d 614 (Tex. 2018).........................................................................................24

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*,
   24 F.4th 491 (5th Cir. 2022) .......................................................................................16

*Doe v. Apostolic Assembly of Faith in Christ Jesus*,
   452 F. Supp. 3d 503 (W.D. Tex. 2020).........................................................................29

*Dog & Rooster, Inc. v. Green*,
   No. D077102, 2021 WL 1015814 (Cal. App. Mar. 17, 2021)....................................28

*Duncan v. Cessna Aircraft Co.*,
   665 S.W.2d 414 (Tex. 1984).........................................................................................30

*Eliott v. Lions Gate Ent. Corp.*,
   639 F. Supp. 3d 1012 (C.D. Cal. 2022) .......................................................................26

*Epic Tech, LLC v. Arno Res., LLC*,
   No. 1:20-CV-577-LY, 2020 WL 5351078 (W.D. Tex. Sept. 4, 2020)...................................20

*Epstein v. Gray Television, Inc.*,
   No. 06-CV-431-WRF, 2007 WL 295632 (W.D. Tex. Jan. 5, 2007) ................................23, 24

*Farias v. Garza*,
   426 S.W.3d 808 (Tex. App.—San Antonio 2014, pet. denied) ...............................28

*Fielding v. Hubert Burda Media, Inc.*,
   415 F.3d 419 (5th Cir. 2005) ................................................................................15, 16

*For the Gusto Motorsports, Inc. v. Lane*,
   No. 3:16-CV-1074-L, 2017 WL 896898 (N.D. Tex. Mar. 7, 2017) .......................................18

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021)......................................................................................................15

*Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co., L.P.*,
No. CIV. A. H-07-637, 2007 WL 5186798 (S.D. Tex. Sept. 11, 2007) .................................22

*Gateway Mortg. Grp., L.L.C. v. Lehman Bros. Holdings, Inc.*,
694 F. App'x 225 (5th Cir. 2017) ......................................................................................18

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)............................................................................................................26

*Green v. Cortez*,
151 Cal. App. 3d 1068 (1984) ...........................................................................................33

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
921 F.3d 522 (5th Cir. 2019) .............................................................................................13

*Harper v. Lugbauer*,
No. C 11-01306 JW, 2012 WL 1029996 (N.D. Cal. Mar. 15, 2012) .................................32

*Harris v. King*,
60 Cal. App. 4th 1185 (1998) ............................................................................................32

*Hart v. Donostia LLC*,
290 F. Supp. 3d 627 (W.D. Tex. 2018)..........................................................................18, 19

*Healthsmart Pac., Inc. v. Kabateck*,
7 Cal. App. 5th 416, *as modified* (Jan. 10, 2017) .......................................................32, 33

*Herman v. Cataphora, Inc.*,
730 F.3d 460 (5th Cir. 2013) .............................................................................................17

*Huntsman Corp. v. Int'l Risk Ins. Co.*,
No. 1:08-cv-029, 2008 U.S. Dist. LEXIS 33242 (E.D. Tex. Apr. 22, 2008)......................18

*Immanuel v. Cable News Network, Inc.*,
No. 4:21-CV-00587, 2022 WL 1748252 (E.D. Tex. May 31, 2022) .............................17, 21

*Issa v. Applegate*,
31 Cal. App. 5th 689 (2019) ..............................................................................................24

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
854 F.3d 797 (5th Cir. 2017) .............................................................................................24

*Johnson v. City of Loma Linda*,
24 Cal. 4th 61 (2000) .........................................................................................................18

*Johnson v. TheHuffingtonPost.com, Inc.*,
21 F.4th 314 (5th Cir. 2021) ........................................................................................13, 14

*Kaelin v. Globe Commc'ns Corp.*,
162 F.3d 1036 (9th Cir. 1998) .................................................................................24

*KCCR, Inc. v. Brunner*,
No. H-10-cv-01263, 2010 WL 4236868 (S.D. Tex. Oct. 21, 2010) ...................................18, 19

*Kinetic Concepts, Inc. v. Connetics Corp.*,
No. CIV.A.SA-04-CA0237XR, 2004 WL 2026812 (W.D. Tex. Sept. 8, 2004) .....................19

*Lalla v. G&H Towing Co.*,
No. CV SA-19-CA-0542-FB, 2019 WL 11626516 (W.D. Tex. July 26, 2019)................20, 21

*U.S. ex rel Lam v. Tenet Healthcare Corp.*,
481 F. Supp. 2d 673 (W.D. Tex. 2006)........................................................................9

*Lively v. Wayfarer Studios LLC, et al*,
No. 1:24-cv-10049-LJL .......................................................................................2

*Mann Mfg. v. Hortex, Inc.*,
439 F.2d 403 (5th Cir. 1971) .................................................................................18

*Med. Marijuana, Inc. v. ProjectCBD.com*,
46 Cal. App. 5th 869 (2020) .................................................................................24

*Metabolife Int'l, Inc. v. Wornick*,
264 F.3d 832 (9th Cir. 2001) .................................................................................26

*Microsoft v. Yokohama Telecom Corp.*,
993 F. Supp. 782 (C.D. Cal. 1998) ...........................................................................33

*Mission Ins. Co. v. Puritan Fashions Corp.*,
706 F.2d 599 (5th Cir. 1983) .................................................................................20

*Montoya Frazier v. Maxwell*,
No. 02-23-00103-CV, 2025 WL 494699 (Tex. App.—Fort Worth Feb. 13,
2025, no pet. h.) (en banc) .................................................................................14

*Morales v. Coop. of Am. Physicians, Inc., Mut. Prot. Tr.*,
180 F.3d 1060 (9th Cir. 1999) .................................................................................31

*Newton v. Nat'l Broad. Co.*,
930 F.2d 662 (9th Cir. 1990) .................................................................................27

*Nicosia v. De Rooy*,
72 F. Supp. 2d 1093 (N.D. Cal. 1999) .........................................................................27

*Novak Druce Connolly Bove & Quigg, LLP v. Arochi*,
No. H-18-3490, 2019 WL 4222700 (S.D. Tex. Sept. 5, 2019)..............................................19

*Nutall v. Juarez*,
  984 F. Supp. 2d 637 (N.D. Tex. 2013) ..................................................................21, 22

*Obsidian Fin. Grp., LLC v. Cox*,
  740 F.3d 1284 (9th Cir. 2014) ..............................................................................26, 28

*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001) (en banc) ....................................................................22

*Orix Credit All., Inc. v. Wolfe*,
  212 F.3d 891 (5th Cir. 2000) .....................................................................................22

*Owens v. Wells Fargo Bank, N.A.*,
  No. C 09-3354 PJH, 2009 WL 3353313 (N.D. Cal. Oct. 16, 2009) ..........................22

*PaineWebber Inc. v. Chase Manhattan Priv. Bank (Switzerland)*,
  260 F.3d 453 (5th Cir. 2001) .....................................................................................13

*Paragon Indus., L.P. v. Denver Glass Mach., Inc.*,
  No. CIV.A. 3-07CV2183-M, 2008 WL 3890495 (N.D. Tex. Aug. 22, 2008) ...........21

*Pollock v. Tri-Modal Distribution Servs., Inc.*,
  11 Cal.5th 918, 491 P.3d 290 (2021) ..........................................................................8

*Randall D. Wolcott M.D., P.A. v. Sebelius*,
  635 F.3d 757 (5th Cir. 2011) .......................................................................................2

*Roe v. Patterson*,
  No. 23-40281, 2024 WL 1956148 (5th Cir. May 3, 2024).........................................24

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999)....................................................................................................12

*Russo v. Barnard*,
  No. 3:21-cv-165, 2021 WL 5567380 (S.D. Tex. Nov. 29, 2021) ..............................21

*Sanbourn v. Chronicle Pub. Co.*,
  18 Cal. 3d 406 (1976) ................................................................................................26

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
  882 F.3d 96 (5th Cir. 2018) .......................................................................................17

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997) .....................................................................................18

*Schilling v. Rogers*,
  363 U.S. 666 (1960).....................................................................................................22

**D<span>EFENDANT</span>'<span>S</span> M<span>OTION TO</span> D<span>ISMISS</span>**                                                                              viii

*Sealed Appellant 1 v. Sealed Appellee 1*,
    625 Fed. App'x. 628 (5th Cir. 2015) ...................................................................15

*Seidenstein v. Nat'l Med. Enterprises, Inc.*,
    769 F.2d 1100 (5th Cir. 1985) ..........................................................................27

*Shell Oil Co. v. Writt*,
    464 S.W.3d 650 (Tex. 2015)..............................................................................31

*Special Quality Alloys, Inc. v. Coastal Mach. & Supply, Inc.*,
    No. 4:22-CV-04258, 2023 WL 7412945 (S.D. Tex. Nov. 9, 2023) .......................................14

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) ....................................................................................26

*Tex. v. Real Parties In Interest*,
    259 F.3d 387 (5th Cir. 2001) ............................................................................14

*TK Holdings, Inc. v. Ordonez*,
    No. 1:17-CV-250-LY, 2017 WL 2923829 (W.D. Tex. July 6, 2017) ...................................20

*Todd v. Lovecruft*,
    2020 WL 60199 (N.D. Cal. Jan. 6, 2020) ........................................................26, 28

*Torrington Co. v. Stutzman*,
    46 S.W.3d 829 (Tex. 2000)...............................................................................29

*Tyson v. Austin Eating Disorders Partners, LLC*,
    No. A-13-CA-180-SS, 2013 WL 4774757 (W.D. Tex. Aug. 30, 2013)...............................27

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA,
    AFL-CIO*, 751 F.2d 721, 728-29 (5th Cir. 1985)..................................................17

*Walden v. Fiore*,
    571 U.S. 277 (2014).......................................................................................16

*Walker v. Beaumont ISD*,
    938 F.3d 724 (5th Cir. 2019) ...........................................................................32

*Wentworth v. Hemenway*,
    No. A154511, 2019 WL 2368520 (Cal. App. June 5, 2019), *as modified on
    denial of reh'g* (July 1, 2019) .........................................................................33

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) ..............................................................27

**Statutes**

28 U.S.C. § 1391(b)(2) ..................................................................................20, 21

Cal. Civ. Code § 47 ............................................................................................ *passim*

Cal. Civ. Code § 47.1 ......................................................................................... *passim*

Cal. Civ. Code § 48a ..........................................................................................26, 27

Cal. Civ. Code § 51.9 ..............................................................................................34

Cal. Code Civ. Proc. § 425.16(b)(1), (c)(1) ...........................................................31

Tex. Civ. Prac. & Rem. Code § 73.002(a) ..............................................................32

**Other Authorities**

Cal. Rule of Court 2.111 .....................................................................................1, 25

Fed. R. Civ. Proc. 12(b)(2) ...........................................................................1, 12, 17

Fed. R. Civ. Proc. 12(b)(3) .............................................................................1, 2, 20

Fed. R. Civ. Proc. 12(b)(6) .............................................................................1, 2, 22

Megan Twohey, et al., *'We Can Bury Anyone': Inside a Hollywood Smear
     Machine*, THE NEW YORK TIMES, Dec. 21, 2024 .......................................................9

Restatement (Second) of Conflicts of Law § 145 ....................................................29

Restatement (Second) of Conflict of Laws § 6 cmt. e .............................................31

Restatement (Second) of Torts, § 611, cmt. c .........................................................32

Tex. R. Civ. P. 202.1 ...............................................................................................14

Defendant Blake Lively files this Motion to Dismiss Plaintiffs' Complaint for Declaratory Judgment and Defamation ("Complaint") pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure ("FRCP") for lack of personal jurisdiction, the First-to-File Rule, FRCP 12(b)(3) for improper venue, and FRCP 12(b)(6) for failure to state a claim.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This case is a sham designed solely to harass and retaliate against Blake Lively for exercising her right to seek legal redress for workplace sexual harassment and retaliation. In December 2024, Ms. Lively filed an administrative complaint with the California Civil Rights Department, which alleges, *inter alia*, that Plaintiff Jed Wallace ("Wallace"), by and through his company Street Relations, Inc. ("Street") (collectively, "Plaintiffs"), aided and abetted a malicious "social manipulation" campaign against Ms. Lively, designed to harm her reputation and undermine her credibility in retaliation for her raising concerns about sexual harassment and other misconduct on the set of the film *It Ends With Us* (the "Film"). Dkt. 1 ¶¶ 5-6; Dkt. 1-2 ("CRD Complaint") ¶¶ 18, 121, 139. The allegations in the CRD Complaint against Plaintiffs are clear, unambiguous, and include extensive and verbatim statements in *their conspirators' own words*, including text and email images. Plaintiffs assert that they were "defamed" because the caption page of the CRD Complaint—which lists all parties on the left side and all alleged causes of action on the right side, as is the *standard format* for cases in California (*see* Cal. Rule of Court 2.111)— caused some "confusion" with the public about who and for what conduct Ms. Lively was suing. Dkt. 1 ¶ 9. But Plaintiffs' claims based on this specious theory fail as a matter of law and require dismissal for multiple, independently fatal reasons.

Dismissal of the Complaint in its entirety with prejudice is first warranted based on incurable procedural grounds. The Court cannot, consistent with constitutional due process and FRCP 12(b)(2), exercise jurisdiction over Plaintiffs' claims because Ms. Lively is not subject to

DEFENDANT'S MOTION TO DISMISS                                                                                    1

personal jurisdiction in Texas. Ms. Lively is a resident of New York and has not availed herself of this state, including because she did not target it when she chose to exercise her First Amendment right to initiate the CRD Complaint and identify Plaintiffs in its caption, which is an administrative pre-requisite to filing such employment claims in California.

Even if the Court has jurisdiction over Ms. Lively, the First-To-File Rule requires the Court to decline to exercise jurisdiction over Plaintiffs' claims because they substantially (if not entirely) overlap with pre-existing litigation that Ms. Lively initiated in federal court in New York on December 31, 2024. Dkt. 1 ¶ 18; *see Lively v. Wayfarer Studios LLC, et al*, No. 1:24-cv-10049-LJL (collectively, with the consolidated case No. 1:25-cv-00449, "NY Litigation").[1]  Plaintiffs *admit* they filed this lawsuit in anticipation of and to avoid being named in the NY Litigation—which occurred when Ms. Lively filed an amended complaint in that action on February 18, 2025 that named both Plaintiffs as defendants[2]—and the Court should reject Plaintiffs' blatant forum shopping and attempt to divest the first-filed court in New York of its rightful jurisdiction over the claims.  Finally, FRCP 12(b)(3) separately necessitates dismissal because Plaintiffs admit that a substantial part of the events giving rise to his claims did not occur in this District.

Even if *arguendo* Plaintiffs could overcome the substantial jurisdictional and venue defects, both causes of action should be dismissed under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. The Complaint's first count, which is a claim for declaratory relief, requires dismissal because the law does not recognize such as an independent cause of action.  The second count, for defamation, also requires dismissal for multiple independently fatal

---

[1] All references to the NY Litigation docket refer to case No. 24-cv-10049 except where otherwise noted.

[2] *See* Amended Complaint, NY Litigation, Feb. 18, 2025, Dkt. 84, Ex. A ¶ 217. The Court can take judicial notice of all court filings referenced in this Motion. *See Randall D. Wolcott M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

reasons. Plaintiffs have not and cannot plausibly allege that the inclusion of their names in its caption, standing alone, gives rise to a defamation by implication claim. Nor have Plaintiffs properly pleaded that Ms. Lively made the statements contained in the CRD Complaint with actual malice or negligence, or that Ms. Lively, as opposed to Plaintiffs' own conduct, directly caused the "millions" in damages sought. Moreover, the CRD Complaint cannot serve as the basis of a defamation claim because it is a legal pleading protected by multiple privileges, including the litigation, fair report, and sexual harassment privileges. The Court should thus dismiss Plaintiffs' meritless claims with prejudice.

## II.  FACTUAL BACKGROUND

### A.    Wallace Is A "Hired Gun" Who Specializes In Launching "Untraceable Campaigns" To Mitigate His Clients' Public Relations Crises And Shape Public Perception.

Wallace is a consultant and owner of Street, which provides "crisis mitigation" services to high-profile clients. Dkt. 1 ¶ 2. Wallace is a self-described "hired gun" with a "proprietary formula for *defining* artists and trends." Ex. A ¶ 217. He claims to help his clients "navigate real-life human crisis [and]. . . threats," among other things. Dkt. 1 ¶ 2. Wallace specializes in confidential and untraceable campaigns across various social media platforms (*i.e.* TikTok, Instagram, Reddit, X) to shape public perception of his clients and their adversaries. Ex. A ¶ 217. Wallace and Street joined the Wayfarer Parties' conspiracy to serve as their digital operatives, carrying out the conspiracy's objectives through digital manipulation and "social combat."

Although Plaintiffs allege that Wallace "resides within" this District, Wallace has lived in California and has business ties there.[3] For example, Street has been organized under the laws of California since 2008 and throughout the time the operative facts of this case occurred.[4] Dkt. 1 ¶

---

[3] *See* Affidavit of Kelly Murski, Process Server, January 30, 2025, Ex. B; Affidavit of Aaron Camp, Process Server, February 3, 2025, Ex. C (listing 10 California cities).
[4] *See* Articles of Incorporation, Secretary of State of the State of California, Aug. 29, 2008, Ex. D.

DEFENDANT'S MOTION TO DISMISS                                                                3

3. Not until filing this Complaint, and before responding to the Complaint in the NY Litigation, did Wallace convert Street into a Texas corporation.[5]

**B.    Plaintiffs Executed A Retaliatory Campaign Against Ms. Lively For Speaking Up About Harassment And Other Misconduct That Occurred On The Set Of The Film.**

Ms. Lively is an actress and entrepreneur who resides in New York, New York. Dkt. 1 ¶ 4. Ms. Lively starred in the 2024 hit film, *It Ends With Us* (the "Film"), which Justin Baldoni ("Baldoni") directed and his movie studio, Wayfarer Studios, LLC ("Wayfarer"), produced and owns. Notwithstanding that Baldoni was Ms. Lively's boss (Ex. A ¶ 2), the CRD Complaint alleges that he and Wayfarer's Chief Executive Officer, Jamey Heath ("Heath"), subjected Ms. Lively and others on set to a pattern of unprofessional and sexually harassing behavior. Dkt. 1-2 ¶¶ 1, 3, 28-51. For example, the CRD Complaint alleges that Baldoni: divulged information about his sex life; made derogatory, degrading, and sexual comments; described his own genitalia; improvised unwanted intimacy that had not been rehearsed, choreographed, or discussed with Ms. Lively in advance; added graphic content to the script, including multiple new scenes with nudity, an on-camera orgasm, and added unscripted nudity to a birthing scene for which he cast his friend as Ms. Lively's OBGYN. Dkt. 1-2 ¶¶ 28-51. This is only a partial list of the misconduct alleged.  Dkt. 1-2.  Ms. Lively and others on set raised concerns about this behavior, which resulted in a contractual rider that included 17 specific protections (the "Protections for Return to Production") to ensure a safe set for the cast and crew when they returned to work after the conclusion of the strikes. Dkt. 1-2 ¶¶ 2, 29, 56-77.  The Protections for Return to Production included, among other things, a contractual mandate that Baldoni, Heath, Wayfarer, and others not retaliate against Ms. Lively "for raising concerns or requesting safeguards." Dkt. 1-2 ¶ 73(h).

---

[5] *See* Certificate of Conversion, Street Relations, Inc., State of Texas, February 5, 2025, Ex. E; Certificate of Conversion, Street Relations, Inc., State of California, February 6, 2025, Ex. F.

In the summer of 2024—as the Film's New York premiere neared—Baldoni became concerned that Ms. Lively would speak publicly about the hostile environment she and others faced on set. Dkt. 1-2 ¶ 83. Baldoni and Heath enlisted a number of co-conspirators, including (i) Mr. Baldoni's billionaire partner Steve Sarowitz, who promised to spend "$100 million" to ruin Ms. Lively's and her family's lives (*Id.* ¶ 8); (ii) Wayfarer Studios and It Ends With Us Movie LLC (together, with Baldoni, Heath, and Sarowitz, the "Wayfarer Parties"); (iii) Melissa Nathan and her company The Agency Group PR LLC ("TAG"), and (iv) Jennifer Abel. *Id.* ¶¶ 9, 98-99. On August 2, 2024, Nathan delivered a proposal to Baldoni, which included "[a] website (to discuss), full reddit, full social account take downs, full social crisis team on hand for anything – engage with audiences in the right way, start threads of theories (discuss) this is the way to be fully 100% protected." *Id.* ¶¶ 9, 107. Nathan also proposed the "creation of social fan engagement to go back and forth with any negative accounts, helping to change [sic] narrative and stay on track." *Id.* Per Nathan, "***All of this will be most importantly untraceable***." *Id.* As Abel described it, the plan was to engage in "social media mitigation and proactive fan posting to counter the negative" as well as "social manipulation." *Id.* ¶ 122. Nathan's plan proposed strategies to ***advance misleading counternarratives***, including pushing Nathan's narrative that Ms. Lively had a "less than favorable reputation," proposing to "explore planting stories about the weaponization of feminism," and blaming Ms. Lively for production members' job losses. *Id.* ¶¶ 11, 115-116.

Initially, Baldoni expressed concerns that TAG's written plan was insufficiently aggressive to protect him. *Id.* ¶ 12. Writing to Heath and Abel, "[I'm] [n]ot in love with the document they sent – Not sure I'm feeling the protection I felt on the call" with Nathan and her colleagues. *Id.* ¶¶ 12, 117. Later that day, Abel and Nathan exchanged more text messages, expressing that ***Baldoni "wants to feel like [Ms. Lively] can be buried***." *Id.* ¶¶ 13, 119. Abel and Nathan agreed

that they should not betray their true intentions in writing. "When we send over documents we can't send over the work we will or could do ***because that could get us in a lot of trouble***." *Id.* ¶¶ 13, 119. "***We can't write it down to him. We can't write we will destroy her***. We will go to this. We will do this. We will do this. We will do this." *Id.* "***Imagine if a document saying all the things that he wants ends up in the wrong hands***." *Id.* Nathan followed this by assuring Abel: "***you know we can bury anyone [sic] But I can't write that to him.***" *Id.* ¶ 14. A few days later, Baldoni set the tone for the social combat he and his co-conspirators would enact: sending Abel a thread on X that had accused another female celebrity of bullying women, Baldoni stated, "this is what we would need." *Id.* ¶ 15.

Shortly thereafter, when the press and public were beginning to notice that some of Baldoni's fellow cast had unfollowed him on social media and were not appearing with him, the Wayfarer Parties brought Plaintiffs into their conspiracy to serve as their covert digital operatives. Ex. A ¶¶ 216, 226. Plaintiffs got to work seeding, manipulating, and advancing disparaging content on social media platforms and internet chat forums. Abel told Baldoni they would focus on: Reddit, TikTok, and Instagram. Dkt. 1-2 ¶ 16. Abel emailed Nathan and Wallace on August 8, 2024, saying to Nathan about Wallace and the Street Relations team, "is this something you can bring them up to speed on so they can hit the ground running?" Ex. A ¶ 226. On August 9, Abel, Baldoni, Heath, Nathan, and other members of the TAG team exchanged text messages to celebrate the "narrative" that was "shifting online to pointing finger at Ryan being overly involved." *Id.* ¶ 228. In response to Mr. Baldoni, a TAG employee noted that they had "flagged to Jed and his team as well" this shifting narrative. *Id.* That same day, Abel circulated a screenshot of a post by another woman accusing Baldoni of additional misconduct, and announced that she had directed Wallace to take action to suppress it, stating: "I'm assuming this is not true in the slightest . . . ***Either way,***

*we've flagged to Jed and his team for more serious actions on the social side."* Dkt. 1-2 ¶ 146. That same day, Nathan reported to the group Wallace's sentiment that "we are crushing it on Reddit." *Id.* ¶ 138. Around the same time, threads began to appear on Reddit speculating about a feud between Ms. Lively and Baldoni, calculated to paint Ms. Lively as being in the wrong. Ex. A ¶ 236.

On August 10, TAG expressly acknowledged the success of Plaintiffs' efforts to shift public attention from stories about Baldoni's misconduct into a manufactured and harmful narrative about Ms. Lively, stating they had "started to see a shift on social, *due largely to Jed and his team's efforts to shift the narrative towards shining a spotlight on Blake and Ryan*." Dkt. 1-2 ¶ 142. Following this "shift," Nathan texted, "[t]he majority of socials are so pro Justin and I don't even agree with half of them lol." *Id.* ¶ 135. Nathan later bragged that "this went so well . . . It was genius." *Id.* ¶ 156. Over the days that followed, Plaintiffs led a "digital team" that worked with Nathan, Abel, and TAG to further implement their social "manipulation" strategy. Ex. A ¶¶ 250-57. When an allegation surfaced regarding additional misconduct by Baldoni—as Abel stated, "this girl is claiming that Justin invited her up to his hotel room years ago"—Nathan advised Abel, "[l]et us chat to Jed as well on this." Dkt. 1-2 ¶ 148. In response to Baldoni's concern that he did not want bots defending him online ("I really don't want bots defending me," Ex. A ¶ 257), Nathan reassured him that something much more sophisticated was in motion, stating that the "other team"—a refererring to Plaintiffs—"is doing something very specific in terms of what they do," adding that "I know Jamey [Heath] & Jed [sic] connected on this." Ex. A ¶ 257.

C.    **In December 2024, Ms. Lively Filed The CRD Complaint And The New York Litigation Based On The Same Claims Of Sexual Harassment And Retaliation.**

On December 20, 2024, and as a prerequisite to filing a lawsuit in federal court,[6] Ms. Lively filed the CRD Complaint, which included a required intake form. Dkt 1-1 ("CRD Form"). The CRD Form identifies ten respondents, including Wallace and Street, and states as follows:

> ***Additional Complaint Details:*** *Complainant Blake Lively alleges that Respondents Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, Melissa Nathan, the Agency Group PR LLC, Jennifer Abel, RWA Communications LLC, Jed Wallace, and/or Street Relations Inc. engaged in a variety of conduct in violation of California Government Code section 12940 (the "FEHA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). The conduct includes: sexual harassment; retaliation; failure to investigate, prevent, and/or remedy harassment; and aiding and abetting harassment and retaliation. Please see attached complaint for specific details.*

Dkt. 1-1. The CRD Complaint identified the same individuals in its caption and sets forth specific factual allegations detailing the sexual harassment Ms. Lively faced on the set of the Film and the retaliatory campaign that had since been waged against her, as well as screenshots of text messages among Baldoni and the PR team. Dkt. 1-2. Neither the CRD Form nor the CRD Complaint asserted specifically-pled causes of action against Plaintiffs for "sexual harassment, retaliation; failure to investigate, prevent, and/or remedy harassment and aiding and abetting harassment and retaliation," as alleged by Plaintiffs. Dkt. 1 ¶ 5. Instead, Ms. Lively explained, with specific examples, Wallace's participation in the retaliatory campaign.[7]

In response to the CRD Complaint, CRD issued a "Right-to-Sue" notice, which allowed Ms. Lively to pursue a lawsuit for up to one year. Dkt. 1-3. On December 20, 2024, Ms. Lively's counsel sent a copy of the CRD Form and CRD Complaint and a cease-and-desist letter to Wallace,

---

[6] Under California law, a person subjected to discrimination, harassment, or retaliation "must submit an intake form to CRD" and "must obtain an immediate Right-to-Sue notice from CRD before filing [a] lawsuit in court." *See* California Civil Rights Department, Complaint Process; *Pollock v. Tri-Modal Distribution Servs., Inc.*, 11 Cal.5th 918, 931, 491 P.3d 290, 295 (2021). Plaintiffs' reference to the CRD Complaint as the "Precursor" to a lawsuit amounts to a concession that the CRD Complaint was a prerequisite to filing a federal lawsuit and provided all parties with notice that such a suit would be forthcoming.

[7] Dkt. 1-2 ¶¶ 18-19, 138-139, 142, 146, 148.

which was shared with attorney Bryan Freedman, counsel for Baldoni and Wallace.[8] The next day, several press outlets reported on the CRD Complaint—but leading the race was TMZ, which included a (defamatory) statement from Freedman on behalf of Plaintiffs, among others. Ex. A ¶¶ 50, 294-295. Later that day, *The New York Times* published an article reporting on the allegations of the CRD Complaint entitled, '*We Can Bury Anyone': Inside a Hollywood Smear Machine* (the "Article").[9]

On December 31, 2024, Ms. Lively filed a Complaint in the United States District Court for the Southern District of New York (the "First-Filed Court") that was largely substantively identical to the CRD Complaint and included federal and California state law claims against Wayfarer, Baldoni, and Heath, as well as against Steve Sarowitz, It Ends With Us Movie LLC, and members of the PR Team (namely Melissa Nathan, The Agency Group PR LLC ("TAG"), and Jennifer Abel") (the "NY Wayfarer Defendants"). Ex. H. That same day, Freedman—on behalf of the NY Wayfarer Defendants *plus Wallace and Street* and RWA Communications, LLC—sued *The New York Times* in California Superior Court asserting claims under California law based on the Article.[10] The California Complaint identified Street as "a California corporation" at "all relevant times." Ex. I ¶ 40.

On January 16, 2025, all the NY Wayfarer Defendants other than TAG ("NY Wayfarer Plaintiffs") filed a separate lawsuit in the First-Filed Court asserting seven causes of action,

---

[8] Wallace uses the address of Freedman's law firm as the address for Street's California agent for service of process and its Board of Directors and Organizer in Texas. Ex. E and F.

[9] Megan Twohey, et al., *'We Can Bury Anyone': Inside a Hollywood Smear Machine*, THE NEW YORK TIMES, Dec. 21, 2024, NY Litigation, Dkt. 107-1, Ex. G; *U.S. ex rel Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006) (courts can take judicial notice of newspaper articles).

[10] Complaint, *Wayfarer Studios LLC, et al. v. The New York Times Company*, Sup. Ct. of California, County of Los Angeles, Case No. 24STCV34662 ("California Action"), January 2, 2025, Ex. I ("California Complaint").

including based on the allegation that the CRD Complaint was "rife with lies and doctored 'evidence.'" *Wayfarer Studios LLC, et al, v. Lively et al*, No. 1:25-cv-0049.  On January 20, the First-Filed Court consolidated that case with the one previously filed by Ms. Lively. *Id.*, Dkt. 49.

**D.**       **Wallace Evaded And Obstructed Ms. Lively's Persistent Efforts To Seek Information From Him Before Filing This Lawsuit In Anticipation Of Becoming A Party In The New York Litigation.**

On January 21, 2025, Ms. Lively initiated a Rule 202 Petition in Hays County to obtain a pre-suit deposition of Wallace to investigate the full nature and scope of his role in implementing and carrying out the retaliatory campaign against her. Wallace repeatedly evaded and obstructed Ms. Lively's persistent efforts to serve him by process server and by certified and USPS mail.[11] On January 23, 2025, after trying to serve Wallace at his gated property, the process server received a text message from an associate at Freedman's law firm stating: "The law firm Liner Freedman Taitelman + Cooley LLP will accept service for him. Do not try to serve him again. Thank you."[12] Later than day, Freedman claimed that "my office never agreed to accept service of process of anything" and then denied any such arrangement.[13] Wallace's counsel also indicated that Wallace had suffered a life-threatening heart incident because of the stress caused by attempts to serve the Rule 202 Petition. Ultimately, Ms. Lively did not serve Wallace.

On January 31, 2025, the NY Wayfarer Defendants (notably, without being joined by Wallace or Street) filed an Amended Complaint in the NY Litigation to include *The New York Times* as a party.[14]  The parties to the California Complaint, including Wallace and Street, dismissed the California Complaint on February 3, 2025.  That same day, during an Initial Pretrial Conference in the NY Litigation, Freedman explained why the NY Wayfarer Plaintiffs chose to

---

[11] Ex. B and C.
[12] Ex. B.
[13] Ex. J.
[14] NY Litigation, Dkt. 50.

file an Amended Complaint to include *The New York Times* and to dismiss the California Action:

> "After seeing … your case management order and just for the efficiency of the case, ***it kind of made no sense to be doing this on different coasts and with different courts. It seemed that so many of the issues are going to be so similar that to have it all in one proceeding in front of your Honor would make the most sense.***"[15]

During the same hearing, counsel for Ms. Lively represented to the First-Filed Court that she would be amending her complaint to add additional parties and claims.[16] Accordingly, including based on Freedman's representations to the First-Filed Court and for judicial economy, the very next morning Ms. Lively filed a Notice of Nonsuit with Prejudice of her Rule 202 Petition in favor of adding Wallace and Street to the NY Litigation.[17]

That afternoon, and notwithstanding the representations made to the First-Filed Court the day before, Wallace and Street filed this Complaint in this Court, asserting two "causes of action" against Ms. Lively: (1) a claim for declaratory judgment under the Declaratory Judgment Act ("DJA") that Plaintiffs are *not* liable for claims that they anticipated Ms. Lively would bring against them in the NY Litigation to obtain "issue-preclusive effect," Dkt. 1 ¶¶ 17-21 ("Count One"); and (2) a claim for defamation based solely upon statements contained within the privileged CRD Form and the CRD Complaint that plaintiffs claim "falsely stated that they had engaged in ten illegal acts under state and federal law." Dkt. 1 ¶ 21-23 ("Count Two").[18] Immediately thereafter, on February 5 and 6, 2025, Plaintiffs filed paperwork to convert Street from a California to a Texas corporation, listing the address for Freedman's law firm as both the "organizer of the Corporation" and as Street's California agent for process.[19]

---

[15] Ex. K at 23:14-19.
[16] Ex. K at 9:24-10:9.
[17] Ex. L.
[18] The Complaint mis-numbers its paragraphs; instead of a paragraph 24, the next paragraph is "22."
[19] Ex. E and F.

On February 18, 2025, Ms. Lively filed an Amended Complaint in the NY Litigation, adding Plaintiffs as parties and asserting against them claims for aiding and abetting harassment and retaliation in violation of California's Fair Employment and Housing Act, intentional infliction of emotional distress, false light invasion of privacy, and civil conspiracy under California law.[20]

### III.    ARGUMENT

### A.    PLAINTIFFS' CLAIMS REQUIRE DISMISSAL AS A MATTER OF PROCEDURAL LAW.

The Court can, and should, dismiss the Complaint in its entirety before considering its substantive claims based on three independent "threshold grounds for denying audience to a case on the merits." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999). ***First***, this Court lacks personal jurisdiction because the Complaint does not allege *any* contacts between Ms. Lively and Texas that could have given Ms. Lively fair warning that these claims could be brought against her in Texas. ***Second***, this case must be dismissed under the first-filed doctrine, because, as Plaintiffs concede, a "substantially similar" action was previously filed and is pending in the Southern District of New York. ***Third***, this case must be dismissed for improper venue, because no events—much less a "substantial" portion of the events—giving rise to this action occurred in this District.

### 1.    Ms. Lively Is Not Subject To Personal Jurisdiction In Texas.

The Court should dismiss the Complaint in its entirety pursuant to FRCP 12(b)(2) because it lacks specific or general jurisdiction over Ms. Lively. Plaintiffs do not assert that general jurisdiction exists over Ms. Lively in Texas, nor could they, because as Plaintiffs admit, Ms. Lively is a "citizen of New York." Dkt. 1 ¶ 4; *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's

---

[20] Ex. A.

domicile."). For the Court to exercise specific personal jurisdiction over Ms. Lively, Plaintiffs must demonstrate that (1) she purposefully availed herself of the privilege of conducting activities in Texas; (2) Plaintiffs' claims "arise out of or relate to" those purposeful contacts; and (3) exercising jurisdiction is "fair and reasonable" to the defendant. *Johnson v. TheHuffingtonPost.com, Inc*., 21 F.4th 314, 317 (5th Cir. 2021). Plaintiffs attempt to meet that burden based on two allegations: ***first***, that Ms. Lively has waived "any jurisdictional objections" by having "availed herself of the forum by filing a Rule 202 petition in Texas on the subject matter of this suit" (Dkt. 1 ¶ 15 (citing *PaineWebber Inc. v. Chase Manhattan Priv. Bank (Switzerland*), 260 F.3d 453, 459 (5th Cir. 2001) & *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 541 (5th Cir. 2019)); and ***second***, that Ms. Lively's allegedly defamatory statements "were aimed at Texas where both Plaintiffs reside and they undoubtedly caused harm in Texas." Dkt. 1 ¶ 15. Neither allegation is sufficient.

> a.    **The Rule 202 Petition does not subject Ms. Lively to personal jurisdiction in this case.**

The Rule 202 Petition cannot as a matter of law provide a basis to establish personal jurisdiction over Ms. Lively because it does not demonstrate purposeful availment and, even if it did, Plaintiffs' claims do not arise out of them. *Johnson*, 21 F.4th at 317.

*First*, the act of investigating *potential* claims, including by filing a Rule 202 Petition in a Texas court, does not amount to purposeful availment. Texas law, including those Plaintiffs rely upon, hold that a non-Texas resident does not waive personal jurisdiction unless it initiates "an original action" in the state or has "litigated extensively on the merits before making any jurisdictional objections." *See Halliburton*, 921 F.3d at 541; *PaineWebber*, 260 F.3d at 460. Ms. Lively has not done either. Courts in Texas have consistently held that a Rule 202 Petition is not an "original action" because it merely authorizes the taking of a deposition "to investigate *a*

*potential* claim or suit." Tex. R. Civ. P. 202.1; *See, e.g.*, *Tex. v. Real Parties In Interest*, 259 F.3d 387, 394 (5th Cir. 2001) (a Rule 202 proceeding is "only an investigatory tool"); *Montoya Frazier v. Maxwell*, No. 02-23-00103-CV, 2025 WL 494699, at \*5 (Tex. App.—Fort Worth Feb. 13, 2025, no pet. h.) (en banc) (a Rule 202 Petition is not a "legal action" under the Texas Citizens Participation Act); *Bennett v. Zucker*, No. 05-19-01445-CV, 2021 WL 3701365, at \*4 (Tex. App.—Dallas Aug. 20, 2021, pet. denied) (mem. op.) (a party filing a Rule 202 petition does not assert a substantive claim or cause of action). Nor does filing a Rule 202 Petition demonstrate extensive litigation on the merits because it "is not a legal claim on the merits" at all. *Caress v. Fortier*, 576 S.W.3d 778, 781 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (a Rule 202 petition). Even if the Rule 202 Petition might otherwise qualify as litigating "on the merits," it does not do so here because the Fifth Circuit requires significantly more than just filing (and then non-suiting) a pre-suit petition. *See Special Quality Alloys, Inc. v. Coastal Mach. & Supply, Inc.*, No. 4:22-CV-04258, 2023 WL 7412945, at \*3 (S.D. Tex. Nov. 9, 2023) (explaining that appearing as a defendant, moving for a stay, filing a third-party complaint, and (serving Rule 26 disclosures "do not come close to the level necessary to constitute a voluntary submission to the jurisdiction" of a Texas court). Ms. Lively's filing of an exploratory petition in Texas state court without serving or pursuing it is a far cry from purposeful availment.

*Second*, even if Ms. Lively availed herself of Texas by filing the Rule 202 Petition, Plaintiffs' claims do not "arise out of or relate to" that conduct. *Johnson*, 21 F.4th at 317 (a claim "must arise out of or relate to" a defendant's purposeful contacts with the forum). Plaintiffs' claims arise out or relate specifically to Ms. Lively's filing of the CRD Complaint and CRD Form, and therefore accrued *before* Ms. Lively filed the Rule 202 Petition. Dkt. 1 ¶¶ 14-22. If Ms. Lively had never filed the Rule 202 Petition, Plaintiffs' claims about the CRD Complaint and CRD Form

would remain intact and unchanged. In-forum contacts (here, the filing of the Rule 202 Petition) that post-dated the challenged conduct (the allegedly defamatory content in the CRD Complaint and CRD Form) fail to meet the "arise out of or relate to" prong. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) ("the phrase 'relate to' incorporates real limits" and it "does not mean anything goes" including by asserting specific jurisdiction based on forum contacts that occurred *after* the challenged conduct).

**b.      Personal jurisdiction cannot be premised on Plaintiffs' allegation that Ms. Lively "aimed" statements at Texas or "caused harm in Texas."**

Plaintiffs appear to advance a theory of specific jurisdiction based on *Calder v. Jones*, 465 U.S. 783 (1984), which permits a court to exercise personal jurisdiction over a defamation defendant where the forum (here Texas) is the "focal point" of the publication. *Calder*, 465 U.S. at 789. To meet the *Calder* standard, Plaintiffs must, but cannot, show that Plaintiffs' activities in Texas (or the state itself) is the "focus" of the subject matter of the CRD Form and Complaint *and* the CRD Form and Complaint relied on sources located in Texas to provide "new and substantial disclosures." *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010) (citing *Calder*); *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 426 (5th Cir. 2005).

Plaintiffs do not—and cannot—adequately plead that Texas is the "focal point" of the CRD Form and Complaint. The Complaint includes the conclusory assertion that the allegedly defamatory statements were "aimed at Texas where both Plaintiffs reside." Dkt. 1 ¶ 15. Leaving aside that the Court cannot credit "conclusory assertions," finding that the CRD Form and Complaint were aimed at Texas would be contrary to the *facts* pleaded in the Complaint. *See Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed. App'x. 628, 631 (5th Cir. 2015) (courts cannot "credit conclusory allegations, even if uncontroverted" when evaluating if a plaintiff has presented a prima facie case of personal jurisdiction). It is undisputed that Ms. Lively filed the CRD Form

and Complaint with a California administrative agency based on violations of California law by her California employers and by their co-conspirators, including by Street, which was incorporated in California throughout the period relevant to this action.[21] Plaintiffs previously admitted in their suit against *The Times* that the conduct causing the alleged injury occurred in California.[22]  The CRD Form and Complaint focus on activities that occurred outside of Texas (namely in *New York*, *California*, and *New Jersey*) and mentions Texas only in connection with Wallace's domicile here. Dkt. 1-2 ¶¶ 18, 139. These passing references are a far cry from what is required to show that a jurisdiction is the "focal point" of a publication. *See Fielding*, 415 F.3d at 426 (Texas must be the "focal point" of the publication; references to Texas that are "merely collateral" to the publication do not confer jurisdiction). Nor did Ms. Lively draft these documents in Texas or rely on any Texas sources while drafting them.

Plaintiffs suggest that Ms. Lively nevertheless is subject to personal jurisdiction in Texas because the CRD Form and Complaint "undoubtably caused harm in Texas." Dkt. 1 ¶ 15.  Even if the allegation about purported harm were not conclusory, it is jurisdictionally irrelevant because "mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). As such, the Fifth Circuit and this Court have repeatedly dismissed cases for lack of personal jurisdiction, even when the plaintiff suffers injury in Texas. *See, e.g., Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 497 (5th Cir. 2022) (affirming dismissal of intentional tort claims because none of the allegedly tortious conduct occurred in Texas or was

---

[21] Dkt. 1 ¶ 3; Decl. of Jed Wallace, NY Litigation, March 18, 2025, Dkt. 142-1, Ex. M ¶ 8.
[22] Ex. I ¶ 45.

**DEFENDANT'S MOTION TO DISMISS**                                                                 16

meaningfully connected to the state); *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018) (same); *Barnes*, 2023 WL 2732552, at *4 (that the plaintiff alleged harm in the forum state does not confer personal jurisdiction). Moreover, even if "the majority of the claimed harm is felt in the forum state," courts have "declined to find personal jurisdiction when the statements focus on activities and events outside the forum state." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013).

Dismissal is required pursuant to FRCP 12(b)(2) because Texas is not the "focal point" of either the CRD Form and Complaint. *See, e.g., Block v. Barnes*, No. 1:22-CV-869-LY, 2023 WL 2732552, at *6 (W.D. Tex. Mar. 30, 2023) (Howell, M.J.), *report and recommendation adopted*, No. 1:22-CV-869-DAE, 2023 WL 4582396 (W.D. Tex. July 18, 2023) (Ezra, J.) (finding no personal jurisdiction over defamation claim where no statement at issue was made in Texas, about Texas, or directed at Texas residents); *Immanuel v. Cable News Network, Inc.*, No. 4:21-CV-00587, 2022 WL 1748252, at *5 (E.D. Tex. May 31, 2022) (no personal jurisdiction over defamation claim where publication was not "in any way directed at the Eastern District, or specifically curated for an Eastern District audience").

### 2.    The First-To-File Rule Requires Dismissal Of The Complaint In Full.

Federal courts, including the Fifth Circuit, "long have recognized that the principle of comity ***requires*** federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728–29 (5th Cir. 1985) ("*West Gulf*") (emphasis added); *see Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) ("when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap."). The First-To-File Rule applies where, as here, two parallel federal actions have (more than) a likelihood of

"substantial overlap." *West Gulf,* F.2d at 729; *Gateway Mortg. Grp., L.L.C. v. Lehman Bros. Holdings, Inc.*, 694 F. App'x 225, 227 (5th Cir. 2017); *KCCR, Inc. v. Brunner*, No. H-10-cv-01263, 2010 WL 4236868, at *3 (S.D. Tex. Oct. 21, 2010). The "ultimate determination of whether there *actually* was a substantial overlap" is not for this Court to decide; rather, once the second-filed court finds that "the issues *might* substantially overlap, the proper course of action" is to defer to the First-Filed Court. *Cadle,* 174 F.3d at 606; *Huntsman Corp. v. Int'l Risk Ins. Co.*, No. 1:08-cv-029, 2008 U.S. Dist. LEXIS 33242, at *11-12 (E.D. Tex. Apr. 22, 2008); *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 630 (W.D. Tex. 2018) (court must apply the First-To-File Rule in the absence of "compelling circumstances").

There is no question that substantial overlap exists between this case and the NY Litigation. Indeed, Plaintiffs have attached to the Complaint—and based their claims in this action—the CRD Form and Complaint that Ms. Lively filed *in order to receive permission to file* the NY Litigation. *See Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 70 (2000) (explaining the exhaustion of administrative remedies). Ms. Lively then initiated the NY Litigation by filing a virtually identical complaint to the CRD Complaint. Accordingly, both this case and that one will turn *entirely* on whether the allegations in the CRD Complaint are true. Indeed, there is not simply a *likelihood* of substantial overlap between the two cases, there *is* actual and substantial overlap, including because they involve "closely related questions or common subject matter," share overlapping "core issues," and "much of the proof adduced would be identical." *Gateway*, 694 F. App'x at 227 (dismissal where the first-filed "proceeding presents the affirmative case" and the second merely "asserts defenses"); *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *Mann Mfg. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971); *see also For the Gusto Motorsports, Inc. v. Lane*, No. 3:16-CV-1074-L, 2017 WL 896898, at *1 (N.D. Tex. Mar. 7, 2017) (dismissal where

the cases are "essentially mirror images of each other"). The Court need not engage in any further analysis to, as it must, apply the First-To-File Rule and dismiss the Complaint in its entirety.

Plaintiffs may attempt to argue that this case (not the NY Litigation) is the first-filed case because Ms. Lively did not add Plaintiffs to that lawsuit until after they filed this one.[23]  But the First-To-File Rule does not require "'complete identity of parties'" but focuses instead only on whether there is a likelihood of a substantial overlap between the two suits.  *Hart*, 290 F. Supp. at 630 (quoting *Save Power*, 121 F.3d at 950); *Cadle Co.*, 174 F.3d at 605; *see also KCCR*, 2010 WL 4236868 ("[I]t is well-settled law that cases need not be identical or encompass a complete identity of parties to be duplicative and fall within the purview of the first-to-file rule.").  For the reasons discussed above, there is more than a "likelihood" of "substantial overlap"—there is a guarantee of entire overlap—between the claims in this Complaint and in the NY Litigation, including those in the original complaint Ms. Lively filed in the First-Filed Court in December 2024.

Nor should the Court permit Plaintiffs to avoid the First-to-File Rule and reward their evasive tactics, anticipatory filing, and forum shopping. *See Chapa v. Mitchell*, No. A-05-CV-769-JN, 2005 WL 2978396, at *2 (W.D. Tex. Nov. 4, 2005) (courts dismiss the first-filed action when "a party engaged in bad faith conduct, by inducing an opposing party to delay filing of a lawsuit, so that he could file a preemptive lawsuit"); *Kinetic Concepts, Inc. v. Connetics Corp.*, No. CIV.A.SA-04-CA0237XR, 2004 WL 2026812, at *4 (W.D. Tex. Sept. 8, 2004) (dismissing anticipatory case filed to gain the advantage of his preferred forum when plaintiff knew defendant intended to file suit in a different forum); *see also Novak Druce Connolly Bove & Quigg, LLP v. Arochi*, No. H-18-3490, 2019 WL 4222700, at *2 (S.D. Tex. Sept. 5, 2019) (courts consider

---

[23] Memorandum of Law in Support of Defendants' Motion to Dismiss or, in the alternative, Motion to Sever and to Transfer Venue, NY Litigation, March 19, 2025, Dkt. 142, Ex. N at 20-21.

whether a party "acted in bad faith by inducing the other party to delay filing a lawsuit").[24] Plaintiffs admit they filed this case against Ms. Lively because they were "threatened with liability" and that they seek "an early adjudication without waiting until [Ms. Lively] should see fit to begin an action" against them. Dkt. 1 ¶ 18.  At a minimum, this Court should exercise its discretion to dismiss Count One because Plaintiffs admit to seeking declaratory relief in anticipation of becoming parties to the NY Litigation.  *See Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983); *TK Holdings, Inc. v. Ordonez*, No. 1:17-CV-250-LY, 2017 WL 2923829, at *3 (W.D. Tex. July 6, 2017) (dismissing case because plaintiff should not be allowed to "secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum"); *Epic Tech, LLC v. Arno Res., LLC*, No. 1:20-CV-577-LY, 2020 WL 5351078, at *7 (W.D. Tex. Sept. 4, 2020), *report and recommendation adopted*, No. 1:20-CV-577-LY, 2021 WL 2431340 (W.D. Tex. Jan. 11, 2021) ("The Fifth Circuit does not favor races to the courthouse," and "[n]umerous courts have held that a declaratory claim should be dismissed if it was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction.").

> **3.**      **The Court Should Dismiss This Lawsuit Based On Improper Venue.**

This case warrants dismissal for improper venue pursuant to FRCP 12(b)(3). Plaintiffs assert venue only under 28 U.S.C. § 1391(b)(2), which authorizes venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Dkt. 1 ¶ 16. But the Complaint fails to allege any "events or omissions" *giving rise to Plaintiffs' claims* that occurred in this District. For purposes of § 1391(b)(2), courts look to "the *defendant's* conduct and where that conduct took place," not the activities of the plaintiff. *See, e.g.*, *Lalla v. G&H Towing*

---

[24] Ex. B, C, and J.

*Co.*, No. CV SA-19-CA-0542-FB, 2019 WL 11626516, at *4 (W.D. Tex. July 26, 2019) (emphasis added). The alleged conduct that is the subject of Plaintiffs' claims involves the CRD Form and Complaint—and only those documents. Plaintiffs' claims do *not* arise from Ms. Lively's conduct with respect to the Rule 202 Petition, the only conduct alleged to have taken place in Texas, to say nothing of this District. As for the conduct that does "giv[e] rise" to Plaintiffs' claims, Ms. Lively's alleged conduct and the events that led to the filing of the CRD Form and Complaint *all* occurred outside this District. Venue thus does not lie in this District under § 1391(b)(2).

The Complaint also alleges that venue should lie in this District because "a Defamation Plaintiff is accorded great deference in his choice of forum especially when it is his home venue where the defamation is most keenly felt." Dkt. 1 ¶ 16. But that is contrary to black-letter venue law. The effects of the defendant's actions on the plaintiff in Texas are "irrelevant to venue determination." *Russo v. Barnard*, No. 3:21-cv-165, 2021 WL 5567380, at *2 (S.D. Tex. Nov. 29, 2021); *Lalla*, 2019 WL 11626516, at *3 ("[T]he fact that a plaintiff residing in a judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district."). Instead, in defamation actions, courts look to the defendant's conduct and where that conduct took place to determine where a substantial part of the events or omissions giving rise to the claim occurred. *See, e.g., Nutall v. Juarez*, 984 F. Supp. 2d 637, 646 (N.D. Tex. 2013) ("The fact that Plaintiff may have felt the effects of any alleged defamatory statement in [this] District because he resides [here] is insufficient to establish that venue is proper here."); *Immanuel*, 2022 WL 1748252, at *5 (same).

That a plaintiff's "choice of forum" should not receive deference rings especially true when, as here, the claims are brought in anticipation of claims in another jurisdiction. *See, e.g., Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. CIV.A. 3-07CV2183-M, 2008 WL

3890495, at *5 (N.D. Tex. Aug. 22, 2008) (a plaintiff's "preferred forum is entitled to no weight" when a declaratory judgment action is file in anticipation of the defendant's suit); *Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co., L.P.*, No. CIV. A. H-07-637, 2007 WL 5186798, at *4 (S.D. Tex. Sept. 11, 2007) (a plaintiff's choice of forum is not entitled to deference when the suit was filed in anticipation of a suit from a defendant). In sum, Plaintiffs are "not entitled to choose an improper venue." *Nuttall*, 984 F. Supp. 2d at 646.

**B.      FRCP 12(B)(6) REQUIRES DISMISSAL OF BOTH COUNTS FOR FAILURE TO STATE A CLAIM.**

Even if the Court considers Plaintiffs' substantive claims, both causes of action fail.

**1.      Count One Requires Dismissal Because Declaratory Relief Is Not An Independent Cause of Action.**

Count One requires dismissal because the DJA confers a potential remedy, *not* an independent cause of action under both Texas and California law. *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022); *Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001) (en banc) ("[T]he law makes clear that—although the Declaratory Judgment Act provides a remedy different from an injunction—it does not provide an additional cause of action with respect to the underlying claim.").

Even if the law recognized a claim for declaratory relief, Count One requires dismissal.  A remedy under the DJA is only available if the plaintiff has a viable claim which, as explained below, Plaintiffs do not plead. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (the DJA "presupposes the existence of a judicially remediable right"). The request for relief under the DJA must be denied for this reason, alone. *See Owens v. Wells Fargo Bank, N.A.*, No. C 09-3354 PJH, 2009 WL 3353313, at *4 (N.D. Cal. Oct. 16, 2009) (dismissing claim for declaratory relief because it was premised on a non-actionable claim). Additionally, relief under the DJA must be predicated upon an actual controversy. *See Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)

(an "actual controversy" must exist between the parties); *Centex Homes v. St. Paul Fire & Marine Ins. Co.*, 237 Cal. App. 4th 23, 29-30 (2015) (finding claim for declaratory relief was anticipatory, not actual or ripe, because there were "not enough facts about liability, damages, or the cost of defense for the trial court to offer any declaration as to the rights and obligations of the parties"). However, Plaintiffs ask the Court to issue a sweeping advisory opinion on whether they have, among other issues, breached a contract with Ms. Lively, engaged in harassment, retaliation, and failure to investigate, and engaged in any tortious conduct toward Ms. Lively, that are neither "definite and concrete" nor "real and substantial." Dkt. 1 ¶ 20; *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 913 (N.D. Cal. 2024).

> **2.      Count Two Requires Dismissal Because Ms. Lively's Statements Are Subject to California Law and are Privileged, and Plaintiffs Fail to Plead the Basic Elements of Defamation.**

Count Two must also be dismissed because Plaintiffs fail to plausibly allege the elements of the claim, including (1) a specific defamatory statement, (2) defamation by implication, (3) fault, and (4) damages. Even if Plaintiffs can surmount these basic hurdles, which they cannot, Count Two fails for the additional reason that the CRD Form and Complaint are subject to multiple privileges and therefore constitute protected speech.

> **a.      Count Two requires dismissal because Plaintiffs fail to adequately plead defamation.**

Count Two must be dismissed because Plaintiffs fail to prove that Ms. Lively made a false statement of fact (either explicitly or implied) with fault (actual malice or negligence) and that the statement caused actual damages.[25] Because there is no notable conflict between Texas or

---

[25] Because there is no notable conflict between the elements required to prevail on a defamation claim under Texas or California law, this claim fails no matter which state's law the Court applies. *See Epstein v. Gray Television, Inc.*, No. 06-CV-431-WRF, 2007 WL 295632, at *7 (W.D. Tex. Jan. 5, 2007).

California law on these core elements, the Court need not reach a choice of law conclusion to dismiss this Count. *See Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 813 (5th Cir. 2017); *Epstein*, 2007 WL 295632, at *7.

### i.    Plaintiffs have not identified any specific defamatory statements.

Plaintiffs allege that the overall impression, not any specific statements, of the CRD Form and Complaint are defamatory. Dkt. 1 ¶¶ 5-6, 19, 21-22. For that reason alone, the claim fails. *See Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 893 (2020) ("[S]tatements alleged to constitute libel must be specifically identified, if not pleaded verbatim, in the complaint.") (internal quotation omitted); *Roe v. Patterson*, No. 23-40281, 2024 WL 1956148, at *3 (5th Cir. May 3, 2024) (the plaintiff must identify the alleged defamatory statement to recover on a defamation claim); *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998) ("Defamation actions cannot be based on snippets taken out of context.").

### ii.    Ms. Lively's inclusion of Plaintiffs in a pleading caption page cannot support a claim for defamation by implication.

Plaintiffs fail to plausibly allege defamation by implication. To prevail on this claim, a plaintiff must demonstrate that (1) his or her interpretation of the statement is reasonable; (2) the implication(s) to be drawn convey defamatory facts, not opinions; (3) the challenged implications are not substantially true; and (4) the identified reasonable implications could also be reasonably deemed defamatory. *Issa v. Applegate*, 31 Cal. App. 5th 689, 707 (2019).[26] Plaintiffs cannot make this showing.

Plaintiffs' desperate theory—that someone would see the caption of legal filings and

---

[26] The standard for defamation by implication is even higher in Texas, which requires a plaintiff to allege a defamatory meaning that the objectively reasonable reader would draw and the plaintiff "must point to additional, affirmative evidence" within the publication itself that suggests the defendant "intends or endorses the defamatory inference." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 635 (Tex. 2018).

believe that all defendants/respondents named in the caption have engaged in each of the causes of actions listed—is unreasonable. Ms. Lively identified all defendants, including Wallace and Street, opposite a list of the causes of action alleged therein, which is common practice in many jurisdictions and required in California state courts. *See* Cal. Rule of Court 2.111. Ms. Lively also included in the CRD Complaint detailed factual allegations related to her claims. She did not, state or suggest that Wallace or Street harassed her or breached any contract with her. Instead, Ms. Lively described the "social media services" that Plaintiffs were retained to perform for Wayfarer and Baldoni and included examples of those services, supported by text communications also included in the CRD Complaint. Dkt. 1-2 ¶¶ 18-19, 138-139, 142, 146, 148. It defies logic that a reasonable reader would believe that everyone listed in the caption of a *preliminary* administrative filing is responsible for all conduct alleged in the following 80 pages.[27] Indeed, reviewing the CRD Form and Complaint as a whole, as required, makes clear that Ms. Lively has not stated, explicitly or implicitly, that Plaintiffs "engaged in ten illegal acts under state and federal law." Dkt. 1 ¶¶ 5-6, 19, 21. Street was never specifically mentioned in the body of the CRD Complaint, and the facts surrounding Wallace dealt with his social media retaliation campaign, not sexual harassment against Ms. Lively.

Moreover, the CRD Form and Complaint do not convey false statements of fact about Plaintiffs. Legal filings contain preliminary *accusations* of wrongdoing, not adjudicated conclusions. It is well understood that a complaint includes *allegations* of wrongful conduct that are tested through the course of litigation until a judge or jury ultimately decides whether the allegations are true. Again, read as a whole, a reasonable reader would not understand the CRD

---

[27] For example, the *Elle* article attached to the Complaint states that the CRD Complaint includes Plaintiffs as defendants and alleges that Baldoni employed Plaintiffs to harm Ms. Lively's reputation, not that Plaintiffs "engaged in ten illegal acts under state and federal law." Dkt. 1-4.

Form as asserting or implying false statements of fact about Plaintiffs, particularly when the CRD Form contains no specific statements about Plaintiffs and the CRD Complaint contains only limited references to Wallace. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 854 (9th Cir. 2001) (a plaintiff "may not construct an actionable statement by reading whatever implication it wishes into the defendants' words") (concurrence).

Because Plaintiffs failed to plead the requisite elements of a defamation by implication claim, the claims must be dismissed. *See Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d 1012, 1028 (C.D. Cal. 2022) (dismissing defamation claim because a "reasonable viewer is unlikely to draw any provably false assertions of fact" about the plaintiff).

### iii.    Plaintiffs fail to plead fault.

Plaintiffs cannot survive dismissal because they fail to plead fault, whether in the form of actual malice or, even, negligence.

*Plaintiffs fail to plead actual malice.* Plaintiffs must present "clear and convincing" evidence that Ms. Lively published the CRD Form and Complaint with "actual malice"—that is, "with knowledge that it was false or with reckless disregard of whether it was false"—to recover presumed or punitive damages because the CRD Form and Complaint involve sexual harassment, a matter of public concern.[28] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-50 (1974); *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1291 (9th Cir. 2014) (First Amendment defamation rules, such as actual malice, apply equally to both the institutional press and individual speakers).[29]

---

[28] *See Todd v. Lovecruft*, 2020 WL 60199, at *13 (N.D. Cal. Jan. 6, 2020) ("Publicly accusing individuals of rape and sexual assault is unquestionably controversial, but the controversy itself serves to demonstrate that it is a matter of public interest and debate.")

[29] Similarly, to overcome Section 47.1 immunity, Plaintiffs must plead "actual malice" under Section 48a of the California Civil Code, which is defined as a "state of mind arising from hatred or ill will toward the plaintiff." Cal. Civ. Code § 48a(d)(4); *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (applying Section 48a's definition of "actual malice" to privileges under Section 47); *Sanbourn v. Chronicle Pub. Co.*, 18 Cal. 3d 406, 412-14 (1976) (accord). Under Section 48a, "*a*

Plaintiffs' lone paragraph attempting to show that Ms. Lively acted with "actual malice"[30] does not satisfy actual malice's "subjective test." *Seidenstein v. Nat'l Med. Enterprises, Inc.*, 769 F.2d 1100, 1104 (5th Cir. 1985) (actual malice requires "subjective awareness of probable falsity"); *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 668 (9th Cir. 1990) (the relevant inquiry is whether a speaker "realized that [her] statement was false" or "subjectively entertained serious doubt as to the truth of his statement"); *see also Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1109 (N.D. Cal. 1999) ("conclusory statements" that defendant "should have known the truth does not satisfy the heightened pleading standard" to show actual malice). As demonstrated by the filing of the Amended Complaint,[31] Ms. Lively believed when she filed the CRD Form and Complaint— and believes now—that Plaintiffs engaged in a retaliatory social media campaign to harm her for speaking out about the sexual harassment and hostile workplace she endured at the hands of Plaintiffs' partners, Baldoni, Wayfarer, and Heath. Such actions do not establish actual malice but instead just the opposite—a genuine belief in harm caused to her by Plaintiffs. *See Tyson v. Austin Eating Disorders Partners, LLC*, No. A-13-CA-180-SS, 2013 WL 4774757, at *3 (W.D. Tex. Aug. 30, 2013) (dismissing defamation claims because plaintiff failure to plead facts showing actual malice); *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014) (dismissing defamation claim because plaintiff failed to "provide any specific allegations that would support a finding that [defendant] harbored serious subjective doubts as to the validity of his assertions");

*In the alternative, Plaintiffs fail to plead negligence*. Plaintiffs' claims should also be dismissed because Plaintiffs did not plead Ms. Lively failed to use reasonable care to determine

---

**good faith belief on the part of the defendant in the truth** of the libelous publication or broadcast at the time it is published or broadcast **shall not constitute actual malice**." *Id.* (emphasis added).
[30] *See* Dkt. 1 ¶ 22.
[31] Ex. A.

the truth or falsity of the statements. *Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 747 (1989) ("A private-figure plaintiff must prove at least negligence to recover any damages."); *Farias v. Garza*, 426 S.W.3d 808, 816 (Tex. App.—San Antonio 2014, pet. denied) (dismissing defamation claim for lack of allegations of negligence). Because Plaintiffs provide *no* specific factual allegations supporting their conclusions about negligence (Dkt. 1 ¶¶ 13, 22-23), the Complaint should be dismissed. *See Dog & Rooster, Inc. v. Green*, No. D077102, 2021 WL 1015814, at *7 (Cal. App. Mar. 17, 2021) (ordering dismissal of libel claim, explaining that "evidence of the defendant's *malice* is not evidence of the defendant's *negligence*"). Moreover, the CRD Complaint is 81-pages and 233 paragraphs long and replete with evidence, including text messages and emails images, demonstrating a serious and deliberative pre-filing investigation, *the opposite of negligence*.

> iv.    *Plaintiffs fail to adequately allege that they suffered damages attributable to the CRD Form and CRD Complaint.*

Finally, Plaintiffs failed to sufficiently plead facts supporting their alleged $1,000,000 or more in damages, Dkt. 1 ¶ 22, when, as here, the allegedly defamatory statements involve a matter of public concern. *See Obsidian*, 740 F.3d at 1287 (a defamation claim involving a matter of public concern requires proof of actual damages); *Lovecruft*, 2020 WL 60199, at *13. Plaintiffs do not allege that they have lost jobs, profits, contracts, or suffered any other specific damage because of Ms. Lively. Boilerplate language about damages and recent defamation awards in *other cases* (Dkt. 1 ¶ 22) are off-base and irrelevant to *this case*. *See Anderson v. Durant*, 550 S.W.3d 605, 621 (Tex. 2018) (internal quotations omitted) ("[E]vidence of loss of reputation should be more than theoretical . . . the evidence must show that people believed the statements and the plaintiff's reputation was actually affected.").

> b.    **Count Two must be dismissed because the CRD Form and CRD Complaint constitute protected speech under the California law.**

Even if this Court overlooks Plaintiffs' skeleton pleading, which it should not, Count Two

should still be dismissed because the CRD Form and Complaint are subject to multiple privileges, to which California law applies.

> i.    *California law applies to render the CRD Form and CRD Complaint privileged and therefore nonactionable.*

California law applies to the privileges asserted by Ms. Lively because there is a conflict between Texas and California law, given the additional protections and remedies that California affords to shield from defamation claims individuals who speak out about sexual harassment and retaliation. *See* Cal. Civ. Code §§ 47, 47.1. When such conflict arises, courts apply the forum state's choice-of-law rules. *See Doe v. Apostolic Assembly of Faith in Christ Jesus*, 452 F. Supp. 3d 503, 536 (W.D. Tex. 2020). Under Texas choice-of-law principles, the state with the "most significant relationship" applies to a particular claim. In applying that standard, a court considers (1) the place where the conduct causing the injury occurred; (2) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (3) the place where the relationship between the parties is centered; and (4) the place where the injury occurred. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); Restatement (Second) of Conflicts of Law § 145.

Those factors favor application of California law. As to the first factor, and as described above, Plaintiffs previously admitted that the conduct causing the alleged injury relating to the publication of the CRD Form and Complaint occurred in California.[32] Indeed, this case is about Ms. Lively filing the CRD Form and Complaint *in California*. While Wallace is domiciled in Texas, he has ties to California and, as of the filing of this action (and throughout the period covered by Plaintiffs' allegations), Street was organized there.[33] Therefore, the third factor favors

---

[32] Ex. I ¶ 45.
[33] Dkt. 1 ¶ 3; Ex. D.

the application of California law or, at a minimum, is neutral. While there is no location where the parties' relationship is centered, Wallace has submitted a sworn declaration filed in the NY Litigation, attesting that he understood his work, which as alleged in the CRD Complaint was aimed at "burying" and "destroying" Ms. Lively through a sophisticated and "untraceable" digital campaign, to be directed at California—and *only* California:

> Because I provided feedback to Ms. Nathan, who I understood to be in California most if not all the time, ***I only considered the impact of my work to be in California***. The goal of my work was to inform her and her team, who I anticipated would be in California. And I thought of her work as for Wayfarer Studios, which I knew and know to be based in California. In other words, ***I thought I was doing business and providing my services to individuals in California***.

*See* Ex. M ¶ 28 (emphasis added). Thus, the initial factors favor finding that California has the "most significant relationship" to Plaintiffs' claims and applying California law.

Public policy considerations, which Texas courts emphasize in determining which state's laws should apply, also favor California law. *See e.g. Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) (governmental interest of each forum is the "beginning point" for determining what state has the "most significant relationship" to the claims). Indeed, California has articulated a strong public policy to shield individuals who speak out about sexual harassment from defamation claims. In 2023, California enacted Assembly Bill No. 933 later codified in California Civil Code section 47.1 ("Section 47.1"), which provides (a) that a "communication made by an individual, without malice, regarding an incident of sexual assault, harassment, or discrimination is privileged," and (b) significant monetary remedies, including attorneys' fees as well as treble and punitive damages. Cal. Civ. Code § 47.1(a). As detailed below, Section 47.1 defines a "communication" to include statements about workplace harassment, discrimination and retaliation. *Id*. § 47.1(d)(3). By contrast, Texas has no policy of protecting such speech. And

allowing Plaintiffs to sue for defamation based on sexual harassment allegations filed in California despite section 47.1 would undermine California's strongly articulated policy goals. *See* Restatement (Second) of Conflict of Laws § 6 cmt. e ("[i]f the purposes sought to be achieved by a local statute or common law rule would be furthered by its application to out-of-state facts, this is a weighty reason why such application should be made").

Based on the above-stated contacts and public policies, California law should apply to the privilege analysis.[34]

> ii.    *The litigation privilege provides absolute protection for all statements contained within the CRD Form and CRD Complaint.*

The CRD Form and Complaint are absolutely protected by the litigation privilege.[35] California provides a broad, absolute privilege for statements made in a "judicial proceeding" or "any other official proceeding authorized by law," including those involving administrative agencies, like the CRD. Cal. Civ. Code § 47(b); *Morales v. Coop. of Am. Physicians, Inc., Mut. Prot. Tr.*, 180 F.3d 1060, 1062 (9th Cir. 1999) ("[A]ny doubt as to whether the [litigation] privilege applies is resolved in favor of applying it."); *Cruey v. Gannett Co.*, 64 Cal. App. 4th 356, 368 (1998) (statements made in EEOC complaint were privileged and could not be used to establish liability in defamation action, even if made maliciously). Critically, this privilege attaches even before official proceedings are initiated, where a good faith and serious contemplation of litigation exists. *See Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1251 (2007).

---

[34] In addition, the California anti-SLAPP law should apply and Ms. Lively is entitled to recover her attorney's fees and costs because (1) California has an interest in whether liability can stem from statements made in complaints filed with the CRD, (2) Plaintiffs' claims arise from Lively's conduct "in furtherance of [her] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue," and (3) Plaintiffs have not established a probability of prevailing on their claims. Cal. Code Civ. Proc. § 425.16(b)(1), (c)(1).

[35] In Texas, the judicial proceedings privilege similarly protects "statements made preliminarily to a proposed judicial proceeding." *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 651 (Tex. 2015).

Here, there can be no question that the litigation privilege attaches. Indeed, Plaintiffs' entire case is based on Ms. Lively including their names in the caption of a complaint filed with a government agency, as an administrative prerequisite to initiating litigation. *See Healthsmart Pac., Inc. v. Kabateck*, 7 Cal. App. 5th 416, 431, *as modified* (Jan. 10, 2017) (courts have construed the phrase "judicial proceeding" broadly to include the filing of a complaint); *Harris v. King*, 60 Cal. App. 4th 1185, 1188 (1998) (applying litigation privilege to medical report to State Compensation Insurance Fund); *Harper v. Lugbauer*, No. C 11-01306 JW, 2012 WL 1029996, at *3 (N.D. Cal. Mar. 15, 2012) (dismissing defamation claim under litigation privilege). Whether Ms. Lively subsequently initiated civil litigation—which, of course, she did—is irrelevant. The CRD Form and Complaint are unconditionally privileged and thus bar this action in its entirety.

> iii.   *The fair report privilege bars any claims based on provision of the CRD Form and CRD Complaint to the media.*

In an attempt to circumvent the protections of the judicial privilege, Plaintiffs allege that "Ms. Lively or her agents provided the CRD Complaint to various media entities for out-of-court republication." Dkt. 1 ¶¶ 8, 21. But this conduct, even if true, is absolutely protected under the fair report privilege under California and Texas[36] as well as common law.[37] California law provides an absolute privilege for a "fair and true report in, <u>*or a communication to*</u>, a public journal, of a (A) judicial, (B) legislative, or (C) other official proceeding …, or anything said in the course thereof." Cal. Civ. Code § 47(d)(1) (emphasis added). The allegation that Ms. Lively or her agents merely provided a copy of the CRD Complaint to the press (Dkt. 1 ¶¶ 8, 21) are plainly within this

---

[36] In Texas, the privilege protects a "fair, true, and impartial account of" official proceedings. Tex. Civ. Prac. & Rem. Code § 73.002(a); *Walker v. Beaumont ISD*, 938 F.3d 724, 745 (5th Cir. 2019) ("Texas law recognizes a 'fair reporting privilege' as a defense to defamation.").

[37] Under the common law, the fair report privilege "extends to any person who makes an oral, written or printed report to pass on the information that is available to the general public." Restatement (Second) of Torts, § 611, cmt. c.

privilege. Cal. Civ. Code § 47(d)(1); *Green v. Cortez*, 151 Cal. App. 3d 1068, 1073 (1984) (broadcaster and newspapers are "no doubt 'public journals' within the meaning of the statute"); *Microsoft v. Yokohama Telecom Corp.*, 993 F. Supp. 782, 784 (C.D. Cal. 1998) ("A publication is 'fair and true' if it captures the substance of the judicial proceedings being reported.").

Courts have held that the fair report privilege, which is an "absolute" privilege "construed broadly" by courts, "protects those who communicate information *to the media*" and regardless of the motive for making the report. *Healthsmart*, 7 Cal. App. 5th at 432 ("[F]air and true communications to the news media about allegations in a complaint are covered by the [fair report] privilege."). Indeed, the "explicit purpose" for enacting a 1996 amendment to expand the privilege to include "communication[s]" was to protect communications to the media and abrogate a case that held that an attorney's transmittal of a pleading to a newspaper was not protected. *Id.*. Many other courts have similarly applied the fair report privilege to communications to the press, creating a bridge between the litigation and fair report privileges. *See, e.g., Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 787 (2017) (the fair report privilege "pertains specifically to communications to the press"); *Wentworth v. Hemenway*, No. A154511, 2019 WL 2368520, at *9 (Cal. App. June 5, 2019), *as modified on denial of reh'g* (July 1, 2019) (sharing a complaint filed with the Department of Fair Employment and Housing and describing its allegations to a third party was protected by the fair report privilege); *see also, Abraham v. Lancaster Cmty. Hosp.*, 217 Cal. App. 3d 796, 823 (1990) ("it would defeat the purpose of section 47[] to punish the transmittal of the privileged pleadings to the press.")

> iv. *The sexual harassment privilege protects Ms. Lively's allegedly defamatory statements whether made in legal filings, to the media, or to others.*

Plaintiffs' claims should be dismissed for the additional reason that Ms. Lively's allegations regarding sexual harassment and retaliation against her—including as to who engaged

in such conduct—fall squarely within California's sexual harassment privilege. Cal. Civ. Code § 47.1(a). That privilege provides broad immunity for communications "made by an individual, without malice, regarding an incident of sexual assault, harassment, or discrimination." *Id*.

Section 47.1 provides immunity against claims seeking to hold individuals liable for speaking out about their experiences with sexual harassment and related claims, including retaliation and aiding and abetting—whether in a legal proceeding, to the press, or otherwise. *See* Cal. Civ. Code § 47.1. Under Section 47.1, a covered communication is defined as any "factual information related to an incident of sexual assault, harassment, or discrimination experienced by the individual making the communication," including: (1) an act of sexual harassment by a director or producer, under Civil Code Section 51.9, and (2) "[a]n act of workplace harassment or discrimination, failure to prevent an act of workplace harassment or discrimination, ***aiding, abetting***, inciting, compelling, or coercing an act of workplace harassment or discrimination, or an act of retaliation against a person for reporting or opposing workplace harassment or discrimination. . . ." *Id*. §§ 47.1(d)(2)-(3) (emphasis added). Critically, Section 47.1 also contains a mandatory fee-shifting provision for prevailing parties, which entitles individuals who speak out, like Ms. Lively, "to their reasonable attorney's fees and costs for successfully defending themselves in the litigation, plus treble damages for any harm caused to them by the defamation action against them, in addition to punitive damages available under Section 3294 or any other relief otherwise permitted by law." *Id*. § 47.1(b).

To be protected by the sexual harassment privilege, the speaker need only have "or at any time had, a reasonable basis to file a complaint of sexual assault, harassment, or discrimination, whether the complaint is, or was, filed or not." *Id*. § 47.1(c) (emphasis added). In other words, the sexual harassment privilege attaches regardless of whether a complaint is ever filed and no matter

who the communication is published to. As explained by California's legislature:

> *The protections . . . would apply to individuals who, after relaying any factual statement, whether in the form of a formal complaint or a statement outside a formal proceeding such as to a media outlet, [are] sued for defamation.*[38]

Indeed, the statute was enacted in large part to address defamation claims filed against harassment victims based upon statements made to the press. *Id.* at 72, 83-84.

The sexual harassment privilege applies here because the CRD Form and Complaint, upon which Plaintiffs' entire case rests, are communications made by Ms. Lively, without malice, regarding incidents of "sexual assault, harassment, or discrimination" she experienced on the set of the Film. Cal. Civ. Code § 47.1(a), (d). The Complaint fails to sufficiently allege that Ms. Lively either lacked a reasonable basis to file the *verified* CRD Form and Complaint or did so with malice. Cal. Civ. Code § 47.1(c); Dkt. 1-2, 1-3. Indeed, Plaintiffs admit Ms. Lively was harassed.  Dkt. 1 ¶ 9 ("[Ms. Lively], having been the one harassed…"). Because the Complaint fails to overcome this privilege, and Ms. Lively is entitled to her attorney's fees, costs, and damages, for which she will separately file a motion to recover. Cal. Civ. Code § 47.1(b).

## IV.  CONCLUSION

After engaging in a retaliatory social media campaign against Ms. Lively, Plaintiffs now seek to drag her into a foreign court that lacks jurisdiction in an attempt to further punish her for privileged communications. But as explained above, Plaintiffs' claims lack merit and are futile on their face. Thus, Ms. Lively respectfully requests this Court dismiss this case with prejudice under Fed. R. Civ. P. 12(b)(2), (3), and (6) and award attorney's fees and costs under Cal. Code Civ. Proc. § 425.16(c)(1) and Cal. Civ. Code § 47.1(b).

---

[38] *See* Declaration of Laura Lee Prather, Legislative History Report and Analysis for Assembly Bill 933, Ex. O, O-1 at 28, 63, 84 (emphasis added); *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (courts can take judicial notice of legislative history).

Respectfully submitted,

*/s/ Laura Lee Prather*
Laura Lee Prather
Texas Bar No. 16234200
laura.prather@haynesboone.com
Catherine L. Robb
Texas Bar No. 24007924
catherine.robb@haynesboone.com
Michael J. Lambert
Texas Bar No. 24128020
michael.lambert@haynesboone.com
Reid Pillifant
Texas Bar No. 24126157
reid.pillifant@haynesboone.com

**HAYNES AND BOONE, LLP**
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

**ATTORNEYS FOR DEFENDANT
BLAKE LIVELY**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 4th day of April 2025, a true and correct copy of the above document was served via the CM/ECF system to all counsel of record.

*/s/ Laura Lee Prather*
Laura Lee Prather