**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**FILED**

May 19, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: ___Christian Rodriguez___

DEPUTY

| | | |
|---|---|---|
| JED WALLACE, | § | |
| STREET RELATIONS, INC., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **CASE NO. 1:25-CV-00163-DAE** |
| | § | |
| BLAKE LIVELY, | § | |
| | § | |
| **Defendant.** | § | |

---

**DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK
OF PERSONAL JURISDICTION, IMPROPER VENUE, AND
FAILURE TO STATE A CLAIM UNDER
FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), 12(b)(3), AND 12(b)(6)**

---

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES .......................................................................................... iv

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.  FACTUAL BACKGROUND ............................................................................ 3

    A.  Plaintiffs Were Hired To Bury Ms. Lively In The Court Of Public Opinion In Retaliation For Reporting Sexual Harassment On The Set Of The Film. ................. 3

    B.  Ms. Lively Filed A Complaint With The CRD In December 2024 To Report Sexual Harassment and Retaliation. ....................................................... 4

    C.  Plaintiffs Initiated A Lawsuit In California State Court In Late December 2024 In Connection With A News Article About The CRD Complaint. ................... 7

    D.  Ms. Lively Initiated The NY Litigation And Filed A Rule 202 Petition In Texas Seeking Discovery With Respect To Wallace. ................................. 8

    E.  After Freedman Represented To The First-Filed Court That All Related Claims Should Be Heard There, Ms. Lively Withdrew The Rule 202 Petition And Amended The NY Litigation To Add Plaintiffs As Parties. ............................... 9

    F.  Plaintiffs Filed The Amended Complaint After Ms. Lively Moved To Dismiss. ........................................................................................... 10

III.  ARGUMENT .................................................................................................. 12

    A.  THIS PUNITIVE (AND MERITLESS) LAWSUIT REQUIRES DISMISSAL OUT OF THE GATE BECAUSE PLAINTIFFS FILED IT IN THE WRONG COURT. ........................................................................................ 12

        1.  The First-To-File Rule Demands Dismissal. ................................. 12

        2.  This Court Is Not The Proper Venue For Plaintiffs' Claim. ............. 14

    B.  THIS COURT LACKS PERSONAL JURISDICTION OVER MS. LIVELY. ........ 16

        1.  The Rule 202 Petition Does Not Subject Ms. Lively To Personal Jurisdiction. ................................................................ 16

        2.  The *Calder* Effects Test Does Not Justify Subjecting Ms. Lively To Personal Jurisdiction With Respect To The CRD Complaint. ...................... 18

        3.  Plaintiffs' New Attempt To Manufacture Texas-Based Contacts Does Not Establish Personal Jurisdiction Over Ms. Lively In This Case. ................. 19

    C.  THE AMENDED COMPLAINT REQUIRES DIMISSAL FOR FAILURE TO STATE A CLAIM FOR DEFAMATION. ...................................................... 20

        1.  The Amended Complaint Does Not Comply With Rule 8. .............. 21

        2.  The Amended Complaint Does Not Plausibly Plead Any Statements Capable of a Defamatory Meaning. ................................................ 23

3.    Plaintiffs Fail To Plead Facts Demonstrating Negligence. ............................. 27

4.    The Alleged Statements Are Not Defamatory Per Se, Which Means
Plaintiffs Have Failed To Adequately Allege Damages. .................................. 29

5.    The CRD Complaint Is Privileged As A Matter Of California Law. .............. 30

a.    California privilege law applies. ................................................. 30

b.    The litigation privilege provides absolute protection for all
statements contained within the CRD Complaint. ....................... 31

c.    The fair report privilege bars any claims based on
providing the CRD Complaint to the media. ............................... 32

d.    The sexual harassment privilege protects Ms. Lively's
allegedly defamatory statements. ................................................. 33

IV.    CONCLUSION ............................................................................................... 35

CERTIFICATE OF SERVICE ................................................................................. 36

# TABLE OF AUTHORITIES

**Cases**                                                                                                                **Page(s)**

*Abraham v. Lancaster Cmty. Hosp.*,
   217 Cal. App. 3d 796 (1990) ........................................................................................33

*Action Apartment Assn., Inc. v. City of Santa Monica*,
   41 Cal. 4th 1232 (2007) ..............................................................................................32

*Ameen v. Merck & Co.*,
   226 F. App'x 363 (5th Cir. 2007) ...............................................................................21

*Anderson v. Durant*,
   550 S.W.3d 605 (Tex. 2018)........................................................................................29

*Anderson v. Holder*,
   673 F.3d 1089 (9th Cir. 2012) ....................................................................................34

*Antero Resources Corp. v. C & R Downhole Drilling, Inc.*,
   2019 WL 13193860 (N.D. Tex. Sept. 13, 2019)........................................................23

*Argentieri v. Zuckerberg*,
   8 Cal. App. 5th 768 (2017) .........................................................................................33

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2008).....................................................................................................23

*Bennett v. Zucker*,
   No. 05-19-01445-CV, 2021 WL 3701365 (Tex. App.—Dallas Aug. 20, 2021,
   pet. denied) (mem. op.)................................................................................................17

*Block v. Barnes*,
   No. 1:22-CV-869-LY, 2023 WL 2732552 (W.D. Tex. Mar. 30, 2023)
   (Howell, M.J.)..............................................................................................................19

*Bond v. Lilly*,
   2024 WL 4879324 (Cal. Ct. App. Nov. 25, 2024)......................................................33

*Brown v. Kelly Broad. Co.*,
   48 Cal. 3d 711 (1989) .................................................................................................27

*Buford v. Walton Tex. LP*,
   No. 1:23-cv-1193, 2024 WL 2807022 (W.D. Tex. May 31, 2024) (Ezra, J.) ...........21

*Cadle Co. v. Whataburger of Alice, Inc.*,
   174 F.3d 599 (5th Cir. 1999) ......................................................................................12

*Calder v. Jones,*
    465 U.S. 783 (1984)..................................................................................................18

*Caress v. Fortier,*
    576 S.W.3d 778 (Tex. App.—Houston [1st Dist.] 2019, pet. denied)....................17

*Carpenter v. King,*
    792 F. Supp. 2d 29 (D.D.C. 2011), *aff'd*, 473 Fed. Appx. 4 (D.C. Cir. 2012) ......29

*Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n,*
    624 F.3d 185 (5th Cir. 2010) ..................................................................................30

*Chapa v. Mitchell,*
    No. A-05-CV-769-JN, 2005 WL 2978396 (W.D. Tex. Nov. 4, 2005)...................14

*Clemens v. McNamee,*
    615 F.3d 374 (5th Cir. 2010) ..................................................................................18

*CoreCivic, Inc. v. Candide Group, LLC,*
    46 F.4th 1136 (9th Cir. 2022) .................................................................................24

*Cruey v. Gannett Co.,*
    64 Cal. App. 4th 356 (1998) ...................................................................................32

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)................................................................................................16

*Dallas Morning News, Inc. v. Tatum,*
    554 S.W.3d 614 (Tex. 2018)...................................................................................24

*Epstein v. Gray Television, Inc.,*
    No. 06-CV-431-WRF, 2007 WL 295632 (W.D. Tex. Jan. 5, 2007) .......................20

*Farias v. Garza,*
    426 S.W.3d 808 (Tex. App.—San Antonio 2014, pet. denied) ...............................29

*Fed. Ins. Co. v. Prosperity Bank,*
    No. SA-12-CA-112, 2012 WL 12887903 (W.D. Tex. Oct. 26, 2012) ....................21

*Fielding v. Hubert Burda Media, Inc.,*
    415 F.3d 419 (5th Cir. 2005) ..................................................................................18

*For the Gusto Motorsports, Inc. v. Lane,*
    No. 3:16-CV-1074-L, 2017 WL 896898 (N.D. Tex. Mar. 7, 2017)........................13

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
    592 U.S. 351 (2021)................................................................................................18

*Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co., L.P.*,
No. CIV. A. H-07-637, 2007 WL 5186798 (S.D. Tex. Sept. 11, 2007) .................................16

*Freedom Communications, Inc. v. Coronado*,
296 S.W.3d 790 (Tex. App.—Corpus Christi–Edinburg 2009), *vacated on
other grounds*, 372 S.W.3d 621 (Tex. 2012) ...........................................................32

*Garcia v. Hernandez*,
2023 WL 6531569 (C.D. Cal. Sept. 19, 2023) .....................................................21

*Gateway Mortg. Grp., L.L.C. v. Lehman Bros. Holdings, Inc.*,
694 F. App'x 225 (5th Cir. 2017) ...........................................................13

*Gentilello v. Rage*,
627 F.3d 540 (5th Cir. 2010) .................................................................27

*Green v. CBS Inc.*,
286 F.3d 281 (5th Cir. 2002) .................................................................25

*Green v. Cortez*,
151 Cal. App. 3d 1068 (1984) ...............................................................33

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
921 F.3d 522 (5th Cir. 2019) ............................................................16, 17

*Harper v. Lugbauer*,
No. C 11-01306 JW, 2012 WL 1029996 (N.D. Cal. Mar. 15, 2012) .....................................32

*Harris v. King*,
60 Cal. App. 4th 1185 (1998) ...............................................................32

*Hart v. Donostia LLC*,
290 F. Supp. 3d 627 (W.D. Tex. 2018).......................................................13

*Havens v. Autozoners, LLC*,
2017 WL 2546816 (E.D. Cal. June 13, 2017) .....................................................21

*Healthsmart Pac., Inc. v. Kabateck*,
7 Cal. App. 5th 416, *as modified* (Jan. 10, 2017) ...........................................32, 33

*Herman v. Cataphora, Inc.*,
730 F.3d 460 (5th Cir. 2013) .................................................................19

*Hotchkin v. Bucy*,
No. 02-13-00173-CV, 2014 WL 7204496 (Tex. App.—Fort Worth Dec. 18,
2014, no pet.) .............................................................................26

*Huntsman Corp. v. Int'l Risk Ins. Co.*,
    No. 1:08-cv-029, 2008 U.S. Dist. LEXIS 33242 (E.D. Tex. Apr. 22, 2008)..........................13

*Immanuel v. Cable News Network, Inc.*,
    No. 4:21-CV-00587, 2022 WL 1748252 (E.D. Tex. May 31, 2022) ...............................15, 19

*Issa v. Applegate*,
    31 Cal. App. 5th 689 (2019) ..................................................................................................24

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
    854 F.3d 797 (5th Cir. 2017) ................................................................................................20

*Jackson v. Dallas Indep. Sch. Dist.*,
    No. CIV. A.398-CV-1079-D, 1998 WL 386158 (N.D. Tex. July 2, 1998)......................21, 23

*Johnson v. TheHuffingtonPost.com, Inc.*,
    21 F.4th 314 (5th Cir. 2021) ...........................................................................................16, 18

*Kaelin v. Globe Commc'ns Corp.*,
    162 F.3d 1036 (9th Cir. 1998) .........................................................................................23, 24

*KCCR, Inc. v. Brunner*,
    No. H-10-cv-01263, 2010 WL 4236868 (S.D. Tex. Oct. 21, 2010) .................................13, 14

*Kechara House Buddhist Ass'n Malaysia v. Does 1-3*,
    2015 WL 5538999 (N.D. Cal. Sept. 18, 2015) ....................................................................23

*Kinetic Concepts, Inc. v. Connetics Corp.*,
    No. CIV.A.SA-04-CA0237XR, 2004 WL 2026812 (W.D. Tex. Sept. 8, 2004) ....................14

*Kingman Holdings, L.L.C. v. Everbank*,
    No. CV SA-14-CA-107-FB, 2014 WL 12877303 (W.D. Tex. Mar. 31, 2014)......................17

*Lalla v. G&H Towing Co.*,
    No. CV SA-19-CA-0542-FB, 2019 WL 11626516 (W.D. Tex. July 26, 2019).....................15

*U.S. ex rel. Lam v. Tenet Healthcare Corp.*,
    481 F. Supp. 2d 673 (W.D. Tex. 2006)...................................................................................7

*Larson v. Cobra Flex Printers LLC*,
    No. 1:23-cv-427-DAE, 2024 WL 3161480 (W.D. Tex. May 13, 2024) (Ezra,
    J.).........................................................................................................................................21

*Leyendecker & Associates, Inc. v. Wechter*,
    683 S.W.2d 369 (Tex. 1984)................................................................................................30

*In re Lipsky*,
    460 S.W.3d 579 (Tex. 2015)................................................................................................29

*Lively v. Wayfarer Studios LLC, et al*,
  No. 1:24-cv-10049-LJL (S.D.N.Y. Dec. 31, 2024) ................................................. 2

*Mann Mfg. v. Hortex, Inc.*,
  439 F.2d 403 (5th Cir. 1971) ................................................................................. 13

*Med. Air Services Ass'n, Inc. v. CareFlite*,
  No. 4:21-CV-153-Y, 2021 WL 12288640 (N.D. Tex. Nov. 1, 2021) .................... 29

*Med. Marijuana, Inc. v. ProjectCBD.com*,
  46 Cal. App. 5th 869 (2020) ................................................................................. 23

*Microsoft Corp. v. Yokohama Telecom Corp.*,
  993 F. Supp. 782 (C.D. Cal. 1998) ....................................................................... 33

*Montoya Frazier v. Maxwell*,
  No. ___ S.W. 3d ___, 2025 WL 494699 (Tex. App.—Fort Worth Feb. 13,
  2025, no pet. h.) (en banc) ................................................................................... 17

*Morales v. Coop. of Am. Physicians, Inc., Mut. Prot. Tr.*,
  180 F.3d 1060 (9th Cir. 1999) ............................................................................... 31

*Mullinix v. Thirty-Eight Street, Inc.*,
  No. 1:19-cv-067; 2019 WL 4579869, at *5 (W.D. Tex. Sept. 20, 2019) ............... 20

*Newton v. Nat'l Broad. Co.*,
  930 F.2d 662 (9th Cir. 1990) ................................................................................. 35

*Novak Druce Connolly Bove & Quigg, LLP v. Arochi*,
  No. H-18-3490, 2019 WL 4222700 (S.D. Tex. Sept. 5, 2019) .............................. 14

*Nutall v. Juarez*,
  984 F. Supp. 2d 637 (N.D. Tex. 2013) .................................................................. 15

*Obsidian Fin. Group, LLC v. Cox*,
  740 F.3d 1284 (9th Cir. 2014) ............................................................................... 29

*PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*,
  260 F.3d 453 (5th Cir. 2001) ................................................................................. 16

*Panda Brandywine Corp. v. Potomoac Elec. Power Co.*,
  No. 3:00-CV-1165-D, 2000 WL 35615925 (N.D. Tex. Sept. 15, 2000) ............... 20

*Parker v. Spotify USA, Inc.*,
  569 F. Supp. 3d 519 (W.D. Tex. 2021) (Ezra, J.) ................................... 23, 25, 26

*Pollock v. Tri-Modal Distribution Servs., Inc.*,
  11 Cal.5th 918, 491 P.3d 290 (2021) ...................................................................... 4

*Pruitt v. Jourdanton Hosp. Corp.*,
   No. 5:14-CV-808-DAE, 2015 WL 402853 (W.D. Tex. Jan. 29, 2015) (Ezra, J.) ........................................................................................................................27

*Ramirez v. Chenega Corp.*,
   No. EP-06-CA-0208-DB, 2006 WL 8434037 (W.D. Tex. Nov. 16, 2006) ...........................20

*Randall D. Wolcott M.D., P.A. v. Sebelius*,
   635 F.3d 757 (5th Cir. 2011) .................................................................................................2

*Redden v. Smith & Nephew, Inc.*,
   No. 3:09-CV-1380-L, 2010 WL 2944598 (N.D. Tex. July 26, 2010) ...................................22

*Riley v. City of Spokane Valley*,
   No. 2:21-cv-00355-SMJ, 2022 WL 2195744 (E.D. Wash. June 16, 2022) ...........................26

*RJ Mach. Co., Inc. v. Canada Pipeline Accessories Co. Ltd.*,
   No. A-13-CA-579-SS, 2015 WL 5139295 (W.D. Tex. Aug. 31, 2015) .................................17

*Rochefort v. Glob. Precision Services*,
   No. EP-20-CV-00298-FM, 2021 WL 3568239 (W.D. Tex. Mar. 4, 2021) ...........................22

*Roe v. Patterson*,
   No. 23-40281, 2024 WL 1956148 (5th Cir. May 3, 2024) ...................................................23

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999) .............................................................................................................12

*Russo v. Barnard*,
   No. 3:21-cv-165, 2021 WL 5567380 (S.D. Tex. Nov. 29, 2021) .........................................15

*Salermo v. Hughes Watters & Askanase LLP*,
   516 F. Supp. 3d 696 (S.D. Tex. 2021) ..............................................................................19, 20

*Save Power Ltd. v. Syntek Fin. Corp.*,
   121 F.3d 947 (5th Cir. 1997) ...........................................................................................13, 14

*Seidenstein v. Nat'l Med. Enterprises, Inc.*,
   769 F.2d 1100 (5th Cir. 1985) ..............................................................................................34

*Shell Oil Co. v. Writt*,
   464 S.W.3d 650 (Tex. 2015) .................................................................................................31

*Special Quality Alloys, Inc. v. Coastal Mach. & Supply, Inc.*,
   No. 4:22-CV-04258, 2023 WL 7412945 (S.D. Tex. Nov. 9, 2023) .....................................17

*Tarver v. Apple Bus Co.*,
   A-20-CV-1232-LY, 2022 WL 22329282 (W.D. Tex. Jan. 24, 2022) ...................................22

*Tex. v. Real Parties In Interest*,
    259 F.3d 387 (5th Cir. 2001) ........................................................................17

*Thousand Trails, Inc. v. Foxwood Hill Property Owners Ass'n, Inc.*,
    1999 WL 172322 (N.D. Tex. Mar. 22, 1999) ...............................................17

*Tittle v. Kansas Geological Soc'y*,
    No. 3:08-CV-1908-O, 2009 WL 10704726 (N.D. Tex. Apr. 15, 2009) ..................20

*Trail v. Boys and Girls Clubs of Nw. Ind.*,
    845 N.E.2d 130 (Ind. Apr. 12, 2006) ...........................................................26

*Turner v. Harvard MedTech v. Nevada, LLC*,
    620 F. Supp. 3d 569 (W.D. Tex. 2022) (Ezra, J.) ........................................19

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA,*
    *AFL-CIO*, 751 F.2d 721, 728-29 (5th Cir. 1985).........................................12

*Walden v. Fiore*,
    571 U.S. 277 (2014)......................................................................................19

*Walker v. Beaumont ISD*,
    938 F.3d 724 (5th Cir. 2019) .........................................................................33

*Watkins v. Tex. Dep't of Crim. Just.*,
    269 Fed. App'x 457 (5th Cir. 2008) ..............................................................23

*Wentworth v. Hemenwa*y,
    No. A154511, 2019 WL 2368520 (Cal. App. June 5, 2019), *as modified on
    denial of reh'g* (July 1, 2019) .......................................................................33

**Statutes**

28 U.S.C. § 1391(b)(2) ..............................................................................................15

Cal. Civ. Code § 47(b) ..............................................................................................31

Cal. Civ. Code § 47(d)(1) ..........................................................................................33

Cal. Civ. Code § 47.1(a) ...........................................................................................33

Cal. Civ. Code § 47.1(b) ...........................................................................................35

Cal. Civ. Code § 47.1(c) ...........................................................................................34

Cal. Code Civ. Proc. § 425.16(b)(1), (c)(1) .............................................................30

**Other Authorities**

Cal. Rule of Court 2.111 ...................................................................................................24

California Civil Rights Department, Complaint Process ..................................................4

Fed. R. Civ. P. 8(a)(2) ....................................................................................................21

Fed. R. Civ. P. 12(b)(2) ..............................................................................................2, 16

Fed. R. Civ. P. 12(b)(3) ..............................................................................................2, 14

Fed. R. Civ. P. 12(b)(6) ....................................................................................................2

Megan Twohey, *'We Can Bury Anyone': Inside a Hollywood Smear Machine*,
    THE NEW YORK TIMES, Dec. 21, 2024............................................................................7

Restatement (Second) of Conflict of Laws § 6 ...............................................................30

Restatement (Second) of Conflict of Laws § 6 cmt. e ....................................................31

Restatement (Second) of Torts, § 611, cmt. c ................................................................32

Tex. R. Civ. P. 202.1 ......................................................................................................17

Tex. R. Civ. P. 202.3(a) ..................................................................................................10

Defendant Blake Lively files this Motion to Dismiss the First Amended Complaint (Dkt. 21 ("Amended Complaint" or "FAC")) filed by Plaintiff Jed Wallace ("Wallace") and his company Street Relations, Inc. ("Street") (collectively, "Plaintiffs").

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This lawsuit does not belong in this Court or in any court. It is not designed to litigate any cognizable claim of defamation. It is the latest in a far-reaching attempt to muzzle a woman for speaking out about sexual harassment. Not satisfied with their stealth social media retaliation campaign against Ms. Lively for reporting on the harassment and misconduct she and others endured on the set of the film *It Ends With Us* ("the Film"), now Plaintiffs (and their funders) seek retribution by hauling her into court simultaneously in jurisdictions nearly 2,000 miles apart. The Court should reject this form of judicial harassment and dismiss the Amended Complaint with prejudice.

Wallace and Street specialize in mitigating crises by shaping public perception to the benefit of their high-profile clients and to the detriment of whomever they choose to target. In this case, their task was to launch a "social media combat" plan to "bury" Ms. Lively's reputation, to call her credibility into question, and to conceal the bad acts of some of their clients—all in retaliation for Ms. Lively reporting sexual harassment and misconduct on the set of the Film. Just days after Plaintiffs admit they began work on the "project," their clients reported starting "to see a shift on social, ***due largely to Jed and his team's efforts to shift the narrative towards shining a spotlight" on Ms. Lively and her husband*** and away from their client's own misconduct. Once Ms. Lively discovered this retaliatory conspiracy, she exercised her right to petition by filing an administrative complaint with the California Civil Rights Department ("CRD") and, after receiving CRD's permission to do so, a federal lawsuit in the United States District Court for the Southern District of New York ("First-Filed Court"), a case in which Wallace and Street are now

parties. *See Lively v. Wayfarer Studios LLC, et al*, No. 1:24-cv-10049-LJL (S.D.N.Y. Dec. 31, 2024) (collectively, with consolidated case No. 1:25-cv-00449, "NY Litigation").[1]

Plaintiffs ignore the pending First-Filed Case and attempt to forum shop their claim into this Court, alleging that Ms. Lively defamed them by including them in the caption of her complaint to the CRD. For the first time in amendment, Plaintiffs claim—based solely on "information and belief"—they also were defamed by unidentified and unspecified statements that happened to occur in Texas, one of which allegedly occurred months before Wallace or Street were even approached by their clients or funders. Another one of the newly purported "statements" in Texas is not even a statement at all—astonishingly, Plaintiffs now claim that Ms. Lively *silently* defamed them by choosing *not* to respond when confronted with an individual who called her a liar while declaring "Justice for Justin." Plaintiffs' claim is meritless and fails as a matter of law and requires dismissal for multiple, independently fatal reasons. *First*, this Court is not the right place to hear this lawsuit pursuant to the First-to-File Rule and Rule 12(b)(3) of the Federal Rules of Civil Procedure ("FRCP") for improper venue. *Infra* § III.A. This Court also cannot, consistent with constitutional due process and FRCP 12(b)(2), exercise jurisdiction over Plaintiffs' claim because Ms. Lively is not subject to personal jurisdiction in Texas. *Infra* § III.B. Even if *arguendo* Plaintiffs could overcome the substantial jurisdictional defects, FRCP 12(b)(6) requires dismissal because the Amended Complaint fails to state a claim for defamation. *Infra* § III.C.

---

[1] References to the NY Litigation docket refer to case No. 24-cv-10049. The Amended Complaint in the NY Litigation is attached as Exhibit A. *See* Amended Complaint, NY Litigation, Feb. 18, 2025, Dkt. 84 ("NY Amended Complaint"). The Court can take judicial notice of all court filings referenced here. *See Randall D. Wolcott M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs Were Hired To Bury Ms. Lively In The Court Of Public Opinion In Retaliation For Reporting Sexual Harassment On The Set Of The Film.

Ms. Lively is an actress and entrepreneur who resides in New York, New York. FAC ¶ 21. She starred in the Film, which Justin Baldoni directed and which Wayfarer Studios ("Wayfarer")— the movie studio owned by Baldoni and his billionaire business partner, Steve Sarowitz ("Sarowitz")—produced and owns. Dkt. 21-2 ¶¶ 8, 26. Ms. Lively reported sexual harassment and misconduct that occurred on the set of the Film by Baldoni and Wayfarer CEO, Jamey Heath ("Heath"), including that Baldoni: divulged information about his sex life; made derogatory, degrading, and sexual comments; described his own genitalia; improvised unwanted intimacy that had not been rehearsed, choreographed, or discussed with Ms. Lively in advance; added graphic content to the script, including multiple new scenes with nudity, and on-camera orgasm; and added unscripted nudity to a birthing scene for which he cast his friend as Ms. Lively's OBGYN. *Id*. ¶¶ 1, 3, 28-51. A resulting signed contractual rider laid out 17 specific protections to ensure a safe set, **including a mandate that Baldoni, Heath, Wayfarer, and others not retaliate against Ms. Lively "for raising concerns or requesting safeguards."** *Id*. ¶¶ 2, 29, 56-77.

As promotional events for the Film began in the summer of 2024, Baldoni became concerned that Ms. Lively would speak publicly about the on-set harassment and solicited the assistance of crisis management expert, Melissa Nathan ("Nathan"), and her company The Agency Group PR LLC ("TAG"), Jennifer Abel ("Abel"), and Sarowitz—who promised to spend "$100 million" to ruin Ms. Lively's and her family's lives. *Id*. ¶¶ 8-9, 83, 89-103. According to the Amended Complaint, Wallace and Street were "first approached" by TAG on August 7, 2024 "about assisting it in social/digital mitigation and remediation regarding Wayfarer Studios[.]" FAC ¶ 21. Wallace is the owner and founder of Street, which describes itself as a "crisis mitigation firm

primarily helping families and individuals who find themselves unjustly attacked, extorted, doxed, swatted, scammed or needing help navigating their most frightening situations." *Id*. ¶ 19. Wallace incorporated Street in California in 2008 and converted it to a Texas corporation on February 6, 2025 (*after* filing this lawsuit), listing the address of the California law firm of lawyer Bryan Freedman (who serves as counsel for Baldoni) as both the "organizer of the Corporation" and as Street's California agent for process. *Id*. ¶ 20.[2] Plaintiffs confirm in the Amended Complaint that they "began work" on the "project" on August 9, 2024, and performed work "regarding" the Film and "its two stars," Justin Baldoni and Blake Lively. *Id*. ¶¶ 22-23.

**B.    Ms. Lively Filed A Complaint With The CRD In December 2024 To Report Sexual Harassment and Retaliation.**

On December 20, 2024, Ms. Lively filed an administrative complaint with the CRD, as a prerequisite to initiating a lawsuit in federal court,[3] that included (1) a required intake form (Dkt 21-1 at 5-7 ("CRD Form")) and (2) an attachment that detailed the misconduct in the form of a federal complaint (Dkt. 21-2 ("Attached CRD Complaint") (collectively "CRD Complaint")).[4] The CRD Form included a caption that named Ms. Lively as the Complainant and ten respondents, and stated as follows:

> ***Additional Complaint Details:*** *Complainant Blake Lively alleges that Respondents Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve*

---

[2] *See* Articles of Incorporation, Secretary of State of the State of California, Aug. 29, 2008, Ex. B; Certificate of Conversion, Street Relations, Inc., State of Texas, February 5, 2025, Ex. C; Certificate of Conversion, Street Relations, Inc., State of California, February 6, 2025, Ex. D.

[3] Under California law, a person subjected to discrimination, harassment, or retaliation "must submit an intake form to CRD" and must obtain a "Right-to-Sue" notice from CRD "before filing [a] lawsuit in court." *See* California Civil Rights Department, Complaint Process, https://calcivilrights.ca.gov/complaintprocess/; *Pollock v. Tri-Modal Distribution Servs., Inc*., 11 Cal.5th 918, 931, 491 P.3d 290, 295 (2021).

[4] The Amended Complaint defines the CRD Form as the "CRD Complaint" and the Attached CRD Complaint as the "Draft Complaint." FAC ¶ 3. But the Attached CRD Complaint was not a "draft"—Ms. Lively submitted it as an attachment to the CRD Form to provide "Additional Complaint Details." Dkt. 21-1 at 6.

*Sarowitz, Melissa Nathan, the Agency Group PR LLC, Jennifer Abel, RWA Communications LLC, Jed Wallace, and/or Street Relations Inc. engaged in a variety of conduct in violation of California Government Code section 12940 (the "FEHA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). The conduct includes: sexual harassment; retaliation; failure to investigate, prevent, and/or remedy harassment; and aiding and abetting harassment and retaliation.* **_Please see attached complaint for specific details._**

Dkt. 21-1 at 5-7 (second emphasis added). The Attached CRD Complaint named the same ten individuals and entities in its caption and, in its 62 pages, explained the "specific details" in the form of factual allegations that formed the basis of Ms. Lively's claims. Dkt. 21-2 at 2. The nearly 50-paragraph Factual Background section detailed the sexual harassment that Ms. Lively and others faced on the set of the Film. *Id*. ¶¶ 26-77. The remaining 125 paragraphs—as described immediately below—detailed the retaliatory plan that Wayfarer, Baldoni, Heath, and Sarowitz ("the Wayfarer Parties") launched after the Film's production, in the summer of 2024, with the assistance of TAG, Nathan, Abel and the Plaintiffs, and relied heavily on text messages exchanged amongst some of the defendants. *Id*. Other than in the caption, Wallace's name appears in only 7 paragraphs of the Attached CRD Complaint, all of which relate to the retaliatory campaign and the majority of which refer to Wallace in the context of text communications that identify him by name. *Id*. ¶¶ 18-19, 138-39, 142, 146, 148. Street is not mentioned except in the caption. *Id*. at 2.

As described in the Attached CRD Complaint, TAG provided Baldoni, Heath, and others a "Scenario Planning" document on August 2, 2024 that suggested that if Ms. Lively made "her grievances public" they could "get ahead of this narrative" by pushing that she had a "less than favorable reputation," "planting stories about the weaponization of feminism…" and misleadingly blaming Ms. Lively for production members' job losses. *Id*. After Baldoni responded by explaining that he was not "feeling the protection I felt on the call," Abel and Nathan commiserated over text:

Abel:      " . . . I think you guys need to be tough and show the strength of what you guys can do in these scenarios. ***He wants to feel like she can be buried***."

Nathan:    "Of course- but you know when we send over documents *we can't send over the work we will or could do because that could get us in a lot of trouble*.

*We can't write it down to him. We can't write we will destroy her.* We will go to this. We will do this. We will do this. We will do this.

He has to look at it as an information document for us to be armed with. That's all . [*sic*] *Imagine if a document saying all the things that he wants ends up in the wrong hands*."

*Id.* ¶¶ 12-13 117- 99 (emphasis and ellipses added). Nathan followed with a text: *"you know we can bury anyone [sic] But I can't write that to him." Id.* ¶ 14. The next day, Ms. Nathan provided pricing quotes ranging from $75,000 per month for a minimum of three months for "the creation of social fan engagement to go back and forth with any negative accounts, helping to change narrative" to $175,000 for a three-to-four month period for "full reddit, full social account take downs, full social crisis team on hand for anything" including to "engage with audiences in the right way, start threads of theories[.]" *Id.* ¶ 107. Ms. Nathan emphasized: "*All of this will be most importantly untraceable.*" *Id.* (emphasis added).

On August 7, Abel and Nathan agreed that "*we really need to put the social combat plan*" into "motion." *Id.* ¶ 122. That plan, as Abel described it, was to engage in "social media mitigation and proactive fan posting to counter the negative" and "social manipulation." *Id.* On August 8, 2024, and in response to an online post criticizing Baldoni, Abel confirmed that "*we've flagged to Jed and his team for more serious action on the social side.*" *Id.* ¶ 146. By August 9, 2024—the day Plaintiffs allege they began to work on the "project" (FAC ¶¶ 22-23)—Wallace reported to Nathan that "*we are crushing it on Reddit.*" Dkt. 21-2 ¶ 138. At the end of the day, Abel, Baldoni, Heath, Nathan, and other members of the TAG team exchanged text messages to celebrate that they had "confused people" with "mixed messaging," and Abel commented that the "narrative online is so freaking good" that she viewed the day's work "as a total success, as does Justin." *Id.*

¶¶ 132-34. On August 10, 2024, a TAG employee noted that they had "started to see a shift on social, ***due largely to Jed and his team's efforts to shift the narrative towards shining a spotlight on Blake and Ryan***." *Id*. ¶ 19. Later that day, Nathan texted Abel that the "majority of socials are so pro Justin" and that he "doesn't realise how lucky he is right now." *Id*. ¶¶ 135-36. She wrote that the "socials are really really ramping up" and that it is "***actually sad because it just shows you have [sic] people really want to hate on women***." *Id*. ¶ 141. In the days that followed, Plaintiffs worked with Nathan, Abel, and TAG to "amplify" or "boost" or suppress certain narratives and posts on social media. *Id*. ¶¶ 147-50. For example, on August 18, 2024, TAG told Baldoni that they would "let digital know" about a TikTok video Baldoni circulated in which the poster criticized Ms. Lively. *Id*. ¶ 150. The same day, Nathan proposed that they "chat to Jed as well on this" in response to a negative story about Baldoni. *Id*. ¶ 148.

**C.**     <u>**Plaintiffs Initiated A Lawsuit In California State Court In Late December 2024 In Connection With A News Article About The CRD Complaint.**</u>

The day after Ms. Lively filed the CRD Complaint, on December 21, 2024, *The New York Times* published an article reporting on the allegations entitled, '*We Can Bury Anyone': Inside a Hollywood Smear Machine* (the "Article").[5] Ten days later, *both Plaintiffs*—along with the other individuals and entities identified in the CRD Complaint and all represented by Freedman— initiated a lawsuit against *The New York Times* in California state court, including based on assertions that the Article defamed them by stating that "Plaintiffs orchestrated a retaliatory public relations campaign against Lively for speaking out about sexual harassment" and that they "waged an affirmative campaign to harm Lively" by planting news stories "to shape social media discourse." Ex F ("California Complaint") at 3 and ¶ 136. The California Complaint identified

---

[5] Megan Twohey, *'We Can Bury Anyone': Inside a Hollywood Smear Machine*, THE NEW YORK TIMES, Dec. 21, 2024, NY Litigation, Dkt. 107-1, Ex. E; *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006) (judicial notice of newspaper articles).

Street as "a California corporation" at "all relevant times." Ex. F ¶ 40.

**D.    Ms. Lively Initiated The NY Litigation And Filed A Rule 202 Petition In Texas Seeking Discovery With Respect To Wallace.**

On the same day that Plaintiffs filed suit against *The New York Times* in California, Ms. Lively initiated the NY Litigation with a complaint nearly identical in substance to the Attached CRD Complaint and which asserted federal and California state law claims against the Wayfarer Parties, It Ends With Us Movie LLC, Nathan, TAG, and Abel (the "NY Wayfarer Defendants"). Ex. G.[6] On January 16, 2025, all the NY Wayfarer Defendants other than TAG ("NY Wayfarer Plaintiffs") filed a separate lawsuit in the First-Filed Court asserting seven causes of action, including based on the allegation that the CRD Complaint was "rife with lies and doctored 'evidence.'" *Wayfarer Studios LLC, et al, v. Lively et al*, No. 1:25-cv-0049.[7]

On January 21, 2025, Ms. Lively initiated a Rule 202 Petition in Hays County to obtain a pre-suit deposition of Wallace, in order to investigate the full nature and scope of his role in implementing and carrying out the retaliatory campaign. On January 22, 2025, process servers hired by Ms. Lively made the first of seven attempts to serve Wallace, who continually refused to accept service.[8] On January 23, 2025, the process server received a text message from an associate at Freedman's law firm stating: "The law firm Liner Freedman Taitelman + Cooley LLP will accept service for him. Do not try to serve him again. Thank you."[9] Later that day, Freedman told

---

[6] In response to the CRD Complaint, the CRD issued a "Right-to-Sue" notice, which allowed Ms. Lively to pursue a lawsuit for up to one year. Dkt. 21-3.

[7] On January 20, 2025, the First-Filed Court consolidated the case initiated by the NY Wayfarer Plaintiffs with the one previously filed by Ms. Lively. *Id*., Dkt. 49.

[8] *See* Exhibit H, Affidavit of Kelly Murski, Process Server, January 30, 2025; Exhibit I, Affidavit of Aaron Camp, Process Server, February 3, 2025.

[9] Ex. H.

counsel for Ms. Lively that "my office never agreed to accept service of process of anything."[10]

Ms. Lively also attempted to serve Wallace by certified mail, which he again refused to accept.

**E.**     **After Freedman Represented To The First-Filed Court That All Related Claims Should Be Heard There, Ms. Lively Withdrew The Rule 202 Petition And Amended The NY Litigation To Add Plaintiffs As Parties.**

On January 31, 2025, the NY Wayfarer Defendants—*without* being joined by Wallace and Street notwithstanding their being plaintiffs in the California Complaint—filed an Amended Complaint in the NY Litigation to include *The New York Times* as a party. NY Litigation, Dkt. 50. The parties to the California Complaint, *including* Wallace and Street, dismissed the California Complaint on February 3, 2025. The First-Filed Court held an initial pre-trial conference on the same day, during which Freedman explained his reasoning for filing an amended complaint to include *The New York Times* and dismissing the California Action:

> "After seeing … your case management order and just for the efficiency of the case, *it kind of made no sense to be doing this on different coasts and with different courts. It seemed that so many of the issues are going to be so similar that to have it all in one proceeding in front of your Honor would make the most sense.*"[11]

During the same hearing, counsel for Ms. Lively represented to the First-Filed Court that she would be amending her complaint to add additional parties and claims.[12] The next morning, Ms. Lively filed a notice nonsuiting her Rule 202 Petition that referenced Freedman's representation to the First-Filed Court:

> "At a pretrial conference in the United States District Court for the Southern District of New York, held on February 3, 2025, counsel for Wayfarer parties, who is also counsel to Mr. Wallace, took the position that the interests of case management and efficiency counsel in favor of litigation related to the underlying dispute at issue in this Petition being raised and litigated in the S.D.N.Y. *See Lively v. Wayfarer Studios LLC, et al.*, 24-cv-10049 (LJL); *Wayfarer Studios LLC, et al.*, 25-cv-449

---

[10] Ex. J.

[11] Ex. K at 23:14-19.

[12] Ex. K at 9:24-10:9.

(LJL). Thus, for purposes of judicial economy, Petitioner is voluntarily filing this nonsuit without prejudice."[13]

As of that date, Ms. Lively had been unable to serve Wallace.[14]

That same day, the afternoon of February 4, 2025, and despite the representations made to the First-Filed Court the day before, Wallace and Street initiated this lawsuit in Texas, asserting a claim for defamation and seeking to obtain "issue-preclusive effect" by asking this Court to declare that Plaintiffs are not liable for claims that they anticipated Ms. Lively would bring against them in the NY Litigation. Dkt. 1 ("Original Complaint") ¶¶ 17-23. After filing the Original Complaint, Plaintiffs sent a letter to Ms. Lively demanding a retraction, correction, or clarification pursuant to Chapter 73.051 *et seq.* of the Texas Civil Practice and Remedies Code ("CPRC"), to which Ms. Lively responded by requesting additional information pursuant to CPRC § 73.056(a). On February 18, 2025, Ms. Lively filed an Amended Complaint in the NY Litigation, adding Plaintiffs as parties and asserting against them claims for aiding and abetting harassment and retaliation, intentional infliction of emotional distress, false light invasion of privacy, and civil conspiracy under California law. *See* Ex. A.

**F.    Plaintiffs Filed The Amended Complaint After Ms. Lively Moved To Dismiss.**

After Ms. Lively moved to dismiss the Original Complaint, rather than respond, Plaintiffs filed the Amended Complaint asserting a single cause of action for defamation and defamation *per se* based on the contents of the CRD Complaint and on alleged "identical or similar statements"

---

[13] *See* Petitioner's Notice of Nonsuit Without Prejudice, Ex. L.

[14] Plaintiffs call it "remarkable" that Ms. Lively nonsuited the Rule 202 Petition "[w]ithout waiting for the Texas judge to rule and…without taking Wallace's deposition" (FAC ¶ 5), which ignores that their misrepresentations about, and avoidance of, service prevented either a hearing or a deposition from even being scheduled. *See* Tex. R. Civ. P. 202.3(a) ("At least 15 days before the date of the hearing on the petition, the petitioner must serve the petition and a notice of the hearing … on all persons petitioner seeks to depose…").

that Plaintiffs claim based solely on "information and belief" were made in Texas. Plaintiffs claim

the CRD Complaint defamed them because: (1) its caption and "overall gist" created "the

impression that all causes of action—severe allegations of sexual harassment and violations of

California and federal law—are attributable to all defendants Plaintiffs" (FAC ¶¶ 28, 31); and (2)

its "general thrust and gist" falsely accused Plaintiffs of participating in the retaliation campaign,

including in the following bolded language in two paragraphs (FAC ¶¶ 44, 45-50):

- "The retaliation campaign relied on more than just publicists and crisis managers spinning stories. They also retained subcontractors, including a Texas-based contractor named Jed Wallace, **who weaponized a digital army around the country** from New York to Los Angeles **to create, seed, and promote content that appeared to be authentic on social media platforms and internet chat forums**. The Baldoni-Wayfarer team would then feed pieces of this manufactured content to unwitting reporters, making content go viral in order to influence public opinion and thereby cause an organic pile on. To safeguard against the risk of Ms. Lively ever revealing the truth about Mr. Baldoni, the Baldoni-Wayfarer team created, planted, amplified, and boosted content designed to eviscerate Ms. Lively's credibility. They engaged in the same techniques to bolster Mr. Baldoni's credibility and suppress any negative content about him."

- "Ms. Nathan's reference to 'Jed,' is a reference to Mr. Jed Wallace, an independent contractor based in Austin, Texas, who was **retained by TAG** to perform social media services on behalf of Wayfarer and Mr. Baldoni in connection with TAG's engagement. The quotation appears to be a reference to efforts by Mr. Wallace to seed and influence online forums on Reddit attacking Ms. Lively and defending Mr. Baldoni."

¶¶ 29-30 (citing Attached CRD Complaint ¶¶ 18, 139) ("Challenged Statements").

For the first time in the Amended Complaint, Plaintiffs assert that Ms. Lively (or others

based on their expansive definition of "Lively") made "identical or similar statements" in Texas.

That assertion is based on allegations that "upon information and belief" there were "identical or

similar statements" made in Texas, specifically that Ms. Lively (1) "never admitted that her

statements were false" in response to a Texas resident confronting her during an appearance at

SXSW in Austin by stating "Blake Lies" and referencing "Justice for Justin" (FAC ¶¶ 14, 64

("SXSW Silence")); (2) "made additional defamatory comments about Plaintiffs" at a hotel in Waco (*id.* ¶¶ 15, 67); and (3) promoted the Film at the (June 2024) Book Bonanza event in Texas, during which discovery may "reveal whether she made any additional defamatory remarks about Plaintiffs" (*id.* ¶¶ 60-63) (collectively, "Information and Belief Statements"). As to all Information and Belief Statements, the Amended Complaint alleges that discovery "will reveal the extent" of the statements. *Id.* ¶¶ 14-15, 63.

## III.    ARGUMENT

### A.    THIS PUNITIVE (AND MERITLESS) LAWSUIT REQUIRES DISMISSAL OUT OF THE GATE BECAUSE PLAINTIFFS FILED IT IN THE WRONG COURT.

This case is a blatant attempt to further penalize Ms. Lively for speaking out by forcing her to fight claims arising from the same set of facts on two cross-country fronts. The Court can, and should, dismiss the Amended Complaint in its entirety before considering its substantive claims based on "threshold grounds for denying audience to a case on the merits." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999).

#### 1.    The First-To-File Rule Demands Dismissal.

Federal courts, including the Fifth Circuit, "long have recognized that the principle of comity **requires** federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728–29 (5th Cir. 1985) (emphasis added). Where, as here, there exist parallel federal actions where the "core issues," "proof," "questions" or "subject matter" "**might**" substantially overlap, the proper course of action" for the second-filed-court is to defer to the First-Filed Court and dismiss the lawsuit. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603, 606 (5th Cir. 1999) ("when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it

if the issues raised by the cases substantially overlap"); *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 630 (W.D. Tex. 2018) (courts must apply the First-To-File Rule in the absence of "compelling circumstances"); *see also Gateway Mortg. Grp., L.L.C. v. Lehman Bros. Holdings, Inc.*, 694 F. App'x 225, 227 (5th Cir. 2017); *KCCR, Inc. v. Brunner*, No. H-10-cv-01263, 2010 WL 4236868, at *3 (S.D. Tex. Oct. 21, 2010).

There is no question that substantial overlap exists between this case and the NY Litigation. The Amended Complaint and its claim are based on the CRD Complaint that Ms. Lively filed *in order to receive permission to file* the NY Litigation, and which is virtually substantively identical to the complaint she ultimately filed there. *Compare* Dkt. 21-2, *with* Ex. A. There is not just a **likelihood** of substantial overlap between the two cases, there is a **guarantee** of **full** overlap.[15] Both cases are "essentially mirror images of each other" as evident by the fact that the claims Plaintiffs originally asserted in the California Complaint—which expressed the same grievances as they plead in this case—are now part of the NY Litigation (albeit without Plaintiffs, who chose to file the same claims in this Court instead). *For the Gusto Motorsports, Inc. v. Lane*, No. 3:16-CV-1074-L, 2017 WL 896898, at *1 (N.D. Tex. Mar. 7, 2017); *see also Gateway*, 694 F. App'x at 227 (dismissal where the cases are "proceeding presents the affirmative case" and the second merely "asserts defenses"); *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *Mann Mfg.*, 439 F.2d at 407. The Court need not engage in further analysis to apply the First-To-File Rule and dismiss the Amended Complaint in its entirety, putting a stop to the multi-jurisdictional judicial harassment against Ms. Lively.

---

[15] The "ultimate determination of whether there *actually* was a substantial overlap" is not for the second-filed court. *Mann Mfg. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971); *Huntsman Corp. v. Int'l Risk Ins. Co.*, No. 1:08-cv-029, 2008 U.S. Dist. LEXIS 33242, at *11-12 (E.D. Tex. Apr. 22, 2008).

Plaintiffs may attempt to argue that this case (not the NY Litigation) is the first-filed case because Ms. Lively did not add Plaintiffs to that lawsuit until after they filed this one. [16] But the First-To-File Rule does not require "'complete identity of parties'" and focuses instead only on whether there is a likelihood of a substantial overlap between the two suits. *Save Power*, 121 F.3d at 951; *Brunner*, 2010 WL 4236868, at *3 ("it is well-settled law that cases need not be identical or encompass a complete identity of parties to be duplicative and fall within the purview of the first-to-file rule"). Nor should the Court reward Plaintiffs, who admitted in their Original Complaint—in a representation they have removed in the Amended Complaint—that they filed this case against Ms. Lively in this Court because they were "threatened with liability" and hoped for "an early adjudication without waiting until [Ms. Lively] should see fit to begin an action" against them. Dkt. 1 ¶ 18. Dismissal is the appropriate result given the likelihood of substantial overlap described above and to avoid rewarding Plaintiffs for their evasive tactics, anticipatory filing, and forum shopping. *See Chapa v. Mitchell*, No. A-05-CV-769-JN, 2005 WL 2978396, at *2 (W.D. Tex. Nov. 4, 2005); *Kinetic Concepts, Inc. v. Connetics Corp.*, No. CIV.A.SA-04-CA0237XR, 2004 WL 2026812, at *4 (W.D. Tex. Sept. 8, 2004); *accord Novak Druce Connolly Bove & Quigg, LLP v. Arochi*, No. H-18-3490, 2019 WL 4222700, at *2 (S.D. Tex. Sept. 5, 2019).

### 2.    <u>This Court Is Not The Proper Venue For Plaintiffs' Claim.</u>

This case warrants dismissal for improper venue pursuant to FRCP 12(b)(3) because Plaintiffs' claim for defamation does not arise from "a substantial part of the events or omissions" that occurred in this district. FAC ¶ 65 (asserting venue under 28 U.S.C. § 1391(b)(2)). Plaintiffs' claim in connection with the Attached CRD Complaint arose in California where the alleged

---

[16] Memorandum of Law in Support of Defendants' Motion to Dismiss or, in the alternative, Motion to Sever and to Transfer Venue, NY Litigation, March 19, 2025, Dkt. 142, Ex. N at 20-21.

defamatory conduct occurred, not any events that occurred in Texas. *Russo v. Barnard*, No. 3:21-cv-165, 2021 WL 5567380, at *2 (S.D. Tex. Nov. 29, 2021) (§ 1391(b)(2)) requires analyzing "the *defendant's* conduct, and where that conduct took place"). Plaintiffs cannot rely on the Information and Belief Statements for purposes of venue because these conclusory allegations violate Rule 8 and fail to state any cognizable claim arising from that conduct. *Infra* § III.C.1. And, even if that were not the case, the "substantial" part of the activities from which Plaintiffs' claim arises is the CRD Complaint, not unspecified statements that Plaintiffs added to the Amended Complaint solely to attempt to manufacture jurisdiction and venue in a state and judicial district that have nothing to do with their claims. Nor can Plaintiffs satisfy § 1391(b)(2) in *this case* by claiming a "substantial part of the underlying events" Ms. Lively sought to investigate *in the Rule 202 Petition* occurred here. FAC ¶ 65. Plaintiffs' claim for defamation arises from the CRD Complaint, not from the filing of a Rule 202 Petition. Further, where *Plaintiffs* conducted their business, i.e. the location where Wallace participated in the retaliatory campaign against Mr. Lively, is irrelevant to the venue analysis because actions "taken by a plaintiff do not support venue under § 1391(b)(2)." *See Lalla v. G&H Towing Co.*, No. CV SA-19-CA-0542-FB, 2019 WL 11626516, at *4 (W.D. Tex. July 26, 2019). Even if true that Plaintiffs felt injury in this district that would not make it a proper venue. *Id.* ("the fact that a plaintiff residing in a judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district"); *Nutall v. Juarez*, 984 F. Supp. 2d 637, 646 (N.D. Tex. 2013); *Immanuel v. Cable News Network, Inc.*, No. 4:21-CV-00587, 2022 WL 1748252, at *5 (E.D. Tex. May 31, 2022).[17]

---

[17] Plaintiffs claim that the alleged "defamatory statements were 100% directed at Texas, targeting Texas residents and were published in Texas" and because Ms. Lively could "reasonably foresee" that the CRD Complaint would be republished in Texas. FAC ¶ 65. Even if there were any legal relevance to Plaintiffs' claim that the CRD Complaint was "100% directed in Texas" for purposes of venue, the Court should reject it as inconsistent with their own pleading.

Dismissal of the Amended Complaint is warranted because Plaintiffs cannot demonstrate that their claim for defamation arose from events that occurred in this District.[18]

**B.    THIS COURT LACKS PERSONAL JURISDICTION OVER MS. LIVELY.**

Dismissal pursuant to FRCP 12(b)(2) is warranted because the Court lacks specific or general jurisdiction over Ms. Lively. Plaintiffs do not assert that general jurisdiction exists over Ms. Lively in Texas, nor could they because Ms. Lively is a "citizen of New York." FAC ¶ 4; *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Nor do they meet their burden to establish a *prima facie* case for specific jurisdiction because they fail to plead facts demonstrating that Ms. Lively purposefully availed herself of the privilege of conducting activities in Texas or that Plaintiffs' claims "arise out of or relate to" those purposeful contacts. *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021).

**1.    The Rule 202 Petition Does Not Subject Ms. Lively To Personal Jurisdiction.**

For the Rule 202 Petition to amount to purposeful availment, Plaintiffs must, but cannot, demonstrate that, by filing it, Ms. Lively initiated "an original action" in the state or litigated "extensively on the merits." *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 541 (5th Cir. 2019); *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 460 (5th Cir. 2001).[19] Despite Plaintiffs labeling the Rule 202 Petition the "Texas Lawsuit" (FAC ¶ 9), courts in Texas consistently have held that a Rule 202 Petition is <u>not</u> an "original action" because it merely authorizes the taking of a deposition "to investigate *a*

---

[18] Plaintiffs' "choice of forum" does not deserve any deference because they filed this lawsuit in anticipation of claims in another jurisdiction. *See, e.g., Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co., L.P.*, No. CIV. A. H-07-637, 2007 WL 5186798, at *4 (S.D. Tex. Sept. 11, 2007).

[19] Plaintiffs reversed course in the Amended Complaint and no longer rely on *Halliburton* and *PainWebber*. *Compare* Original Complaint ¶ 15, *with* Am. Comp. ¶ 57.

*potential* claim or suit." Tex. R. Civ. P. 202.1; *Tex. v. Real Parties In Interest*, 259 F.3d 387, 394 n5 (5th Cir. 2001) (Rule 202 is "only an investigatory tool"); *RJ Mach. Co., Inc. v. Canada Pipeline Accessories Co. Ltd.*, No. A-13-CA-579-SS, 2015 WL 5139295, at *5 (W.D. Tex. Aug. 31, 2015) ("Courts hold consistently that a Rule 202 petition is a request for discovery, not a claim, demand, or cause of action.").[20] Nor does filing a Rule 202 Petition demonstrate extensive litigation on the merits because it "is not a legal claim on the merits" at all;[21] and, even if it were, the filing and non-suit prior to service do not qualify as having "litigated extensively." *See Special Quality Alloys, Inc. v. Coastal Mach. & Supply, Inc.*, No. 4:22-CV-04258, 2023 WL 7412945, at *3 (S.D. Tex. Nov. 9, 2023) (appearing as a defendant, moving for a stay, filing a third-party complaint, and serving Rule 26 disclosures "do not come close to the level necessary to constitute a voluntary submission to the jurisdiction" of a Texas court).[22]

If filing the Rule 202 Petition constitutes purposeful availment, it still would not permit the exercise of personal jurisdiction over Ms. Lively because, as discussed above, Plaintiffs' claims

---

[20] *Accord Kingman Holdings, L.L.C. v. Everbank*, No. CV SA-14-CA-107-FB, 2014 WL 12877303, at *3 (W.D. Tex. Mar. 31, 2014) ("Rule 202 petition is not in itself a civil lawsuit"); *Montoya Frazier v. Maxwell*, No. ___ S.W. 3d ___, 2025 WL 494699, at *5, *25 (Tex. App.— Fort Worth Feb. 13, 2025, no pet. h.) (en banc) (Rule 202 Petition is a "presuit-discovery device," not "legal action" under the Texas Citizens Participation Act); *Bennett v. Zucker*, No. 05-19-01445-CV, 2021 WL 3701365, at *4 (Tex. App.—Dallas Aug. 20, 2021, pet. denied) (mem. op.) (a party filing a Rule 202 petition does not assert a substantive claim or cause of action).

[21] *Caress v. Fortier*, 576 S.W.3d 778, 781 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (Rule 202 petition does not place unfiled claims before trial court for adjudication on the merits).

[22] Plaintiffs' suggestion that Ms. Lively availed "herself of her rights under a *Texas* law" by responding to Plaintiffs' February 5, 2025 retraction demand letter is equally unavailing. FAC ¶ 16. Courts have routinely held that even ***proactively sending*** demand "letters, even if they threatened litigation, [is] not enough to show minimum contacts with Texas." *See Halliburton Energy Servs.*, 921 F.3d at 542 (collecting cases). By ***responding*** to a demand letter to request information regarding the falsity of the allegedly defamatory statement, Ms. Lively did not initiate an original action or litigate extensively on the merits. *See Thousand Trails, Inc. v. Foxwood Hill Property Owners Ass'n, Inc.*, 1999 WL 172322, at *3 (N.D. Tex. Mar. 22, 1999) (sending letters are "merely a fortuitous, insignificant contact").

do not "arise out of or relate to" its filing. *Johnson*, 21 F.4th at 317. If Ms. Lively had never filed the Rule 202 Petition, Plaintiffs' claims about the CRD Complaint would remain intact and unchanged. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). The Rule 202 Petition provides no basis to subject Ms. Lively to jurisdiction in this state.

### 2. The *Calder* Effects Test Does Not Justify Subjecting Ms. Lively To Personal Jurisdiction With Respect To The CRD Complaint.

Plaintiffs appear to advance a theory of specific jurisdiction based on *Calder v. Jones*, 465 U.S. 783 (1984) by alleging that the CRD Complaint was "aimed at Texas where both Plaintiffs reside and they undoubtedly caused harm" because 2 of the 203 paragraphs in the Attached CRD Complaint (¶¶ 18 & 139) "specifically state that [Wallace] is based in Texas." FAC ¶ 59. To meet the *Calder* standard, Plaintiffs must, but cannot, show that Plaintiffs' activities in Texas (or the state itself) is the "focus" of the subject matter of the CRD Complaint *and* the CRD Complaint relied on sources located in Texas to provide "new and substantial disclosures." *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010) (citing *Calder*); *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 426 (5th Cir. 2005). Plaintiffs do not even attempt to meet the second requirement, and the Court can and should reject the application of *Calder* on those grounds alone. The focal point of the Attached CRD Complaint—the publication on which their clams are based—is California: Ms. Lively filed it with a California administrative agency based on violations of California law by her California employers and by their co-conspirators, all of whom had direct connections to California (including both Plaintiffs), based on activities that occurred outside of Texas.[23] Wallace has submitted a sworn declaration in the NY Litigation attesting that he understood his work (which is part of the factual basis of the CRD Complaint) was directed exclusively to California:

---

[23] FAC ¶¶ 3-4; Decl. of Jed Wallace, NY Litigation, March 18, 2025, Dkt. 142-1, Ex. M ¶ 8.

"Because I provided feedback to Ms. Nathan, who I understood to be in California most if not all the time, *I only considered the impact of my work to be in California*. The goal of my work was to inform her and her team, who I anticipated would be in California. And I thought of her work as for Wayfarer Studios, which I knew and know to be based in California. In other words, *I thought I was doing business and providing my services to individuals in California*."

*See* Ex. M ¶ 28 (emphasis added). Plaintiffs' allegations of harm in Texas are insufficient to render it the focal point. *Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [her] to the forum in a meaningful way."); *Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013) (even if "the majority of the claimed harm is felt in the forum state," courts have "declined to find personal jurisdiction when the statements focus on activities and events outside the forum state"); *accord Block v. Barnes*, No. 1:22-CV-869-LY, 2023 WL 2732552, at *6 (W.D. Tex. Mar. 30, 2023) (Howell, M.J.), *report and recommendation adopted*, No. 1:22-CV-869-DAE, 2023 WL 4582396 (W.D. Tex. July 18, 2023) (Ezra, J.); *Immanuel v. CNN*, 2022 WL 1748252, at *5.

### 3.    Plaintiffs' New Attempt To Manufacture Texas-Based Contacts Does Not Establish Personal Jurisdiction Over Ms. Lively In This Case.

The Amended Complaint's allegations relating to the Information and Belief Statements cannot satisfy Plaintiffs' burden to plead facts that "establish a prima facie case of personal jurisdiction" at the motion to dismiss stage. *See Salermo v. Hughes Watters & Askanase LLP*, 516 F. Supp. 3d 696, 710 (S.D. Tex. 2021) (when assertions are made on "information and belief," the plaintiff must still allege "enough facts to state a claim to relief that is plausible on its face," which requires the plaintiff to show "that her inferences could conceivably follow from her allegations"); *Turner v. Harvard MedTech v. Nevada, LLC*, 620 F. Supp. 3d 569, 573 (W.D. Tex. 2022) (Ezra, J.). As discussed in detail below in Section III.C.1., the Information and Belief Statements fail to comply with the most basic requirements of Rule 8 and, even if they did, do not demonstrate a cognizable claim of defamation. Pleading on "information and belief" is "recognized as little more

than 'a lawyerly way of saying' that the plaintiff 'does not know that something is a fact but just suspects it or has heard it.'" *Salermo*, 516 F. Supp. 3d at 710 (quotation omitted). Plaintiffs cannot as a matter of law establish a *prima facie* case of personal jurisdiction by relying solely on conclusory, implausible, and wholly unsupported allegations of fact. *See Mullinix v. Thirty-Eight Street, Inc.*, No. 1:19-cv-067; 2019 WL 4579869, at *5 (W.D. Tex. Sept. 20, 2019) ("The problem for Plaintiff is that he has failed to allege that the [defendants] made any false representations [ ] while they were physically present in Texas."); *Panda Brandywine Corp. v. Potomoac Elec. Power Co.*, No. 3:00-CV-1165-D, 2000 WL 35615925, at *4 (N.D. Tex. Sept. 15, 2000) ("The prima facie standard does not require the court to credit conclusory allegations, even if uncontroverted."); *Ramirez v. Chenega Corp.*, No. EP-06-CA-0208-DB, 2006 WL 8434037, at *4 (W.D. Tex. Nov. 16, 2006) ("evidence does not demonstrate prima facie proof to substantiate Plaintiff's conclusory allegations"). Plaintiffs' inability to plead any "allegations or evidence regarding the content" of the Information and Belief Statements defeats their burden. *Tittle v. Kansas Geological Soc'y*, No. 3:08-CV-1908-O, 2009 WL 10704726, at *6 (N.D. Tex. Apr. 15, 2009).

## C. THE AMENDED COMPLAINT REQUIRES DIMISSAL FOR FAILURE TO STATE A CLAIM FOR DEFAMATION.

Plaintiffs fail to plausibly allege the elements of a defamation claim, including (1) a specific defamatory statement, (2) defamation by implication, (3) fault, and (4) damages.[24] Even if Plaintiffs can surmount these basic hurdles, which they cannot, the claim fails for the additional reason that the CRD Complaint is subject to multiple privileges under California law and therefore constitutes protected speech.

---

[24] Because there is no notable conflict between the elements required to prevail on a defamation claim under Texas or California law, this claim fails no matter which state's law the Court applies. *See Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 813 (5th Cir. 2017); *Epstein v. Gray Television, Inc.*, No. 06-CV-431-WRF, 2007 WL 295632, at *7 (W.D. Tex. Jan. 5, 2007).

1.    <u>**The Amended Complaint Does Not Comply With Rule 8.**</u>

Despite having had the opportunity to amend their complaint, Plaintiffs still have failed to meet the "particular pleading" that Rule 8 requires to sufficiently state a claim for defamation. *Jackson v. Dallas Indep. Sch. Dist.*, No. CIV. A.398-CV-1079-D, 1998 WL 386158, at *5 (N.D. Tex. July 2, 1998); Fed. R. Civ. P. 8(a)(2) (pleading requires "a short and plain statement of the claim showing that the pleader is entitled to relief"); *see generally Larson v. Cobra Flex Printers LLC*, No. 1:23-cv-427-DAE, 2024 WL 3161480, at *2 (W.D. Tex. May 13, 2024) (Ezra, J.) (Rule 8 requires "more than unadorned accusations, 'labels and conclusions,' a formulaic recitation of the elements of a cause of action,' or 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007)); *see Buford v. Walton Tex. LP*, No. 1:23-cv-1193, 2024 WL 2807022, at *2 (W.D. Tex. May 31, 2024) (Ezra, J.) ("plaintiff must do more than recite the formulaic elements of a cause of action"). To comply with Rule 8 in the context of defamation, Plaintiffs must not only "specifically state the time and place of publication" but also must include allegations specifically "***identifying the alleged defamatory statement and the speaker***." *Fed. Ins. Co. v. Prosperity Bank*, No. SA-12-CA-112, 2012 WL 12887903, at *2 (W.D. Tex. Oct. 26, 2012) (emphasis added) (citations omitted); *accord Ameen v. Merck & Co.*, 226 F. App'x 363, 370 (5th Cir. 2007); *Havens v. Autozoners, LLC*, 2017 WL 2546816, at *3 (E.D. Cal. June 13, 2017); *Garcia v. Hernandez*, 2023 WL 6531569, at *3 (C.D. Cal. Sept. 19, 2023). They fail to do so in multiple ways.

The Amended Complaint violates Rule 8 by relying on impermissible group pleading rather than identifying the speaker of any specific statements. *Ameen*, 226 Fed. Appx. at 371 (failure to "identify the speaker" was "too vague to support" defamation claim); *Havens*, 2017 WL 2546816, at *4 (dismissing defamation claim where plaintiff did "not differentiate between defendants"). Plaintiffs define "Lively" not to refer to Ms. Lively herself but to include "her agents

including her lawyers, consultants and husband, Ryan Reynolds and their related entities, including but not limited to Betty Buzz LLC, Blake Brown, Aviation Gin, Mint Mobile, and Maximum Effort Productions." FAC p. 3 n. 1. In other words, any allegations in the Amended Complaint may refer to any number of unspecified individuals or corporate entities who may be associated with Ms. Lively or her husband without any indication as to whom or why Ms. Lively is liable for that conduct. Such "unadorned accusations" and "sweeping generalizations" of unnamed "agents" without any "further factual enhanced" and which "reveal nothing and only intimate a 'sheer possibility of wrongdoing" requires dismissal. *Redden v. Smith & Nephew, Inc.*, No. 3:09-CV-1380-L, 2010 WL 2944598, at *5 (N.D. Tex. July 26, 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).[25]

Separate from the impermissible group pleading, the Amended Complaint fails specifically to identify the alleged defamatory content. As to the Information and Belief Statements, the Amended Complaint does not identify *any statement at all*, relying only on general suppositions that Ms. Lively (or others) may have said something, but they cannot say what exactly she may have said, when, or to whom, if she even said anything at all about Plaintiffs while in Texas. The Amended Complaint's "failure to identify the content" of the Information and Belief Statements "is fatal," and Plaintiffs cannot "force" Ms. Lively to "speculate as to what potentially defamatory statement" she made in order to defend herself. *Rochefort v. Glob. Precision Services*, No. EP-20-CV-00298-FM, 2021 WL 3568239, at *3 (W.D. Tex. Mar. 4, 2021); *see Roe v. Patterson*, No. 23-

---

[25] *See also Tarver v. Apple Bus Co.*, A-20-CV-1232-LY, 2022 WL 22329282, at *5 (W.D. Tex. Jan. 24, 2022), *report and recommendation adopted*, 2022 WL 22329275 (W.D. Tex. Mar. 1, 2022) (dismissing defamation claim where the "identities of the alleged speakers remain uncertain"); *Redden*, 2010 WL 2944598, at *5 (defamation claim insufficient under Rule 8 where it failed to "provide specificity with respect to *who* made the statements and to *whom* the statements were made").

40281, 2024 WL 1956148, at *3 (5th Cir. May 3, 2024); *Stukes*, 614 Fed. App'x at 794 (affirming dismissal for failure "to identify any specific defamatory statements"); *Watkins v. Tex. Dep't of Crim. Just.*, 269 Fed. App'x 457, 465-66 (5th Cir. 2008) (affirming dismissal where plaintiff "presented no evidence of any specific defamatory statements"); *Jackson*, 1998 WL 386158, at *5 (requiring a defamation claimant to sufficiently identify the allegedly defamatory content); *Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 893 (2020) ("statements alleged to constitute libel must be specifically identified, if not pleaded verbatim, in the complaint" (internal quotation omitted)).[26] Plaintiffs bear the burden of pleading allegedly defamatory statements *now*, and may not rely on what they believe discovery may show. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2008) (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Antero Resources Corp. v. C & R Downhole Drilling, Inc.*, 2019 WL 13193860, at *1 (N.D. Tex. Sept. 13, 2019); *Kechara House Buddhist Ass'n Malaysia v. Does 1-3*, 2015 WL 5538999, at *5-6 (N.D. Cal. Sept. 18, 2015).

## 2.    The Amended Complaint Does Not Plausibly Plead Any Statements Capable of a Defamatory Meaning.

Leaving aside that the Amended Complaint violates Rule 8 (*supra* § III.C.1) and any statements contained in the CRD Complaint are protected as privileged (*infra* § III.C.5), the Amended Complaint does not plausibly allege any facts demonstrating any statements are capable of a defamatory meaning. *Parker v. Spotify USA, Inc.*, 569 F. Supp. 3d 519, 528 (W.D. Tex. 2021) (Ezra, J.).[27] Plaintiffs' primary theory is that the CRD Complaint defamed them by implication,

---

[26] *See also Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998) ("Defamation actions cannot be based on snippets taken out of context.").

[27] "Determining whether statements are capable of a defamatory meaning is an objective, not subjective inquiry" appropriate to resolution on a motion to dismiss because the "reasonable meaning of allegedly defamatory statements is a question of law[.]" *Id.*

*i.e.* that it implies Plaintiffs engaged in sexual harassment because someone would see the caption and believe that all of the individuals listed engaged in all of the causes of actions. That theory fails as a matter of law because such an inference is unreasonable. *Issa v. Applegate*, 31 Cal. App. 5th 689, 707 (2019) (italics in original) (first element of defamation by implication is that the "interpretation of the statement is reasonable"); *CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1145 (9th Cir. 2022) (affirming dismissal because "articles cannot reasonably be understood as implying" the defamatory meaning alleged).[28] The CRD Complaint identified all defendants, including Plaintiffs, opposite a list of the causes of action alleged—which is common practice in many jurisdictions and required in California state courts (*see* Cal. Rule of Court 2.111)—and the body contained detailed factual allegations related to her claims. None of the seven paragraphs of allegations in the CRD Complaint that mention Wallace state or suggest that either he or Street harassed Ms. Lively. *Supra* § II.B. The entirety of the CRD Complaint (which the Court is required to consider) makes clear that Ms. Lively was accusing Plaintiffs of engaging in a campaign of retaliation *after* the alleged harassment, including by expressly alleging that the retaliation campaign for which Plaintiffs were hired began months *after* filming wrapped. Even the lone media report Plaintiffs claim mentioned Wallace understood the CRD Complaint did not accuse him of harassment, but only of being part of the "effort to tarnish Lively's reputation[.]"[29]

---

[28] The standard for defamation by implication is higher in Texas, requiring allegations of a defamatory meaning that an objectively reasonable reader *would* draw *and* "additional, affirmative evidence" within the publication suggesting the defendant "intends or endorses the defamatory inference." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 635 (Tex. 2018).

[29] The Amended Complaint refers to 10 outlets that reportedly published stories on the CRD Complaint, but identifies only *People Magazine* as naming Plaintiffs, presumably in an article that references Wallace only in the following line: "It was also filed against Jed Wallace, Melissa Nathan and Jennifer Abel, each of whom are named in the alleged effort to tarnish Lively's reputation earlier this year." FAC ¶ 6; https://people.com/everything-blake-lively-alleges-in-complaint-against-justin-baldoni-it-ends-with-us-8765513. The *Elle* article previously attached to the Complaint also referenced only the effort to harm Ms. Lively's reputation. Dkt. 1-4.

Plaintiffs' theory that the Challenged Statements in particular and the CRD Complaint as a whole defamed Plaintiffs because they did not engage in retaliation or "create, seed, and promote content" on social media platforms and internet chat forums and were "not retained by TAG" do not convey a defamatory meaning. FAC ¶¶ 29-30. Those allegedly defamatory statements cannot support a claim because they are "not more damaging" to Plaintiffs "reputation, in the mind of the average person," than the following pleaded admissions:

- Wallace is the owner and founder of Street (*id*. ¶ 1);

- Street is a "crisis mitigation firm" that clients engage when they feel "unjustly attacked, extorted, doxed, swatted, scammed or needing help navigating their most frightening situation" (*id*. ¶ 19);

- Ms. Lively reported sexual harassment "had taken place on the set of the" Film during its filming (*id*. ¶ 3);

- TAG "approached" Plaintiffs on August 7, 2024—after the filming of the Film—"about assisting it in social/digital mitigation and remediation regarding Wayfarer Studios" (*id*. ¶ 22);

- Plaintiffs agreed to and began to perform work two days later, on August 9, 2024, including "by monitoring social media regarding" the Film, Baldoni, and Ms. Lively (*id*. ¶¶ 23, 43);

- Plaintiffs performed a "job" for TAG, Wayfarer, and Baldoni and "provided advice to TAG and Wayfarer" regarding public reaction to the Film, Baldoni, and Ms. Lively (*id*. ¶¶ 23, 43, 46-47).

*Green v. CBS Inc.*, 286 F.3d 281, 283 (5th Cir. 2002); *Parker*, 569 F. Supp. 3d at 535–36 (dismissal for failure to plead facts "that would show the podcast as a whole is reasonably interpreted to be defamatory towards Plaintiff"). Whatever disagreement Plaintiffs may have with the minutia about the type of work Plaintiffs performed, whether they would characterize it as retaliation, or who ultimately paid them, does not change their own admissions that TAG approached Plaintiffs in August 2024 to assist Wayfarer in "social/digital mitigation and remediation" in connection with Ms. Lively's claims of sexual harassment, and, two days later, began to perform work on a "project" relating to the Film, Baldoni, and Ms. Lively. As far as whether Plaintiffs were "retained

by TAG," or paid by *someone else*—perhaps Mr. Sarowitz as part of his $100 million campaign

to ruin Ms. Lively's life—does not negate Plaintiffs' admission that they were retained to perform

work in connection with Ms. Lively's claims of sexual harassment.  Moreover, the question of *who*

retained them is not capable of a defamatory meaning. *Parker*, 569 F. Supp. 3d at 532.

The dearth of factual allegations about the Information and Belief Statements defeats

Plaintiffs' burden to plausibly demonstrate the existence of any defamatory statements. Plaintiffs'

theory with respect to the SXSW Silence is that Ms. Lively conveyed a defamatory implication by

choosing not to respond to an individual telling her "Blake Lies" and "Justice for Baldoni." In

other words, Plaintiffs perversely seek to punish Ms. Lively for showing *restraint* by saying

*nothing* about them at all.  Such a claim fails as a matter of law because silence alone does not

constitute a defamatory statement. *Hotchkin v. Bucy*, No. 02-13-00173-CV, 2014 WL 7204496, at

*4 (Tex. App.—Fort Worth Dec. 18, 2014, no pet.) ("Silence cannot therefore be defamation as a

matter of law.").[30] Taken to its logical conclusion, Plaintiffs' argument would impose liability on

anyone who chooses to remain silent on a topic when confronted—*including*, for example,

Plaintiffs or their counsel refusing to admit that their mutual clients sexually harassed and

retaliated against Ms. Lively.  Such an argument not only is wrong as a matter of law, it is frivolous

and reflects the extent to which Plaintiffs will conjure fantastical facts and legal theories to punish

Ms. Lively. As far as Book Bonanza, Plaintiffs plead that the event occurred *before* TAG even had

approached Plaintiffs, which makes it implausible that Ms. Lively published any statements *about*

*them*. *Gentilello v. Rage*, 627 F.3d 540, 544 (5th Cir. 2010) (courts need not accept "unwarranted

---

[30] *See also Riley v. City of Spokane Valley*, No. 2:21-cv-00355-SMJ, 2022 WL 2195744, at *5
(E.D. Wash. June 16, 2022) ("Silence alone cannot be a 'defamatory communication.'"); *Trail v.
Boys and Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 137 (Ind. Apr. 12, 2006) ("It would be an odd
use of the defamation doctrine to hold that silence constitutes actionable speech.").

factual inferences"). With respect to whatever occurred in Waco, there are no allegations from which the Court could infer that Ms. Lively made any defamatory statements about Plaintiffs. *Id*. While apparently these non-descript claims have been formulated to manufacture jurisdiction, they fail to provide facts sufficient to state a claim and Plaintiffs cannot meet that burden now, not based on what they hope discovery may reveal.

### 3.  Plaintiffs Fail To Plead Facts Demonstrating Negligence.

The Amended Complaint cannot survive dismissal because it does not include any allegations demonstrating negligence, which Plaintiffs must do assuming they intend to contend that they are private figures.[31] To sufficiently plead negligence, Plaintiffs "must show that 'the defendant should have known that the published statement was false'" at the time of its publication. *Pruitt v. Jourdanton Hosp. Corp.*, No. 5:14-CV-808-DAE, 2015 WL 402853, at *11 (W.D. Tex. Jan. 29, 2015) (Ezra, J.) (dismissing defamation claim for failure to allege any facts demonstrating how defendant "would have known that her statement was false"); *Brown v. Kelly Broad. Co*., 48 Cal. 3d 711, 747 (1989) ("private-figure plaintiff must prove at least negligence"). As applied here, Plaintiffs must convince the Court that Ms. Lively should have known that Plaintiffs did not assist the Wayfarer Parties, TAG, Nathan, and Abel in their retaliatory efforts to "bury" her. Such a conclusion would be directly contrary to Plaintiffs' own admissions that they *did* assist Wayfarer, Baldoni, TAG, and others. *Supra* § III.C.2. What's more, the factual basis for Ms. Lively's belief that Plaintiffs were involved in the retaliation campaign is laid out in the CRD Complaint—which Plaintiffs incorporated into the Amended Complaint—including text messages about Plaintiffs showing their direct coordination with TAG, Wayfarer, Baldoni, and Heath. Dkt. 21-2 ¶¶ 19

---

[31] Ms. Lively does not concede that Plaintiffs are private figures, but assumes so for purposes of this motion, even though the Complaint never says as much. Ms. Lively also does not concede that the Amended Complaint sufficiently pleads actual malice, but she does not engage with those allegations at this time given that Plaintiffs cannot even demonstrate the negligence standard.

("started to see a shift on social, due largely to Jed and his team's efforts to shift the narrative towards shining a spotlight on Blake and Ryan"), 122 (bring Plaintiffs "up to speed"); 138 (Jed: "we are crushing it on Reddit"); 252 (Zoom between Wallace and TAG); 146 ("chat to Jed"); 257 ("Jamey [Heath] & Jed connected on this"). Far from demonstrating negligence, the Amended Complaint and the CRD Complaint both show why *Ms. Lively had every reason to have known that the statements in her CRD Complaint were (and remain) true*.

The crux of Plaintiffs' allegations relating to fault relates to Ms. Lively's decision to initiate the NY Litigation without originally naming Plaintiffs and to, instead, seek a pre-action deposition by filing a Rule 202 Petition. FAC ¶¶ 7-10.[32] Both of these decisions *post-dated* the filing of the CRD Complaint and therefore offer no probative value as to what she should have known *at the time the allegedly defamatory statements were made, i.e.* when she filed the CRD Complaint. But even aside from the timing, the allegations fail to demonstrate negligence. Plaintiffs' claim that Ms. Lively's decisions surrounding the Rule 202 Petition reflect that she had "no evidence to support" her claims is a conclusory assertion the Court need not accept, but it also ignores that Ms. Lively has since *added the Plaintiffs to the NY Litigation*. The Amended Complaint in that action adds additional allegations about Plaintiffs, including texts referencing conversations in which Wallace participated and the work performed. *See* Ex. A ¶¶ 226 (Abel asking if TAG could get Plaintiffs "up to speed" so they could "hit the ground running"); 250-57 (working to "amplify" or "boost"); 253-54 (Wallace reaching out to Nathan for a Zoom conversation); *see also* 217 (Wallace boasting about having a "proprietary formula for defining artists and trends"). Plaintiffs cannot reconcile their theory of negligence at the time of Ms. Lively's filing of her CRD Complaint with

---

[32] Plaintiffs attempt to use the filing and withdrawal of a Rule 202 Petition as a judicial admission, but Ms. Lively is not aware of any legal authority for that proposition, and Plaintiffs cite none.

her decision to add Plaintiffs as parties to the NY Litigation based on the same and additional allegations as those contained in the CRD Complaint. *See Farias v. Garza*, 426 S.W.3d 808, 816 (Tex. App.—San Antonio 2014, pet. denied); *Carpenter v. King*, 792 F. Supp. 2d 29, 39 (D.D.C. 2011), *aff'd*, 473 Fed. Appx. 4 (D.C. Cir. 2012).

### 4.    The Alleged Statements Are Not Defamatory Per Se, Which Means Plaintiffs Have Failed To Adequately Allege Damages.

Plaintiffs allege that the "defamatory statements are *per se* because they accuse Plaintiffs of conduct which is criminal" and injure them in their profession. FAC ¶ 72 (citing Tex. Pen. Code. § 42.07). Section 42.07 is a Texas criminal harassment statute that is irrelevant for multiple reasons, including because Ms. Lively asserted only *civil* causes of action in the CRD Complaint and only under *California* (not Texas) law. Dkt. 21-2. The two statements in the CRD Complaint about Plaintiffs (FAC ¶¶ 29, 30) are factual descriptions of their job and are not "so obviously harmful that general damages may be presumed." *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015).

Because Plaintiffs fall short of articulating a defamation *per se* claim, Plaintiffs must show actual damages for this lawsuit to survive. FAC ¶¶ 69, 72. The FAC does not include specific factual allegations that any of the allegedly defamatory statements (as opposed to Plaintiffs or another third party) *caused* Plaintiffs to suffer any reputational harm, let alone $1,000,000. Conclusory assertions are insufficient, as are allegations about Wallace's "emotional condition" to adequately plead damages. *Id*. ¶¶ 51, 53-54, 69, 76; *Obsidian Fin. Group, LLC v. Cox*, 740 F.3d 1284, 1287 (9th Cir. 2014)*; see Anderson v. Durant*, 550 S.W.3d 605, 621 (Tex. 2018); *Med. Air Services Ass'n, Inc. v. CareFlite*, No. 4:21-CV-153-Y, 2021 WL 12288640, at *5 (N.D. Tex. Nov. 1, 2021)*; Leyendecker & Associates, Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984).

5.    <u>The CRD Complaint Is Privileged As A Matter Of California Law.</u>

    a.    **California privilege law applies.**

The Court should apply California law to the privileges asserted by Ms. Lively.[33] There is

a conflict between Texas and California privilege law, because California law provides more

expansive protections to fair reports, official documents, and statements about sexual harassment

and retaliation than Texas law.[34] California has the "most significant relationship" to the Plaintiffs'

claim because both (1) the public policy factors listed in Restatement (Second) of Conflict of Laws

§ 6[35] and (2) the four factors from the Restatement (Second) of Conflicts of Law § 145[36] favor

applying California law to determine whether Ms. Lively's alleged statements are privileged. *See*

*Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 191 (5th Cir. 2010).

    The § 6 factors favor California law because, as explained below, California has articulated

a strong public policy to shield individuals who speak out about sexual harassment from

defamation claims under California Civil Code §§ 47, 47.1 ("Section 47.1"), which would be

furthered by its application in this case. Texas has no such policy, and those who make statements

---

[33] *See Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 190–91 (5th Cir. 2010) (choice of law is evaluated issue by issue).

[34] In addition, the California anti-SLAPP law should apply, under which Ms. Lively is entitled to recover her attorney's fees and costs because (1) California has an interest in whether liability can stem from statements made in complaints filed with the CRD, (2) Plaintiffs' claim arises from Lively's conduct "in furtherance of [her] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue," and (3) Plaintiffs fail to establish a probability of prevailing. Cal. Code Civ. Proc. § 425.16(b)(1), (c)(1).

[35] These factors are: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

[36] These factors are: "(1) the place where the conduct causing the injury occurred; (2) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (3) the place where the relationship between the parties is centered; and (4) the place where the injury occurred."

<u>**DEFENDANT'S MOTION TO DISMISS**</u>    30

in California should expect to receive the protections under Section 47.1.  Additionally, the Court

can easily apply the privilege here. *See* Restatement (Second) of Conflict of Laws § 6 cmt. e (if

"the purposes sought to be achieved by a local statute or common law rule would be furthered by

its application to out-of-state facts, this is a weighty reason why such application should be made").

The § 145 factors also favor California law because, as described above, this case is about

Ms. Lively filing the CRD Complaint in *California* and the conduct causing the alleged injury

relating to the publication of the CRD Complaint occurred in *California*. Ex. F ¶ 45. Plaintiffs both

have business ties to California and Street was organized there as of the filing of this action (and

throughout the period covered by their allegations).[37] While there is no location where the parties'

relationship is centered, Wallace's sworn declaration in the NY Litigation discussed above

confirms he understood he was "doing business and providing" his services to individuals in

California and that is where he "considered the impact of" his work to be located.  *See* Ex. M ¶ 28.

**b.    The litigation privilege provides absolute protection for all statements contained within the CRD Complaint.**

The CRD Complaint is absolutely protected by California's litigation privilege, which

provides a broad, absolute privilege for statements made in a "judicial proceeding" or "any other

official proceeding authorized by law," including those involving administrative agencies, like the

CRD. [38] Cal. Civ. Code § 47(b); *Morales v. Coop. of Am. Physicians, Inc., Mut. Prot. Tr.*, 180 F.3d

1060, 1062 (9th Cir. 1999) ("any doubt as to whether the [litigation] privilege applies is resolved

in favor of applying it"); *Cruey v. Gannett Co.*, 64 Cal. App. 4th 356, 368 (1998) (statements made

---

[37] Dkt. 1 ¶ 3; Ex. B. Street had been organized in California since 2008 and only *after* this lawsuit was filed changed to Texas.

[38] The Texas judicial proceedings privilege also applies. *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 655 (Tex. 2015) (applies to statements "made during the course of judicial proceedings")

in EEOC complaint absolutely privileged); *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1251 (2007) (privilege attaches even before official proceedings are initiated). The litigation privilege bars Plaintiffs' attempt to sue Ms. Lively for any statements contained within the materials submitted to the CRD. *See Healthsmart Pac., Inc. v. Kabateck*, 7 Cal. App. 5th 416, 431, *as modified* (Jan. 10, 2017) (courts have construed the phrase "judicial proceeding" broadly to include the filing of a complaint); *Harris v. King*, 60 Cal. App. 4th 1185, 1188 (1998) (applying litigation privilege to medical report to State Compensation Insurance Fund); *Harper v. Lugbauer*, No. C 11-01306 JW, 2012 WL 1029996, at *3 (N.D. Cal. Mar. 15, 2012) (dismissing defamation claim under litigation privilege). Whether Ms. Lively subsequently initiated civil litigation—which, of course, she did—is irrelevant, as is the form the complaint takes.

### c. The fair report privilege bars any claims based on providing the CRD Complaint to the media.

In an attempt to circumvent the protections of the litigation privilege, Plaintiffs allege that Ms. Lively or her agents provided the CRD Complaint to "many media outlets" (FAC ¶ 68), but such conduct, even if true, is absolutely protected by the common law fair report privilege[39] and the fair report privilege under California law, which applies to a "fair and true report in, *or a communication to*, a public journal, of a (A) judicial, (B) legislative, or (C) other official proceeding …, or anything said in the course thereof."[40] Cal. Civ. Code § 47(d)(1) (emphasis

---

[39] The fair report privilege is "a common law defense to defamation rooted in First Amendment jurisprudence" that "protects the publication of defamatory matter concerning another in a report of an official action or proceeding." *Freedom Communications, Inc. v. Coronado*, 296 S.W.3d 790, 797 (Tex. App.—Corpus Christi–Edinburg 2009), *vacated on other grounds*, 372 S.W.3d 621 (Tex. 2012) (citing the Restatement (Second) of Torts § 611; *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975) ("the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection")). The common law fair report privilege "extends to any person who makes an oral, written or printed report to pass on the information that is available to the general public." Restatement (Second) of Torts, § 611, cmt. c.

[40] The Texas fair report privilege also protects a "fair, true, and impartial account of" official

added); *Green v. Cortez*, 151 Cal. App. 3d 1068, 1073 (1984); *Microsoft Corp. v. Yokohama Telecom Corp.*, 993 F. Supp. 782, 784 (C.D. Cal. 1998); *Abraham v. Lancaster Cmty. Hosp.*, 217 Cal. App. 3d 796, 822 (1990); *Bond v. Lilly*, 2024 WL 4879324, at *5 (Cal. Ct. App. Nov. 25, 2024) ("we do not believe the timing is or should be dispositive so long as they were fair and true reports of the allegations in the filed complaint"). Indeed, the "explicit purpose" for expanding the privilege to include "communication[s]" in a 1996 amendment was to protect communications to the media and abrogate a case that held that an attorney's transmittal of a pleading to a newspaper was not protected. *Healthsmart*, 7 Cal. App. 5th at 432.[41]

> ### d.   The sexual harassment privilege protects Ms. Lively's allegedly defamatory statements.

Ms. Lively's allegations regarding sexual harassment and retaliation fall squarely within Section 47.1(a), which provides broad immunity for communications "made by an individual, without malice, regarding an incident of sexual assault, harassment, or discrimination" whether in a legal proceeding, to the press, or otherwise. Cal. Civ. Code § 47.1(a).[42] To be protected by the

---

proceedings. CPRC § 73.002(a); *Walker v. Beaumont ISD*, 938 F.3d 724, 745 (5th Cir. 2019) ("Texas law recognizes a 'fair reporting privilege' as a defense to defamation.").

[41] Many other courts have similarly applied the fair report privilege to communications to the press, creating a bridge between the litigation and fair report privileges. *See, e.g., Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 787 (2017) (fair report privilege "pertains specifically to communications to the press"); *Wentworth v. Hemenway*, No. A154511, 2019 WL 2368520, at *9 (Cal. App. June 5, 2019), *as modified on denial of reh'g* (July 1, 2019) (sharing a complaint filed with the Department of Fair Employment and Housing and describing its allegations to a third party was protected by the fair report privilege); *Abraham v. Lancaster Cmty. Hosp.*, 217 Cal. App. 3d 796, 823 (1990) ("it would defeat the purpose of section 47[] to punish the transmittal of the privileged pleadings to the press").

[42] Under Section 47.1, a covered communication is defined as any "factual information related to an incident of sexual assault, harassment, or discrimination experienced by the individual making the communication," including: (1) an act of sexual harassment by a director or producer, under Civil Code Section 51.9, and (2) "[a]n act of workplace harassment or discrimination, failure to prevent an act of workplace harassment or discrimination, *aiding, abetting*, inciting, compelling, or coercing an act of workplace harassment or discrimination, or an act of retaliation against a

sexual harassment privilege, the speaker need only have "or at any time had, a reasonable basis to file a complaint of sexual assault, harassment, or discrimination, whether the complaint is, or was, filed or not." *Id*. § 47.1(c) (emphasis added). In other words, the sexual harassment privilege attaches regardless of whether a complaint is ever filed and no matter to whom the communication is published. The statute was enacted in large part to address defamation claims filed against harassment victims based upon statements made to the press; as explained by California's legislature, the protection applies "to individuals who, after relaying any factual statement, whether in the form of a formal complaint or a statement outside a formal proceeding such as to a media outlet, [are] sued for defamation." Ex. O-1 at 72, 83-84.[43]

The sexual harassment privilege applies here because the CRD Complaint is a communication made by Ms. Lively regarding incidents of sexual harassment, and the Amended Complaint fails to allege that Ms. Lively lacked a reasonable basis to file the CRD Complaint or did so with malice. Cal. Civ. Code § 47.1(c); Dkt. 21-2, 21-3. Indeed, Plaintiffs previously admitted that Ms. Lively was harassed. Dkt. 1 ¶ 9 ("[Ms. Lively], having been the one harassed…"). Plaintiffs' lone paragraph attempting to show that Ms. Lively acted with "actual malice" (Dkt. 21 ¶ 71)—which relates to Plaintiffs' demonstrably false claim that Ms. Lively accused Wallace of sexually harassing her or of breaching a contract between the two (neither of which she alleged in the CRD Complaint)—does not satisfy actual malice's "subjective test." *Seidenstein v. Nat'l Med. Enterprises, Inc*., 769 F.2d 1100, 1104 (5th Cir. 1985) (actual malice requires "subjective awareness of probable falsity"); *Newton v. Nat'l Broad. Co*., 930 F.2d 662,

---

person for reporting or opposing workplace harassment or discrimination. . . ." *Id*. §§ 47.1(d)(2)-(3) (emphasis added).

[43] *See* Declaration of Laura Lee Prather, Legislative History Report and Analysis for Assembly Bill 933, Ex. O, O-1 at 28, 63, 84 (emphasis added); *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (courts can take judicial notice of legislative history).

668 (9th Cir. 1990) (the relevant inquiry is whether a speaker "realized that [her] statement was false" or "subjectively entertained serious doubt as to the truth of his statement"). As demonstrated by the filing of the Amended Complaint in the New York Litigation (Ex. A), Ms. Lively believed when she filed the CRD Complaint, and believes now, that Plaintiffs engaged in a retaliatory social media campaign to harm her for speaking out about the sexual harassment and hostile workplace she endured. Such actions do not establish actual malice but instead just the opposite—a genuine belief in harm caused to her by Plaintiffs. Because the Complaint fails to overcome the sexual harassment privilege, and Ms. Lively is entitled to her attorney's fees, costs, and damages, for which she will separately file a motion to recover. Cal. Civ. Code § 47.1(b).

## IV.    CONCLUSION

Not satisfied with engaging in a retaliatory campaign on social media and elsewhere against Ms. Lively for speaking out about the sexual harassment and hostile work environment she and others endured while filming *It Ends With Us*, Plaintiffs now seek to drag her into a foreign court almost 2000 miles from home to further punish and harass her for privileged communications. Plaintiffs' claim lacks merit and is futile on its face, and Ms. Lively respectfully requests that this Court dismiss this case with prejudice and award her attorney's fees and costs

Respectfully submitted,

 /s/ Laura Lee Prather
Laura Lee Prather
Texas Bar No. 16234200
laura.prather@haynesboone.com
Catherine L. Robb
Texas Bar No. 24007924
catherine.robb@haynesboone.com
Michael J. Lambert
Texas Bar No. 24128020
michael.lambert@haynesboone.com
Reid Pillifant
Texas Bar No. 24126157
reid.pillifant@haynesboone.com

**HAYNES AND BOONE, LLP**
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

**ATTORNEYS FOR DEFENDANT
BLAKE LIVELY**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 16th day of May 2025, a true and correct copy of the

above document was served via the CM/ECF system to all counsel of record.

 /s/ Laura Lee Prather
Laura Lee Prather