UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JED WALLACE, | § | |
| STREET RELATIONS, INC. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:25-cv-163 |
| | § | |
| BLAKE LIVELY, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT BLAKE LIVELY'S MOTION TO
DISMISS**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   FACTUAL BACKGROUND .................................................................................. 3

III.  ARGUMENT ................................................................................................... 7

     A.    This Court has personal jurisdiction over Lively because she requested affirmative relief in a Texas court related to these claims, paid fees to a Texas governmental entity (the Hays County Clerk), entered into contracts in Texas with process servers Assured Civil Process Agency and Aaron Camp and repeated the defamation in Texas. ................................ 7

        1.    Legal Standard ................................................................................ 7

        2.    Lively's contacts with Texas satisfy due process and the Court has jurisdiction over her. ...................................................................... 8

     B.    The First to File Rule Does Not Apply and, In Any Event, Does Not Support Dismissal. .................................................................................. 11

        1.    Legal Standard ............................................................................. 12

        2.    Substantial Overlap ..................................................................... 13

     C.    Venue is proper because a substantial part of the events giving rise to the claim occurred in this District, including where Plaintiffs' harm was most keenly felt and where Defendant directed her defamation. ........................ 14

        1.    Legal Standard ............................................................................. 14

        2.    Substantial Part of Events Giving Rise to Plaintiffs' Claims Occurred in this District. ............................................................. 15

     D.    Plaintiffs plead plausible claims for defamation. .................................... 17

        1.    Legal Standard ............................................................................. 17

        2.    Defamation elements ................................................................... 19

        3.    Litigation privilege ...................................................................... 23

        4.    Fair report privilege ..................................................................... 24

        5.    California 47.1 privilege .............................................................. 25

IV.  CONCLUSION ............................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Soc. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*,
456 U.S. 556 (1982) ........................................................................................................ 19

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 1984) .......................................................................................... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 18

*Bayou Steel Corp. v. M/V Amstelvoorn*,
809 F.2d 1147 (5th Cir. 1987) .......................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 18

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
27 F.4th 313 (5th Cir. 2022) ........................................................................................... 19

*Bentley v. Bunton*,
94 S.W.3d 561 (Tex. 2002) ............................................................................................. 22

*Bigham v. Envirocare of Utah, Inc.*,
123 F.Supp.2d 1046 (S.D.Tex. 2000) ............................................................................. 15

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*,
240 Fed.Appx. 612 (5th Cir. 2007) (per curiam) ........................................................... 15

*Cadle Co. v. Whataburger of Alice Inc.*,
174 F.3d 599 (5th Cir. 1999) .......................................................................................... 12

*Calder v. Jones*,
465 U.S. 783 (1984) .......................................................................................................... 8

*Cantu v. Guerra*,
No. SA-20-cv0746, 2021 WL2652933 (W.D. Tex. June 28, 2021) ............................... 18

*Cedillos v. Tex. Dept. of Pub. Safety*,
2005 WL 589314 (W.D.Tex. Mar. 10, 2005) ................................................................. 20

*Charles v. McHugh*,
613 F. App'x. 330 (5th Cir. 2015) .................................................................................... 5

*D Mag. Partners, L.P. v. Rosenthal,*
    529 S.W.3d 429 (Tex. 2017) ................................................................. 20

*Dallas Morning News, Inc. v. Tatum,*
    554 S.W.3d 614 (Tex. 2018) .............................................................. 21, 22

*In re Doe,*
    444 S.W.3d 603 (Tex. 2014) (Hecht, C.J.) ......................................... 10

*In re Doe,*
    444 S.W.3d at 606–07 ......................................................................... 10

*In re Elliott,*
    504 S.W.3d 455 (Tex. App.—Austin 2016, orig. proceeding) ............... 10

*Ford Motor Co. v. Montana Eighth Jud. Dist.,*
    592 U.S. 351 (2021) ........................................................................... 11

*Foster v. Laredo Newspapers, Inc.,*
    541 S.W.2d 809 (Tex. 1976) ............................................................... 21

*Fox v. Parker,*
    98 S.W.3d 713 (Tex. App.—Waco 2003, pet. denied) .......................... 20

*Frank v. PNK (Lake Charles) LLC,*
    947 F.3d 331 (5th Cir. 2020) ............................................................... 8

*Gottwald v. Sebert,*
    40 N.Y.3d 240 (2023) ................................................................ 23, 24, 25

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.,*
    921 F.3d 522 (5th Cir. 2019) ............................................................... 9

*Hancock v. Variyam,*
    400 S.W.3d 59 (Tex. 2013) ................................................................. 23

*Hart v. Donostia LLC,*
    290 F.Supp.3d 627 (W.D. Tex. 2018) ................................................. 13

*Hawbecker v. Hall,*
    88 F. Supp.3d 723 (W.D. Tex. 2015) (Rodriguez, J.) ....................... 15, 16

*Healthsmart P., Inc. v. Kabateck,*
    7 Cal. App. 5th 416 (Cal. App. 2d Dist. 2016) .................................... 25

*Inspection. Leasing, Inc. v. Tavas,*
    No. 1:24-cv-0039, 2024 WL4329035 (W.D. Tex. Aug. 30, 2024) ......... 8, 9, 16, 17

*Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*,
  665 F.3d 671 (5th Cir. 2011) ................................................................................. 12, 13

*Jeanty v. Big Bubba's Bail Bonds*,
  72 F.4th 116 (5th Cir. 2023) ........................................................................................18

*Johnson v. TheHuffingtonPost.com, Inc.*,
  21 F.4th 314 (5th Cir. 2021) ...................................................................................10, 11

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
  342 U.S. 180 (1952).......................................................................................................12

*Landry's, Inc. v. Animal Legal Def. Fund*,
  631 S.W.3d 40 (Tex. 2021)........................................................................................23, 24

*Lavergne v. Lavespere*,
  No. 24-30317, 2025 WL 1088831 (5th Cir. Apr. 11 2025) .......................................18

*Mann Mfg., Inc. v. Hortex, Inc.*
  439 F.2d 403 (5th Cir. 1971)........................................................................................13

*Paglia & Assocs. Constr., Inc. v. Hamilton*,
  98 Cal. App. 5th 318 (Cal. Ct. App. 2023) ................................................................ 24

*PaineWebber Inc. v. Chase Manhattan Priv. Bank (Switzerland)*,
  260 F.3d 453 (5th Cir. 2001) ..........................................................................................9

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
  253 F.3d 865 (5th Cir. 2001) ..........................................................................................8

*Redden v. Smith & Nephew, Inc.*,
  No. 3:09-CV-1380-L, 2010 WL 2944598 (N.D. Tex. July 26, 2010).......................19

*Rothman v. Jackson*,
  49 Cal. App. 4th 1134 (Cal. Ct. App. 1996)............................................................... 24

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997) ........................................................................................12

*Southern U.S. Trade Ass'n v. Unidentified Parties*,
  No. 10-1669, 2011 WL 2457859 (E.D. La. June 16, 2011) .......................................15

*Utterkar v. Ebix, Inc.*,
  No-14-cv-02250, 2015 WL 5027986 (N.D. Cal. Aug. 25, 2015) .................................2

*Warner Bros. Entm't, Inc. v. Jones*,
  538 S.W.3d 781 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2019) .........19

*Wilson v. Belin*,
   20 F.3d 644 (5th Cir. 1994) ........................................................................................ 15

*Yeti Coolers, LLC v. Mercatalyst, Inc.*,
   No. 1:22-cv-0337, 2023 WL 11852866 (W.D. Tex. Nov. 14, 2023) (Ezra, J.) ..........................7

**Statutes**

28 USC § 1391 ............................................................................................................ 15

28 USC § 1391(b)(2) ................................................................................................ 15, 18

California Civil Code § 47.1 ...................................................................................... 25, 26

California Government Code section 12940 ............................................................. 4, 5, 20

Title VII of the Civil Rights Act of 1964 .................................................................. 4, 20

Tex. Civ. Prac. Rem. Code § 27.001(6) .......................................................................... 10

Tex. Civ. Prac. Rem. Code § 27.009(a) .......................................................................... 10

Tex. Civ. Prac. Rem. Code § 73.002 .............................................................................. 24

Tex. Civ. Prac. Rem. Code § 73.002(a) .......................................................................... 25

**Rules**

Fed. R. Civ. P. Rule 12 ................................................................................................. 18

Fed. R. Civ. P. Rule12(b)(2) ........................................................................................... 7

Fed. R. Civ. P. Rule 12(b)(3) .................................................................................... 15, 18

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 3, 18

Fed. R. Civ. P. Rule 202 .......................................................................................... 10, 21

Fed. R. Civ. P.  202.2(b) ............................................................................................... 10

**Other Authorities**

14D Charles Alan Wright et al., *Federal Practice and Procedure* § 3806 (4th ed.) ........................... 15

Restatement (Second) of Torts § 573 (1977) .................................................................... 23

TO THE HONORABLE COURT:

Plaintiffs Jed Wallace ("Wallace") and Street Relations, Inc. ("Street") (collectively "Plaintiffs" or "Street/Wallace") respond to Defendant Blake Lively's ("Lively" or Defendant") Motion to Dismiss The Amended Complaint[1] ("Motion") (Dkt. 26) as follows:

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT
### (IN RESPONSE TO DEFENDANT'S MOTION AT 12-13[2])

Lively peppers her introduction and summary with various insults to and disparaging comments about Street and Wallace having little to do with the merits of her Motion, accusing Plaintiffs of "judicial harassment" and "retribution" in a "far-reaching attempt to muzzle a woman for speaking out about sexual harassment." (Dkt. 26 at 12) She laments being hauled into court some 2,000 miles from her home in New York apparently overlooking that she did the very same thing to these Texans by adding them in the "NY Litigation" *weeks after this case was filed*[3] and *after* she had already sued Wallace in Hays County Texas ("The Hays County Case").[4] Her New York lawsuit is against ten defendants on fifteen Causes of Action (only three claims were against Street/Wallace but one (Intentional Infliction of Emotional Distress, (Count 10, NY Litigation Dkt. 84 ¶¶434–439) has been withdrawn by Lively as noted by the Court (NY Litigation Dkt. 266).[5]

The Motion leans heavily on the first-to-file rule arguing that Lively's NY case (which originally did not include Street or Wallace) is "first" even though she amended her complaint to add Street and Wallace several weeks after they sued her in this case. So temporally Lively's lawsuit

---

[1] ("Dkt. 21").
[2] All page cites for pleadings are to the ECF page number.
[3] She defines the New York Litigation as the "consolidated case No. 1:25-cv-00449 (Dkt. 26 at 13).
[4] The Hays County Case was non-suited by Lively on February 4, 2025.
[5] This docket entry is attached hereto as Exhibit A.

against Street and Wallace was "second" not "first." In any event, for the first-to-file rule to apply there must be a substantial overlap between this case and the NY Litigation and the NY court must have jurisdiction over Street and Wallace. To the extent there is overlap, it is, at best, minimal and not substantial.[6]

Lively's summary of her personal jurisdictional argument is that this Court cannot "exercise jurisdiction over Plaintiffs' claim because Ms. Lively is not subject to personal jurisdiction in Texas." (Dkt. 26 at 13). While this has a certain circular ring to it, we note that Lively does not, as is customary, provide a Declaration or Affidavit controverting any of the jurisdictional allegations in the Amended Complaint[7] accordingly they must all be considered in support of Plaintiffs' prima facie case for jurisdiction and credited over any conflicting evidence.

For example, Lively does not contest that, prior to this lawsuit, she (i) filed and verified the Hays County Case against Wallace in Texas after paying the Hays County clerk a filing fee (ii) paying to have process issued, (iii) contracting with two different Texas process server companies to effect service, (iv) making judicial admissions under oath in the Hays County Case regarding her purposeful invocation of the Texas forum and (v) visiting Texas *after* this lawsuit was filed, republishing the defamatory statements of and concerning Plaintiffs[8].

---

[6] The issue of personal jurisdiction as to Street and Wallace is fully briefed in the Southern District of New York and awaiting decision.

[7] By contrast, Street and Wallace, in New York, provided a detailed Declaration controverting some of the jurisdictional allegations by Lively.

[8] The allegations made on information and belief about Lively's subsequent visit to Texas at SXSW where she repeated the defamation are discounted by Lively because, she says, they are made on information and belief. (Dkt. 26 at 30-31). However, when the allegation is readily controverted by a Defendant (Lively) and she does not do so, as here, the Court must accept as true the information and belief allegation for the purpose of establishing jurisdiction. *See Utterkar v. Ebix, Inc.*, No-14-cv-02250, 2015 WL 5027986, at *4 (N.D. Cal. Aug. 25, 2015)("[Defendant] argues that the allegation in the proposed SAC that he lives in California should not suffice to establish the Court's

She also challenges venue forgetting, perhaps, that she has judicially admitted in the Hays County Case that most of the events giving rise to Plaintiffs' claims occurred in Texas and that Street and Wallace suffered almost all of their harm, emotional, reputational, and even physical, in this District. Finally, Lively moves for dismissal under FRCP 12(b)(6) "because the Amended Complaint fails to state a claim for defamation." (Dkt. 26 at 13). *Of course,* if the complaint fails to state a claim dismissal is appropriate but stating the obvious doesn't lead to that reality in this case. Plaintiffs have plausibly pled a claim for defamation, and Defendant's affirmative defense relying on California law is both procedurally and substantively improper as we show below.

## II.    FACTUAL BACKGROUND
### (IN RESPONSE TO MOTION AT 14–23)

Lively's lengthy "Factual Background" is almost all about her, (not Street or Wallace), making sure we know "Ms. Lively is an actress and entrepreneur" who had, she says, troubles with Justin Baldoni; "the movie studio owned" by him, "his billionaire business partner"; the "sexual harassment and misconduct that occurred on the set of the Film by Baldoni and Wayfarer CEO, Jamey Heath" including Baldoni's allegedly creepy behavior (which Lively describes in great detail); the "contractual rider" which included "a mandate that Baldoni" not retaliate against Ms. Lively"; and Baldoni's alleged solicitation of assistance from Melissa Nathan and her company" "TAG"; (Dkt. 26 at 14). None of this has any bearing on the Motion, Street, or Wallace.

In fact, hardly anything is said about Wallace and Street at all who are first mentioned concerning when they were "approached" on August 7, 2024 and began working with TAG on August

---

personal jurisdiction because the allegation is made only on 'information and belief' without any supporting evidence … [Defendant] has not submitted any affidavit indicating that he does not live in California…. Therefore, the proposed SAC would support the Court's exercise of personal jurisdiction over [Defendant]….").

9, 2024. (Dkt. 26 at 14, 17). This was more than a year after the alleged bad behavior by Baldoni and others "on the set of the film" *It Ends With Us* ("Film") (*Id.*) which is the focus of her NY Litigation. Street and Wallace were never on the set, had never met Lively, never sexually harassed her, never engaged in the purported creepy behavior and were not parties to or involved in any "contractual rider." (Dkt. 21 at ¶¶7,24). Their involvement was limited in duration (3 months) and scope ("assisting (TAG) in social/digital mitigation and remediation") (Dkt. 26 at 14).

Lively discusses Street's history including that it was incorporated in California, but it is now a Texas corporation, and that its principal place of business has been Texas for many years, fun facts that appear untethered to the Motion. She then jumps over the August to October time period when Street/Wallace acted as independent contractors to TAG landing on December 20, 2024, when she filed a Complaint of Employment Discrimination before the State of California Civil Rights Department ("CRD Complaint"). (Dkt. 21 ¶3). The CRD Complaint named Lively as Complainant and Baldoni, Wallace, and Street, among others, as Respondents and alleged that they "engaged in a variety of conduct in violation of California Government Code section 12940 ("FEHA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). *Id.* The CRD Complaint went on to specifically accuse the Respondents (Baldoni, Street, Wallace and others) of "conduct [which] includes sexual harassment, retaliation; failure to investigate, prevent, and/or remedy harassment; and aiding and abetting harassment and retaliation." (Dkt. 21 ¶25, Ex. 1) (CRD Complaint). The CRD Complaint also attached a lengthy (but incomplete) "complaint" ("Draft Complaint") which expanded upon the claims made in the CRD Complaint asserting, at least according to the cover page, five additional purported causes of action for breach of contract, negligence and other claims which would seem to be outside the CRD's or EEOC's jurisdiction. *See Charles v.*

*McHugh,* 613 F. App'x. 330, 333 (5th Cir. 2015) (contract claims are not Title VII claims). Lively provided the CRD Complaint and the Draft Complaint to the press and the *New York Times* published the Draft Complaint either on the day of or in the early morning hours on the day after it was filed.

Of course, these employment allegations were false as to Street and Wallace who were not Lively's employer, never on the set and have never been accused before or since (other than in the CDR Complaint or Draft Complaint) of this predatory conduct. The other claims are also untrue. Street/Wallace, for example, never entered into a contract with Lively nor did they do anything other than monitor social media regarding the Film and its stars, Lively and Baldoni. The Factual Background then discusses more "facts" about Lively and Baldoni which predate any involvement by Street or Wallace, i.e., TAG provided Baldoni and others a "Scenario Planning" document on August 2, 2024 a week before Street and Wallace were engaged. (Dkt. 26 at 16) The next two pages of the Factual Background are all about participants *other than* Street or Wallace (with one exception where Wallace allegedly reports that "we are crushing it on Reddit," a comment, if it was made, consistent with his social media monitoring role).

Lively correctly notes that Street and Wallace were two of the eight Plaintiffs in a California state court lawsuit against the *New York Times* who were all represented by Bryan Freedman ("Freedman"). That case was non-suited and some of the Plaintiffs (but not Wallace or Street) refiled against the *Times* in New York. Freedman did not represent Street/Wallace in the NY case against the *New York Times* and has never represented them in this case or when they were added to the New York Litigation.

Lively describes "the NY Litigation" which she "initiated" against eight defendants but omits that the suit she "initiated" was not against Street or Wallace. (Dkt. 26 at 19). She notes that she filed the Hays County Case in Texas against Wallace "in order to investigate the full nature and scope of his role in implementing and carrying out the retaliatory campaign." *Id.* Then, her Motion says, "(Texas) process servers *hired by Ms. Lively*" attempted to serve Wallace *Id.* It is absolutely untrue, as Lively alleges, that "Wallace continually refused to accept service" although, again, even if true, we *demur* (French for "so what?").

In any event, Lively's own evidence refutes the allegation. *See* Ex. J to the Motion Dkt. 26-11 at 2— "a lawyer is in the process of being retained who will reach out to you to discuss accepting service of process" and that lawyer (the undersigned) did exactly that. Lively's "evidence" from the Texas process servers hardly amounts to evasion (*i.e.*, honking the (process server's) car horn outside Wallace's "gated" property in the rural Texas Hill Country). (Ex H to the Motion (Dkt. 26-9 at 2). And Lively's Motion omits that a neighbor told the process server that Wallace "travels a lot and rarely home." *See* Ex. I to the Motion (Dkt. 26-10 at 2).

Lively then makes the preposterous and fantastical statement in the "Factual Background" that, at a February 3, 2025 hearing in the NY Litigation, Freedman, who did not represent Street or Wallace in the case and who were not then parties to that proceeding, "represented" that Lively should drop her Hays County Case (where she sought to determine "the full nature and extent of (Wallace's) role" and, then without obtaining that information, sue them in New York which is the reason, Lively says, she dropped the Hays County Case. Fortunately, a transcript of the hearing is furnished. *See* Ex. K to Motion) Neither Wallace, Street, Hays County, nor "202 Petition" (as

Lively sometimes calls her Hays County Case) are mentioned, and Freedman did not make any "representations" even remotely like what Lively attributes to him.

## III.    ARGUMENT

**A.    This Court has personal jurisdiction over Lively because she requested affirmative relief in a Texas court related to these claims, paid fees to a Texas governmental entity (the Hays County Clerk), entered into contracts in Texas with process servers Assured Civil Process Agency and Aaron Camp, and repeated the defamation in Texas. (In Response to the Motion at 27–31)**

### 1.    Legal Standard

The legal standard for deciding a Rule 12 (b)(2) motion is familiar to the Court. The Texas long arm statute permits the exercise of jurisdiction to the limits of due process, and Texas court's "inquiry is therefore limited to the reach of the Fourteenth Amendment's due process clause" which "allows a court to assert personal jurisdiction over defendants who have meaningful contacts, ties or relations with the forum state." The ties can be either general or specific and Plaintiffs assert only specific jurisdiction which exists when a [D]efendant's contacts "are less pervasive" but arise out of or are related to the Defendant's contact with the forum." *Yeti Coolers, LLC v. Mercatalyst, Inc.,* No. 1:22-cv-0337, 2023 WL 11852866, *2 (W.D. Tex. Nov. 14, 2023) (Ezra, J.).

If the district court rules without conducting an evidentiary hearing the plaintiff bears the burden of establishing only a prima facie case of personal jurisdiction. To make its determination the Court must consider the assertions in the plaintiff's complaint, as well as the contents of the record at the time of the motion. *Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020). All of Plaintiffs' allegations must be accepted as true and factual conflicts are resolved in their favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

### 2. Lively's contacts with Texas satisfy due process and the Court has jurisdiction over her.

This case bears remarkable similarity to one decided by this Court last year. *Inspection. Leasing, Inc. v. Tavas*, No. 1:24-cv-0039, 2024 WL 4329035 (W.D. Tex. Aug. 30, 2024) ("*Tavas*"). Here Lively intentionally filed the Hays County Case whereas in *Tavas* the Court found that "Defendants availed themselves to the State of Texas by intentionally filing tax returns in Texas." *Id.* at *6. Your honor went on to find an additional basis for jurisdiction holding that "for intentional tort claims 'foreign communications directed at the forum can create personal jurisdiction '[w]hen the actual content of communications with a forum give rise to intentional tort cause of action." *Id.* at *6-7 Here, Lively published the defamatory CRD Complaint and the Draft Complaint and provided the documents to the press who promptly republished them, as she hoped and foresaw, in Texas and elsewhere. (Dkt. 21 at ¶¶5–6).

As to Street and Wallace there can be little doubt that the publications were directed at Texas. The Draft Complaint alleges "Mr. Jed Wallace (is) an independent contractor based in Austin, Texas, who was retained by TAG to perform social media services on behalf of Wayfarer and Mr. Baldoni." (Dkt. 21-2 at 45). This comes after the cover page listing ten causes of action right next to the Street and Wallace names. Street was at the time a California corporation with its principal place of business in Texas. (Dkt. 21 ¶20). This Court's holding in *Tavas* is supported by the United States Supreme Court decision in *Calder v. Jones,* 465 U.S. 783 (1984), which found that an out of state publication directed at a forum resident supported personal jurisdiction even though, in that case, there were no other contacts with the forum.

Of course, your honor found that the Texas tax filing was sufficient to support personal jurisdiction, and we certainly have that here. But there is more. Not only did Lively file in Texas

she, unlike *Tavas*, paid a fee to do so. And she contracted with Texas process servers to appear outside Wallace's gated property at 8:15 pm in the rural part of the Texas Hill country honking their car horns in an effort to attract attention. There were other similar attempts which Lively placed in the record for the Court's convenience. *See* Exhibits H and I to the Motion. Also, unlike *Tavas*, Lively repeated the defamation in Texas during an appearance at SXSW in Austin to promote her movie. Unless *Tavas and Calder* were wrongly decided this is not a close case.

Hardly contesting the above, Lively's defense is that the Hays County Case is "not an original action." Motion at 27-28. This argument relies upon *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 541 (5th Cir. 2019) (cited in the Motion at 13). There, the Fifth Circuit distinguished a defendant who "participated as a defendant" who "continuously objected to personal jurisdiction" and "file[d] a counterclaim in the insurer action." *Id.* But this is just a recognition that "filing of a counterclaim, cross-claim, or third-party claim does not, without more, waive an objection to personal jurisdiction." *PaineWebber Inc. v. Chase Manhattan Priv. Bank (Switzerland)*, 260 F.3d 453, 461 (5th Cir. 2001) (citing *Bayou Steel Corp. v. M/V Amstelvoorn*, 809 F.2d 1147, 1149 (5th Cir. 1987) ("the majority view supports the proposition that jurisdictional defenses are *not* waived by the filing of a responsive pleading.")).

But filing a responsive pleading conditioned on the jurisdictional challenge is categorically different than initiating what the Texas Supreme Court has recognized as the progeny of a common-law suit in equity. *In re Doe*, 444 S.W.3d 603, 605–07 (Tex. 2014) (Hecht, C.J.) (recounting the history that led to Rule 202 to discern its nature). Regardless of the characterization, the Texas Supreme Court made clear in *In re Doe* that a court entertaining a Rule 202 petition must be a "proper court" having both "subject matter-jurisdiction over the anticipated action" and personal

9

jurisdiction over the parties. *Id.* at 608 (citing Rule 202.2(b)). So Rule 202 does not exist in some netherland where normal rules of jurisdiction are not at play.

Second, in any event, as the Third Court—the court binding on the district court in Hays County where Lively filed her Rule 202 petition—has held "the relief sought by a Rule 202 petition investigating a potential claim or suit is an equitable remedy." *In re Elliott*, 504 S.W.3d 455, 466–67 (Tex. App.—Austin 2016, orig. proceeding) (citing *In re Doe*, 444 S.W.3d at 606–07). Thus, the Third Court concluded it was a "legal action" subject to a motion to dismiss under the TCPA. *See Id.* That is on top of the plain language of the TCPA that applies to a "petition" like a Rule 202 petition. Tex. Civ. Prac. & Rem. § 27.001(6). If Lively had not suddenly non-suited the Hays County Case, Wallace probably would have filed a TCPA motion and likely won, which would have subjected Lively to attorney's fees, Tex. Civ. Prac. & Rem. § 27.009(a)—further evidence that Texas does not see Rule 202 as a trifle. It is plausible that Lively non-suited to avoid that result, rather than her proffered reason that Freedman during a New York hearing told her to do it.

Unlike Lively's case, *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320–21 (5th Cir. 2021), Street and Wallace are not merely relying on "[m]aking a website that's visible in Texas," "sell[ing] merchandise to Texans," or showing ads to Texas website visitors in a general way. Rather, Street and Wallace are relying on Lively choosing to come to Hays County District Court and filing a verified Lawsuit on the same nucleus of operative facts as Wallace's claims and aiming her defamatory filing at Texas while repeating the defamatory language while in the state on business. Lively surely "ha[d] 'fair warning' that [her] activities could furnish jurisdiction in the forum." *Id.* at 320 (citing *Ford Motor Co. v. Montana Eighth Jud. Dist.*, 592 U.S. 351, 360 (2021)).

Lively relies on a Wallace Declaration in the New York Litigation where he discussed that his work was for a California-based entity and that he conducted no work in New York. Lively now twists the Declaration into an argument that the focus of her accusation against Street and Wallace was California. But it's not what Street and Wallace purportedly did to her, rather it's what she did to them by her defamatory statements which may have emanated in California, but were aimed at them in Texas.

Lively argues that Street and Wallace fail to show that the CRD Complaint and the Draft Complaint allege that their activities were in Texas. The pertinent point is that the defamation was aimed at Texas and other than identifying Wallace as a Texas resident the CRD Complaint and Draft Complaints are silent as to where the sexual harassment and retaliation took place. So Lively is back to chasing her tail because she knows that Street and Wallace did not engage in any sexual harassment on the "set of the Film" no matter where it was. The same holds true for the alleged retaliation.

**B.    The First to File Rule Does Not Apply and, In Any Event, Does Not Support Dismissal. (In Response to the Motion at 27–30)**

Lively claims the first-filed rule applies here in favor of her lawsuit in the Southern District of New York where she (i) did not sue Plaintiffs until weeks after this case was filed; (ii) filed in a court that does not have jurisdiction over Plaintiffs as set out in a pending motion that has been fully briefed since April 2025; and (iii) asserted only three (one of which has been non-suited) causes of action against Plaintiffs (out of 14 asserted against other defendants) which do not "substantially overlap" with the allegations in this case. The claims that dominate the New York Liti-

gation revolve around whether Baldoni sexually harassed her on the set of the Film and then retaliated against her. Street and Wallace's involvement in the alleged sexual harassment are not at issue in New York, because they haven't been sued for it there. This case is about the false accusation that they were involved in the predatory conduct on the set of the Film. There is no overlap.

### 1. Legal Standard

When related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. *Cadle Co. v. Whataburger of Alice Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (*"Cadle"*). The first-to-file rule ("Rule") "is a discretionary doctrine". *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.,* 665 F.3d 671, 677 (5th Cir. 2011) ("*Sweet*"), and as the Rule is ultimately equitable in nature lower courts are left an "ample degree of discretion". *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183–84 (1952). In determining whether the Rule applies "the crucial inquiry is one of substantial overlap". *Save Power Ltd. v. Syntek Fin. Corp.,* 121 F.3d 947, 950 (5th Cir. 1997).

The Rule does not require that the cases be identical, but there must be *substantial* overlap by looking at such factors as whether (i) the core substantive issues are the same; (ii) if much of the proof adduced would likely be identical (iii) the extent of the overlap; (iv) the likelihood of conflict and (v) the comparative advantage and interest of each forum in resolving the dispute. This judgment is made on a case-by-case basis. *Sweet* at 678. "Even when two cases substantially overlap, however, courts may exercise their discretion and decline to apply the rule based on "compelling circumstances." *Hart v. Donostia LLC*, 290 F.Supp.3d 627, 630 (W.D. Tex. 2018) (citing *Mann Mfg., Inc. v. Hortex, Inc.,* 439 F.2d 403, 407 (5th Cir. 1971)).

### 2.  Substantial Overlap

Lively argues that "there is no question that substantial overlap exists between this case and the NY Litigation" (Dkt. 26 at 24), which she defines as her 138-page complaint against ten defendants with fourteen causes of action only two[9] of which involve Wallace and Street. Her case has been consolidated with an action brought against her and four other defendants (including the *New York* Times) by seven plaintiffs (which do not include Wallace or Street). Her definition of the NY Litigation includes both consolidated cases. (Dkt. 18 at 12, 28).

The issues in the two cases hardly overlap substantially or otherwise. In a broad sense this case is what she did to Plaintiffs, while in the NY Litigation it is about what Plaintiffs, and eight other parties, did to her and she did to six of them. There are no common claims between Lively and Street or Wallace. This case has a single count of defamation against Lively. Her NY action against Wallace and Street is for False Light Invasion of Privacy (a claim not recognized in either Texas or New York) and aiding and abetting harassment in violation of California law. This latter claim is said to cover action by Street and Wallace over a three-month period starting in August of 2024 while the alleged conduct of the other defendants began "**as they arose in 2023**", (NY Lit. Dkt. 84 at 7) (emphasis in the original).

Lively asserts that "both this case and that one (NY Lit.) will turn *entirely* on whether allegations in the CRD Complaint are true." (Dkt. 18 at 28). Not so. Lively has not sued Wallace in New York for sexual harassment as the CRD Complaint and Draft Complaint allege nor could she have done so in good faith. Wallace was nowhere near the set and had no relationship with Lively,

---

[9] She originally asserted an Intentional Infliction of Emotional Distress Cause of Action (10th COA) against all defendants but dropped that claim to avoid discovery into her mental state. *See* New York Litigation, Dkt. No. 266 (Exhibit A).

having never met her, when the alleged misconduct occurred. So Lively may prove the truth of her allegations asserted in the NY Lit. against other defendants. But as to Wallace whether those allegations are true or not is beside the point. They are indisputably false as to him so there is no overlap and no pleading in the NY Lit. to support any asserted overlap.

**C.    Venue is proper because a substantial part of the events giving rise to the claim occurred in this District, including where Plaintiffs' harm was most keenly felt and where Defendant directed her defamation. (In Response to the Motion at 25–27)**

Lively challenges venue by dismissing—without controverting—the First Amended Complaint's factual allegations and by ignoring the governing law. Lively erroneously asserts that: 1) "Plaintiffs' claim in connection with the Attached CRD Complaint arose in California where the alleged defamatory conduct occurred, not any events that occurred in Texas; 2) repeating that Plaintiffs' cannot rely on the "Information and Belief Statements"[10]; and 3) the location where Plaintiffs suffered their injuries is irrelevant. (Dkt. 26 at pp. 25–27). Each of these arguments fails.

### 1. Legal Standard

This Court is also no doubt familiar with the standards governing a Motion to Dismiss based on Rule 12(b)(3). The general venue statute 28 USC § 1391 governs a plaintiff's choice of venue. Under § 1391(b)(2), a civil action may be brought, among other places, in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .". Here, the Court may consider both the venue of where the defamation occurred and the venue of where the harm was felt to determine the location of "a substantial part of the events" under 1291(b)(2). *See Hawbecker v. Hall,* 88 F. Supp.3d 723, 731 (W.D. Tex. 2015) (Rodriguez, J.) (citing 14D Charles

---

[10] *See, supra*, footnote 8.

Alan Wright et al., *Federal Practice and Procedure* § 3806 (4th ed.)); *Southern U.S. Trade Ass'n v. Unidentified Parties*, No. 10-1669, 2011 WL 2457859, at *13 (E.D. La. June 16, 2011) (same).

"On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.,* 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted). Thus, a plaintiff may show that venue is proper by "setting forth facts that taken as true would establish venue." *Bigham v. Envirocare of Utah, Inc.,* 123 F.Supp.2d 1046, 1048 (S.D.Tex. 2000) (citing *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir. 1994)).

### 2. Substantial Part of Events Giving Rise to Plaintiffs' Claims Occurred in this District.

Here, both injury (reputational and financial loss in Texas) and publication (distribution and repetition to Texas audience) occurred within the District. Where Plaintiffs feel their injury is highly relevant to the venue inquiry and can constitute a substantial part of events giving rise to Plaintiffs' claims, and that is especially so in defamation cases where the reputational harm is most keenly felt in Plaintiff's community. *Hawbecker*, 88 F.Supp.3d at 731. To be clear, an "overwhelming number of courts" (including this one) "consider the place of injury as a relevant factor in determining whether venue is proper. *Tavas* at *10.

There can be no genuine dispute that the harms resulting from Lively's defamatory statements were, and continue to be, most keenly felt by Wallace and Street in this District. Wallace has been a citizen of Texas since 2021 and currently resides within this District. (Dkt. 26-14 at 3). Likewise, since 2021, Street's principal place of business has been in Texas. (*Id.* at 4) The significance of Plaintiffs' residence and business presence in this District is clear: it is precisely in this

location that individuals exposed to the defamatory statements are most likely to know or interact with Plaintiffs, thereby amplifying the impact of the falsehoods. Indeed, "the false allegations of fact made with actual malice has meant that Wallace and Street have lost business." (Dkt. 21 at 53). Wallace, in particular, has sustained financial, emotional, and even physical harm due to Lively's defamation, and the harm was all suffered in this District. (Dkt. 26-14 at 7; Dkt. 21 at 54). Similarly, because Street's principal place of business is located in this District, any losses incurred by Street occurred here as well. Lively does not dispute any of these facts, she simply ignores the relevant legal standard, dismissing Plaintiffs' harm in a single sentence.

With respect to publication and where the defamatory conduct occurred, the First Amended Complaint alleges that Lively's "out-of-court publication of the CRD and Draft Complaint were directly published by her to the press" or "she could reasonably foresee that they would be republished," and these publications were specifically directed to Texas. (Dkt. 21 at ¶65). The FAC further alleges, "she made additional repeated defamatory comments in Texas." (*Id.*). Thus, the "substantial" part of the activities arises not only from the CRD Complaint, but from Lively's out-of-court publication of the Draft Complaint to a media organization with the most digital subscribers in the United States (if not world) and repeating this defamation while in Texas. But, she (again) fails to dispute or meaningfully controvert any of these facts set forth in the FAC.

Lively has previously attested under penalty of perjury in Texas that venue is proper in Hays County, Texas, a county in this District, "because a substantial part of the underlying events that would give rise to the claims being investigated occurred in Hays County." (Hays County Case Verified Petition, ¶36). And she was right. In addition to the injury felt by him in this District, Wallace's conduct was also in this District. Wallace's earliest involvement with his limited role

with *It Ends With Us* and Wayfarer was August 2024. (Dkt. 26-14 at 5). Wallace was the sole employee of Street that engaged in that limited role and all such work was performed exclusively in this District. (*Id.*).

Further, Lively's admission, given her personal knowledge and experience that she does not possess "[t]he critical evidence relevant to [her] potential claims" or "the specifics of the conduct by Mr. Wallace" constitutes evidence of actual malice, and this admission occurred in Texas. (Hays County Case Verified Petition, ¶8). In other words, she may know who harasses her, but she knows it wasn't Wallace. This further supports the conclusion that a substantial part of the events giving rise to the controversy between Lively and Wallace transpired in this District.

Accepting the First Amended Complaint's allegations as true and construing all factual disputes in Plaintiffs' favor, a substantial part of the events giving rise to this defamation claim occurred within the Western District of Texas. The alleged acts of publication directed at Texas, coupled with the localized reputational and economic harm suffered by Texas residents, readily satisfy 28 USC § 1391(b)(2). Thus, venue is proper, and Lively's Rule 12(b)(3) motion should be denied.

### D.    Plaintiffs plead plausible claims for defamation.
(IN RESPONSE TO MOTION AT 31–46)

#### 1.    Legal Standard

As with the other sub-sections of Rule 12, the 12(b)(6) failure to state a claim is well established and understood. The pleading must contain a "short and plain statement of the claim showing the pleader is entitled to relief but does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must, however, have more than unadorned "the defendant did it" allegations. The claim must be plausible on its face not "probable" but the plaintiff must

plead factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court must accept as true all of the allegations contained in a complaint "construing all reasonable inferences in the light most favorable to the plaintiff" *Lavergne v. Lavespere,* No. 24-30317, 2025 WL 1088831, at *3 (5th Cir. Apr. 11, 2025).

Lively asserts an affirmative defense based on a California privilege, but a defense is allowable under Rule 12 (b)(6) only "when the operative pleading conclusively establishes the affirmative defense." *Cantu v. Guerra,* No. SA-20-cv-0746, 2021 WL 2652933, at *9 (W.D. Tex. June 28, 2021). In other words, "the affirmative defense [must] appear on the face of the complaint ... and the pleadings must reveal beyond doubt that the plaintiffs can prove no set of facts that would overcome the defense or otherwise entitle them to relief." *Jeanty v. Big Bubba's Bail Bonds,* 72 F.4th 116, 119 (5th Cir. 2023). "Dismissal under Rule 12 (b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.,* 765 F.3d 999, 1004 (9th Cir. 1984); *see also, Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.,* 27 F.4th 313, 320 (5th Cir. 2022) ("[I]t must be apparent from the plaintiff's own allegations that a defense is fatal to the claim.").

Plaintiffs are complaining of two publications: (i) the CRD Complaint and (ii) the Draft Complaint. Each were filed (published) by Lively through her lawyers that is, agents, although other "agents" may have been involved as discovery may show.[11] In fact the CRD Complaint was

---

[11] Lively argues the complaint relies on impermissible group pleading because the Complaint alleges "Lively" and "her agents." (Dkt. 26 at 32). Lively's one case for this proposition is inapplicable. In *Redden*, the pleading "Fail[ed] to provide specificity with respect to *who* made the statements and to *whom* the statements were made." *Redden v. Smith & Nephew, Inc.*, No. 3:09-CV-1380-L, 2010 WL 2944598, at *5 (N.D. Tex. July 26, 2010). But the complaint specifically alleges

even signed by her attorney under oath. (Dkt. 21-1 at 7). They were also published to the media, one of whom was reaching out to Wallace for comment within minutes of the filing.

### 2. Defamation elements

Defamation includes libel (written) and slander (spokes or oral) statements where the defendant "(1) published a false statement of fact to a third party; (2) that defamed the plaintiff; (3) while acting either with actual malice (if the plaintiff was a public official or public figure) or negligence (if the plaintiff was a private individual) regarding the truth of the statement; and the statement caused damages, unless the challenged statement constitutes defamation per se. "*Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 800 (Tex. App.—Austin 2017), *aff'd,* 611 S.W.3d 1 (Tex. 2019); *see also D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). Of these elements, Lively challenges identification of defamatory statements, defamatory meaning, fault, and damages. Wallace identified the defamatory statements and alleged all three remaining elements in a non-conclusory manner.

**For Defamatory Statements,** both publications accuse Wallace of sexual harassment and in the words of the CRD Complaint "a variety of conduct in violation of California Government Code Section 12940 (the "FEHA") and Title VII of the Civil Rights Act of 1964. (Dkt. 21-1 at 6). Specifically, the CRD Complaint states Street and Wallace were guilty of "sexual harassment, re-

---

that it was "Lively [who] provided all of this information to the report and the newspaper." (Dkt. 21, ¶5). That's why Lively is the defendant. That she may have done so through agents, rather than personally attached the pdf to an email is of no moment. "[I]f an agent is guilty of defamation, the principal is liable so long as the agent was apparently authorized to make the defamatory statement." *Am. Soc. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982). And the Complaint alleges the statements were made—republished—to the *New York Times*, among other publications. (Dkt. 21, ¶6).

taliation, failure to investigate, prevent and/or remedy harassment; and aiding and abetting harassment and retaliation." (Dkt. 21-1 at 6). The Draft Complaint repeats and expands upon the Street/Wallace's transgressions. "[S]tatements which accuse of sexual harassment, as here, are defamatory *per se*, *i.e.*, their defamatory nature need not be demonstrated." *Fox v. Parker,* 98 S.W.3d 713 (Tex. App.—Waco 2003, pet. denied); *see also Cedillos v. Tex. Dept. of Pub. Safety,* 2005 WL 589314, *6 (W.D.Tex. Mar. 10, 2005) (Same).

The First Amended Complaint alleges that these statements were (and are) false. (Dkt. 21 ¶¶30-31, 69). The Complaint also identifies specific statements. The CRD Complaint lists Wallace and Street as respondents and *under oath* says they are guilty of specific forms of sexual harassment and abuse. (Dkt. 21 at ¶25). The Draft Complaint does the same. And the Complaint in this case challenges "Lively's specific statement that Plaintiffs are 'a Texas-based contractor … who weaponized a digital army around the country … to create, seed, and promote content that appeared to be authentic on social media platforms and internet chat forums'— a false statement other than 'a Texas-based contractor.'" (Dkt. 21, ¶29).

Lively argues that this statement—that Wallace engaged in a shadow retaliation campaign against an alleged sexual harassment victim—is no more damaging than what Wallace had admitted that he passively monitored social media. (Dkt. 26 at 22). That is a bizarre argument because under Lively's statement that Wallace and Street "weaponized a digital army," if true, would be retaliation for reporting sexual harassment, and would at least impose civil liability—as Lively alleges, on top of being morally heinous that would be "detrimental to one's good name." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018). Beyond that, as explained below,

the statement accuses Street and Wallace of criminal misconduct and further injures Wallace and Street in their profession, both categories of defamation *per se*. *See infra*, at 19–20.

**For Fault,** Plaintiffs alleged the element of actual malice although, as the complaint alleges, it is likely that Street and Wallace are private figures making the fault standard negligence that is whether a reasonably prudent publisher should have known of the publication's defamatory potential. *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819-20 (Tex. 1976). But beyond merely alleging actual malice (which will be necessary for punitive damages in any event), the complaint explains that in her Rule 202 Petition, Lively "conceded that [she] has no facts supporting the allegations she made against Wallace and Street in the [Draft Complaint]." Compl. ¶40. Indeed, the Rule 202 Petition She "s[ought] to investigate . . . Mr. Wallace's work on the 'social manipulation' campaign [that] occurred in Hays County," Hays County Verified Petition ¶35, because she still lacked "[t]he critical evidence relevant to [her] claims, the specifics of the conduct by Mr. Wallace," Hays County Verified Petition ¶48. That is, she knew she lacked evidence for what she had already published. That fits the requirement for actual malice that the speaker have a "reckless disregard" for the truth, *see, e.g., Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002) (explain lack of care and motive are some evidence of actual malice), let alone negligence. It matters not that Lively later filed her Amended Complaint in the Southern District of New York—a matter outside the pleadings—because "testimony that [s]he believed what [s]he said is not conclusive, irrespective of all other evidence." *Bentley v. Bunton*, 94 S.W.3d at 596. But Lively challenges the Complaint here and "actual malice" evidence is plead with great specificity and is certainly plausible. *See* Dkt. 21 ¶¶44 and 71.

Lively certainly knew that Wallace had not sexually harassed her and yet she made the statements anyway and provided them to the press, specifically the *New York Times*.

**For Damages,** in the Draft Complaint, Lively accuses the Plaintiffs of "Sexual Harassment under California and Federal Law;" (Dkt. 21 ¶26); *see also* Dkt. 21-2 at 1, ¶¶18, 139. These claims are defamation per se. "Defamation *per se* occurs when a statement is so obviously detrimental to one's good name that a jury may presume general damages, such as for loss of reputation or for mental anguish.". *Tatum*, 554 S.W.3d at 624. Accusing the Plaintiffs of criminal or quasi-criminal acts, such as sexual harassment and intentional infliction of emotion distress, are accusations that support defamation *per se*. *See Id.* at 626, 626 n.6.

In addition, Lively's statements attack Wallace's profession skill and ethics by accusing him of "weaponize[ing] a digital army," (Dkt. 21-2 ¶18), which is also defamation *per se*. *Tatum*, 554 S.W.3d at 624 ("Statements that injury a person in h[is] . . . profession or occupation are typically classified as defamatory per se."). "[A] statement that injures one in her profession as a statement that "'ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, whether honorary or for profit . . . '" *Hancock v. Variyam*, 400 S.W.3d 59, 66–67 (Tex. 2013) (quoting Restatement (Second) of Torts § 573 (1977)). Lively's statements affected Wallace's reputation and ability in the profession of crisis management by describing him as some sort of evil, no-bar-too-low public relations thug.

Even if these were claims for defamation per quod, Wallace also alleges damages. (Dkt. 21-2, ¶¶51–55). Wallace has alleged that has caused actual damages and real and projected loss of

business (Wallace and Street) in an amount that exceeds $1,000,000. (*Id.* ¶51). For the same reasons that Lively's statements attack his profession and constitute damages per se, the defamatory statements have harmed his reputation and anonymity. (*Id.* ¶52). Accordingly, "the false allegations of fact made with actual malice has meant that Wallace and Street have lost business." (*Id.* ¶53). For the emotional harm, Wallace alleges that "Wallace has suffered medical issues induced by Lively's actions. Wallace's stress began on December 20, 2024, when Plaintiffs' world was turned upside down from the maliciously leaked CRD Complaint and the Draft Complaint, which made totally false and fabricated allegations against Plaintiffs. Such physical manifestations are the strongest evidence of mental anguish damages." (*Id.* ¶54).

### 3. Litigation privilege

As we noted an affirmative defense must be apparent from the face of the complaint and there is no such pleading here that would support the grant of a 12 (b)(6) motion on an affirmative defense. In any event Texas law should apply, but California, New York, and Texas law are all in accord that extra-judicial publications do not obtain the shield of the litigation privilege. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 50 (Tex. 2021); *Gottwald v. Sebert*, 40 N.Y.3d 240, 254 (2023); *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1149 (Cal. Ct. App. 1996). Plaintiffs' complaint is about "Lively or her agents providing the [Draft Complaint] to various media entities for out-of-court republication[.]" (Dkt. 21 ¶39). None of the two plausible choices for choice-of-law—Texas or New York—or the incorrect choice of California would support dismissal.

For Texas law, the Texas Supreme Court has made clear even if the Draft Complaint initially had the litigation privilege, Lively "lost the judicial-proceedings privilege's protections when they repeated the [Draft Complaint's] allegations for publicity purposes 'outside the protected

context within which the statements originally were made.'" *Landry's*, 631 S.W.3d at 50. Here, Lively or her agents' dissemination of the CRD Complaint or the Draft Complaint is not privileged under Texas law. *See Id.*; *see also* (Dkt. 21 ¶39).

Even if California law applied,[12] the result would be the same. "The litigation privilege does not protect press releases." *Paglia & Assocs. Constr., Inc. v. Hamilton*, 98 Cal. App. 5th 318, 323 (Cal. Ct. App. 2023) (applying *Rothman* to agency proceedings). So California courts have held "that the litigation privilege should not be extended to 'litigating in the press.'" *Rothman*, 49 Cal. App. 4th at 1149.

### 4. Fair report privilege

Under Texas law, the fair-report privilege no doubt protects the *New York Times* for its republication of the Draft Complaint if the *New York Times* made that application without actual malice. *See* Tex. Civ. Prac. Rem. Code § 73.002. But the fair report privilege only applies to a "publication by a newspaper or other periodical," not to Lively. *See* §73.002(a). Under Texas law, the fair report privilege does not apply to Lively, as she is not a newspaper or other periodical.[13]

California law admittedly does not have the same limitation, but that makes no difference here—the privilege is still inapplicable. Lively helpfully provides the case that makes this point: "An attorney may not, however, make defamatory allegations in a complaint and then report the

---

[12] Under New York law, which no one is advocating for, but is at least a more plausible choice than California, has recognized pre-suit, "[t]he privilege is therefore qualified, meaning that it may be 'lost'" upon a showing the statements were not made in good faith. *See Gottwald v. Sebert*, 40 N.Y. 3d 240, 254 (2023). But as Wallace alleges, these statements were made with actual malice. *See supra*.

[13] New York's fair report privilege is a qualified privilege, and Lively's conduct would fall into the exception, when, as here, there is at best for Lively a question of fact as to whether the gratuitous addition of the CRD Attachment and the later republication was in good faith. *See, e.g. Gottwald*, 220 N.E.3d 621, 630 (N.Y. 2023).

same alleged facts, *as facts*, to the media with impunity. . . . There is thus a critical difference between communicating to the media what is alleged in a complaint and communicating the alleged facts without reference to the complaint." *Healthsmart P., Inc. v. Kabateck*, 7 Cal. App. 5th 416, 435 (Cal. App. 2d Dist. 2016). Lively or her agents went far beyond merely saying "these are my allegations," as she or her agents, instead, communicated these allegations as standalone facts. *See* (Dkt. 21 ¶¶32–33). And that she was "set[ting] the record straight" and "revealing the truth." (*Id.* ¶33). That is precisely "mak[ing] defamatory allegations in a complaint and then report[ing] the same alleged facts, *as facts*, to the media" that California law itself forbids. *Healthsmart*, 7 Cal. App. 5th at 435.

### 5. California 47.1 privilege

Again, Texas law should apply and the California Civil Code § 47.1 privilege should not. But the California privilege is qualified and only applies to "[a] communication made by an individual, *without malice*." Cal. Civ. Code § 47.1 (emphasis added). Here, Wallace has alleged actual malice. *See supra* at Part.III.A.2. Nor does the privilege apply wholesale to the whole out-of-court publication—only to "factual information related to an incident"—Lively's Draft Complaint has communications beyond sexual harassment and her aiding and abetting claim. Lively does not explain how Plaintiffs "weaponized a digital army around the country from New York to Los Angeles to create, seed, and promote content that appeared to be authentic on social media platforms and internet chat forums," (Dkt. 21-2, ¶18), or allegations of intentional infliction of emotional distress or false light invasion are covered by California § 47.1.

## IV.    CONCLUSION

Neither Wallace nor Street especially want to be involved in this gigantic legal battle between two of the biggest names in Hollywood. After briefly joining the California *New York Times* case Street and Wallace chose not to pursue their claims against the newspaper and retreated, in the words of one of Lively's lawyers, "into the shadows." Then, Lively sued Wallace in Texas, hiring process servers to honk their horns late at night, and Wallace began to see the negative effects on Street's business of being falsely accused of sexually harassing one of film's leading ladies. So he and his company fought back with this lawsuit. Lively made the false statements, fed them to the press, went to Texas to see what she could find out about Wallace in a judicial proceeding, and then returned to Austin to promote her movie at the South by Southwest Film festival and, while there, repeated the defamation, an allegation she does not challenge either by pleading (even the Motion does not deny it) or proof. Lively has taken advantage of the Texas forum not to mention Wallace and his company. The Motion should be denied.

Dated: June 6, 2025

Respectfully submitted,
JACKSON WALKER LLP
/s/ *Charles L. Babcock*
Charles L. Babcock
Texas Bar No. 01479500
Joel Glover
Texas Bar No. 24087593
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4200

(713) 308-4110 [FAX]
cbabcock@jw.com
jglover@jw.com

Matt Dow
Texas Bar No. 06066500
Katharine Lee Carmona
Texas Bar No. 00787399
Cody Lee Vaughn
Texas Bar No. 24115897
100 Congress Ave. Suite 1100
Austin, TX 78701
(512) 236-2000
(512) 391-2113 [FAX]
mdow@jw.com
kcarmona@jw.com
cvaughn@jw.com

Minoo Blaesche
Texas Bar No. 24075102
Carl C. Butzer
Texas Bar No. 03545900
2323 Ross Avenue, Suite 600
Dallas, Texas 75206
(214) 953-6000
(214) 953-5822 [FAX]
mblaesche@jw.com
cbutzer@jw.com

**ATTORNEYS FOR PLAINTIFFS**

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2025, I electronically filed this document with the Clerk of

the Court using the CM/ECF system, which serves counsel for all parties.

<u>*/s/ Charles L. Babcock*</u>
Charles L. Babcock