IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JED WALLACE, STREET RELATIONS, INC., | § § | No. 1:25-cv-00163-DAE |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| BLAKE LIVELY, | § | |
| *Defendant*. | § | |

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed on May 19, 2025 (Dkt. # 26), by Defendant Blake Lively ("Defendant") seeking dismissal of Plaintiff Jed Wallace and Street Relations, Inc.'s ("Plaintiffs") Amended Complaint (Dkt. # 21). Plaintiffs responded on June 9, 2025 (Dkt. # 29), and Defendant replied on June 23, 2025 (Dkt. # 32.). The Court finds this matter suitable for disposition without a hearing.

After careful consideration of the filings and the relevant law, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. # 26).

BACKGROUND

This case arises out of the alleged sexual harassment and retaliation that took place during and after the filming of the movie *It Ends With Us* (the "Film"). (Dkt. # 26 at 3.) The underlying scandal of this lawsuit is one which has

1

garnered national attention and the Court now attempts only to provide a general summary of the details which are most relevant to the present order.

Defendant Blake Lively ("Defendant") starred in the Film alongside actor Justin Baldoni. The Film was produced by Wayfarer Studios ("Wayfarer"), of which Baldoni is a co-owner. (Id.) Defendant alleges that Baldoni and Wayfarer CEO, Jamey Heath, harassed and retaliated against her after she reported such harassment. (Id.) Defendant alleges that as promotional events for the Film began in the summer of 2024, Baldoni became concerned that Defendant would speak publicly about the on-set harassment and solicited the assistance of crisis management expert, Melissa Nathan, and several other individuals (collectively "Baldoni's Team"). (Id.) Plaintiffs Jed Wallace and Street Relations, Inc. ("Plaintiffs"), the "crisis mitigation firm" of which Wallace is the owner (Dkt. # 21 at ¶ 19), were first approached by Baldoni's Team in August of 2024 to assist it "in social/digital mitigation and remediation regarding Wayfarer Studios[.]" (Id. at ¶ 22.) Plaintiffs describe their job as "spott[ing] trends about the public's reaction to the Film and its starts and subsequently provid[ing] advice to [Baldoni's Team] on those subjects." (Id. at ¶ 23.)

In December of 2024, Defendant filed an administrative complaint with the California Civil Rights Department ("CRD") as a required prerequisite to initiating a lawsuit in federal court (the "CRD Complaint"). (Dkt. # 26 at 4.) The

CRD Complaint named Plaintiffs and others from Baldoni's Team as respondents and alleged the details that form the basis of Defendant's harassment and retaliation claims.  (Id. at 4–5; Dkt. # 21 at ¶ 25)  The day after Defendant filed the CRD Complaint, *The New York Times* published an article reporting on the allegations entitled, *'We Can Bury Anyone': Inside a Hollywood Smear Machine* (the "Article").  (Id. at 7; Dkt. # 21 at ¶ 6.)  Plaintiffs allege that Defendant provided the press with her CRD Complaint and a 62-page draft complaint ("Draft Complaint") which listed Plaintiffs as defendants and included claims arising from the alleged harassment that took place on set of the Film and the alleged retaliation that followed.  (Dkt. # 21 at ¶ 3.)  In the days that followed, multiple media organizations reported on the CRD and Draft Complaints.  (Id. at ¶ 6.)

　　　　Soon after, in late December of 2024, Defendant filed a final version of the Draft Complaint in the United Stated District Court for the Southern District of New York that did not name Plaintiffs as defendants (the "NY Litigation").  (Id. at ¶ 7.)  That same day, Plaintiffs and others named in the CRD Complaint initiated a lawsuit against *The New York Times* in California state court.  (Dkt. # 26 at 7.)  In January of 2025, Defendant initiated a Rule 202 petition in Texas state court to obtain a pre-suit deposition of Plaintiff Wallace to "investigate the full nature and scope of his role in implementing and carrying out the retaliatory campaign."  (Id. at 8.)  Defendant paid a fee to file the petition and hired process servers to serve

Plaintiff Wallace but failed to do so, and Defendant ultimately non-suited the petition ten days after filing it.  (Dkts. ## 21 at ¶ 10; 26 at 9.)

Other members of Baldoni's Team, who were named as defendants in the NY Litigation, filed suit against Defendant and *The New York Times* in New York, and this case was ultimately consolidated with Defendant's suit in the NY Litigation.  (Dkt. # 26 at 8.)  Plaintiffs did *not* participate as plaintiffs in the NY Litigation but were later added to Defendant's claims.  (Dkts. ## 21 at ¶ 12, 26 at 9.)  The parties to the California lawsuit, including Plaintiffs, later dismissed the California suit.  (Dkt. # 26 at 9.)  The NY Litigation is ongoing, and while the Court will not summarize the extensive proceedings, it notes two facts: (1) Defendant's claims against Plaintiffs in the NY Litigation have been dismissed for lack of personal jurisdiction (Dkt. # 41), and (2) the defamation claims against Defendant brought by the other members of Baldoni's Team, not including Plaintiffs, have been dismissed (Dkt. # 36 at 2).  See Lively v. Wayfarer Studios LLC, No. 24-CV-10049, 2025 WL 3085598 (S.D.N.Y. Nov. 5, 2025); Lively v. Wayfarer Studios LLC, 786 F. Supp. 3d 695 (S.D.N.Y. 2025).

In the present case before this Court, Plaintiffs assert claims of defamation against Defendant for the publishing of the Draft and CRD Complaints which they allege falsely accused them of illegal conduct, sexual harassment, and retaliation.  (Dkt. # 21 at ¶¶ 67–73.)  In essence, they argue that publications of the

4

Draft and CRD Complaints suggests that Plaintiffs were involved in the sexual harassment on set, which they were not present for, and "paint[] a nefarious picture" of Plaintiffs that misstates their role in the alleged retaliation campaign. (See id. at ¶¶ 44–48, 71.)

On February 4, 2025, Plaintiffs filed suit in this Court.  (Dkt. # 1.) Plaintiffs later filed an Amended Complaint on April 24, 2025.  (Dkt. # 21.)  In their Amended Complaint, Plaintiffs assert claims for defamation and defamation per se.  (Id. at 20.)  On May 19, 2025, Defendant filed the present Motion to Dismiss.  (Dkt. # 26.)  Defendants seek dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), improper venue pursuant to Fed. R. Civ. P. 12(b)(3), and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Id. at 2.)

## LEGAL STANDARD

I.    Motion to Dismiss under Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) confers a right to dismissal of claims against a defendant where personal jurisdiction is lacking.  A court must determine whether it has personal jurisdiction over the defendant by "first determin[ing] whether the long arm statute of the forum state permits exercise of jurisdiction[,] . . . then determin[ing] whether such exercise comports with due process."  Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th Cir. 1993).  "The Texas long-arm statute extends to the limits of the Constitution," and a Texas

court's "inquiry is therefore limited to the reach of the Fourteenth Amendment's Due Process Clause." Stroman Realty, Inc. v. Antt, 528 F.3d 382, 385 (5th Cir. 2008). "The Fourteenth Amendment allows a court to assert personal jurisdiction over defendants who have meaningful 'contacts, ties, or relations' with the forum state. Such contacts can give rise to general or specific jurisdiction." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). However, the Fourteenth Amendment also "limit[s] the power of a State to assert in personam jurisdiction over a nonresident defendant." Helicopteros Nactionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413–414 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1878)).

Where a defendant has "'continuous and systematic general business contacts' with the forum state," the forum may exercise general personal jurisdiction over the defendant. Stroman, 528 F.3d at 385 (quoting Helicopteros, 466 U.S. at 415 n. 9) (finding the Texas district court improperly exercised general jurisdiction over officials from California and Florida who did not have an office in Texas or sufficient contacts with Texas giving rise to general jurisdiction). If a defendant's contacts "are less pervasive, courts may exercise 'specific jurisdiction' in 'a suit arising out of or related to the defendant's contact with the forum.'" Id. (quoting Helicopteros, 466 U.S. at 415 n. 9).

The plaintiff bears the burden of proof to demonstrate personal jurisdiction. Nuovo Pignone, PsA v. STORMAN ASIA M/V, 310 F.3d 374, 378

(5th Cir. 2002); <u>Elly v. Syria Shell Petroleum Dev. B.V.</u>, 213 F.3d 841, 854 (5th Cir. 2000).  Courts in the Fifth Circuit evaluate whether exercise of both general and specific personal jurisdiction is consistent with the Due Process Clause by applying a three-part test, considering:

> (1) [W]hether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

<u>Nuovo Pignone</u>, 310 F.3d at 378 (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474 (1985)).  If a defendant's contacts with the forum state are insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment, the court must dismiss the case for lack of personal jurisdiction.  <u>Id.</u>

## II.    <u>Motion to Dismiss under Rule 12(b)(3)</u>

A party moving to dismiss based on improper venue does so pursuant to Federal Rule of Civil Procedure 12(b)(3).  "In an action not based on diversity, proper venue lies in either '(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.'"  <u>McClintock v. Sch. Bd. E. Feliciana Par.</u>, 299 Fed. Appx. 363, 365 (5th Cir. 2008) (citing 28 U.S.C. § 1391(b)).

"On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." Braspetro Oil Servs. v. Modec (USA), Inc., 240 F. App'x 612, 615 (5th Cir. 2007). However, the Court may consider evidence in the record beyond the facts alleged in the complaint and its attachments, including affidavits or evidence submitted by the parties as part of the venue motion. Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte, 536 F.3d 439, 449 (5th Cir. 2008). When it is determined a case is filed in a division or district of improper venue, the district court may either dismiss the case or transfer it to any district or division of proper venue. See 28 U.S.C. § 1406(a).

III.    Motion to Dismiss under Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well–pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019).

## DISCUSSION

### I.    Personal Jurisdiction

A court must first address jurisdictional matters, and if jurisdiction is lacking, the court will not reach the merits.  Steel Co. v. Citizens for a Better Env't., 523 U.S. 83, 94 (1995).  Therefore, the Court will first consider whether it has personal jurisdiction over Defendant.

Neither party asserts that the Court has general personal jurisdiction over Defendant.  (Dkt. # 29 at 13; Dkt. # 32 at 10 n.10.)  Instead, Plaintiffs argue that the Court has specific personal jurisdiction over Defendant because her contacts "'are less pervasive' but arise out of or are related to the Defendant's contact with the forum."  (Dkt. # 29 at 13) (quoting YETI Coolers, LLC v. Mercatalyst, Inc., No. 1:22-CV-01337-DAE, 2023 WL 11852866, *2 (W.D. Tex. Nov. 14, 2023)).  Specific jurisdiction affords a narrower authority and will apply if a defendant "purposefully avails" itself of the opportunity to do business in the forum State and the suit "'arise[s] out of or relate[s] to'" the defendant's contacts with the forum State.  Helicopteros, 466 U.S. at 415 n.9.  The "purposeful availment" requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.  Burger King, 471 U.S. at 472.

Defendant offers several arguments as to why this Court lacks personal jurisdiction over her.  First, Defendant argues that the Rule 202 petition she filed in Texas state court does not subject her to personal jurisdiction.  (Dkt. # 26 at 16–18.)  Second, Defendant argues that the Calder effects test does not subject her to personal jurisdiction.  (Id. at 18–19) (citing Calder v. Jones, 465 U.S. 783 (1984)).  Lastly, Defendant maintains that Plaintiffs' allegations, based on information and belief, that Defendant continued to repeat the defamatory statements while in Texas is a failed attempt to manufacture personal jurisdiction. (Id. at 19–20.)  The Court will address each argument in turn.

A.    Rule 202 Petition

Plaintiffs argue that by filing the Rule 202 petition, paying the filing fees, and hiring process servers to serve the petition, Defendant personally availed herself to the jurisdiction of Texas.  (Dkt. # 29 at 13–17.)  A party "submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter" when it "seeks affirmative relief from [the] court." PaineWebber Inc. v. Chase Manhattan Priv. Bank (Switzerland), 260 F.3d 453, 460–61 (5th Cir. 2001).  A party may also waive any objections to personal jurisdiction when it chooses to litigate extensively on the merits.  Id. at 459 (citing General Contracting & Trading Co., LLC v. Interpole, Inc., 940 F.2d 20, 23 (1st Cir. 1991)).  Thus, Plaintiffs seem to be arguing that by filing the Rule 202 petition,

11

which they refer to as the "Texas Lawsuit" (Dkt. # 21 at ¶ 40), Defendant

personally availed herself by seeking affirmative relief from the Texas state court

or by otherwise actively litigating.

In response, Defendant argues that the Rule 202 petition is not an

"original action," and that she did not otherwise litigate extensively on the merits

because Defendant non-suited the petition fourteen days after filing it without ever

serving Plaintiffs.  (Dkts. ## 26 at 16–18; 32 at 10–11.)  The Court agrees.

"Courts hold consistently that a Rule 202 petition is a request for

discovery, not a claim, demand, or cause of action."  RJ Mach. Co. v. Canada

Pipeline Accessories Co., No. A-13-CA-579-SS, 2015 WL 5139295, *5 (W.D. Tex.

Aug. 31, 2015) (citing Texas v. Real Parties in Interest, 259 F.3d 387, 394 (5th Cir.

2001) (describing a Rule 202 proceeding as "only an investigatory tool" for

potential claims that may or may not ultimately result in a cause of action); In re

Valeras Compression Servs., LP, No. 14–14–00019–CV, 2015 WL 2169656,

*4 (Tex.App.—Houston [14th Dist.] May 7, 2015, not pet.) (McNally, J.,

concurring) ("A Rule 202 petition for pre-suit discovery is so distinct from a

traditional lawsuit that the majority of Texas courts to consider the question hold

that a Rule 202 proceeding may not be removed to a federal court.")).  A Texas

state court described a Rule 202 petition as:

> ultimately a petition that asserts no substantive claim or cause of
> action upon which relief can be granted. A successful rule 202

petitioner simply acquires the right to obtain discovery-discovery that may or may not lead to a claim or cause of action . . . We cannot agree that a rule 202 petition is itself a 'suit,'. . . .

Combs v. Tex. Civil Rights Project, 410 S.W.3d 529, 534 (Tex. App.—Austin 2013, pet. denied).

Although there is no direct authority as to whether a Rule 202 petition constitutes "seeking affirmative relief" for purposes of conferring personal jurisdiction, the case law is clear that a Rule 202 petition is not a "civil action" for purposes of removal to federal court. See In re Highland Cap. Mgmt., L.P., No. 19-34054-SGJ11, 2022 WL 38310, *6 (Bankr. N.D. Tex. Jan. 4, 2022) (summarizing a multitude of cases that have opined that a Rule 202 petition is not removable as a civil action). Given the plethora of case law holding that a Rule 202 petition is not a civil action for purposes of removal but is merely a tool of discovery to investigate a *potential* cause of action, the Court accordingly declines to interpret Defendant's Rule 202 petition as "seek[ing] affirmative relief" that subjects her to the state's personal jurisdiction.

Furthermore, the two cases that Plaintiffs cite in support of their argument are taken out of context and are not binding. (Dkt. # 29 at 15–16.) Plaintiffs first cite an opinion out of the Supreme Court of Texas for the principle that a Rule 202 petition is the "progeny of a common-law suit in equity." (Id. at 15) (citing In re Doe, 444 S.W.3d 603, 605–07 (Tex. 2014) (Hecht, C.J.) (recounting

13

the history that led to Rule 202 to discern its nature)).  Plaintiffs emphasize that the Texas Supreme Court made clear that a court entertaining a Rule 202 petition must have both subject matter and personal jurisdiction.  (Id. at 15–16) (citing In re Doe, 444 S.W.3d at 608).  However, this decision is not binding and only states that the Texas *state* court in which a Rule 202 petition is filed must have personal jurisdiction over the *defendant* who the Rule 202 petitioner seeks to depose—in this case, Wallace.  See In re Doe, 444 S.W.3d at 608.  That has no bearing on this *federal* court's personal jurisdiction over the Rule 202 *petitioner* in a separate action—in this case, Lively.

Petitioners next cite an opinion out of the Third Court of Appeals of Texas holding that a Rule 202 petition was a "legal action" subject to a motion to dismiss under the TCPA because "the relief sought by a Rule 202 petition investigating a potential claim or suit is an equitable remedy."  (Id. at 16) (citing In re Elliott, 504 S.W.3d 455, 466–67 (Tex. App.—Austin 2016, orig. proceeding)).  Once again, this decision is not binding on this Court, and a closer look at In re Elliot clarifies that the court held that a Rule 202 petition is a 'legal action' only within "the TCPA's *broad* definition of 'legal action' . . . ."  504 S.W.3d at 465 (emphasis added).  Therefore, Plaintiffs' argument is overwhelmed by the *federal* case law supporting the Court's conclusion that Defendant's Rule 202 petition does not amount to an "original action" seeking affirmative relief that would subject her

14

to this Court's personal jurisdiction.[1] <u>See</u> <u>PaineWebber</u>, 260 F.3d at 460–61;

<u>Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.</u>, 921 F.3d 522, 541

(5th Cir. 2019) (holding that filing a counterclaim or third-party claims is not an

original action which would subject a party to personal jurisdiction).

Lastly, Defendant's Rule 202 petition does not amount to "litigat[ing]

actively on the merits [which would] thereby surrender any jurisdictional

objections." <u>PaineWebber</u>, 260 F.3d at 459.  The Rule 202 petition was filed by

Defendant on January 21, 2025, and non-suited by Defendant on February 4, 2025.

(Dkts. ## 26 at 8, 29-13).  The Rule 202 petition was only pending for fourteen

days and Defendant never served Plaintiff Wallace (Dkt. # 26-13) before non-

suiting the petition.  Therefore, the Court finds that Plaintiffs have failed to

demonstrate that Defendant's Rule 202 petition subjects her to the Court's personal

jurisdiction.

B.    <u>Calder Effects Test</u>

Plaintiffs also argue that the CRD Complaint, upon which this lawsuit

is based, was "aimed at Texas where both Plaintiffs reside and they undoubtedly

---

[1] Although Plaintiffs also argue that Defendant paid fees to a Texas governmental entity to file the Rule 202 petition and hired process servers to serve Plaintiff Wallace with the petition (Dkt. # 29 at 8–11), these supporting facts are not persuasive as they are merely means of effectuating the Rule 202 petition, which the Court has already found to be insufficient to subject Defendant to the Court's personal jurisdiction.

caused harm. Two mentions of Wallace in the Draft Complaint specifically state that he is based in Texas."  (Dkt. # 21 at ¶ 59.)  Defendant interprets this as an application of the <u>Calder</u> effects test (Dkt. # 26 at 18), and so the Court will analyze it as such.[2]

   <u>Calder v. Jones</u>, 465 U.S. 783, 789 (1984), adopted a doctrine colloquially referred to as the "effects" test.  The <u>Calder</u> effects test permits courts to exercise specific personal jurisdiction over "an author or publisher who 'aims' a story at the state knowing that the 'effects' of the story will be felt there."  <u>Fielding v. Hubert Burda Media, Inc.</u>, 415 F.3d 419, 425 (5th Cir. 2005).  In <u>Calder</u>:

> The . . . story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

465 U.S. at 788–89.  The Fifth Circuit examined not only the effects of the defendants' actions, "but that the defendants had directed their actions towards the forum, and knew their effects would be felt there."  <u>Fielding</u>, 415 F.3d at 425 (citing <u>Calder</u>, 465 U.S. at 789–90).  It held that, "to exercise specific jurisdiction

---

[2] Plaintiffs also later rely on <u>Calder v. Jones</u>, 465 U.S. 783 (1984) in their response. (Dkt. # 29 at 14.)

in a libel action, the 'aim' of the [publisher] under the <u>Calder</u> test must be demonstrated by showing that (1) the subject matter of and (2) the sources relied upon for the article were in the forum state." <u>Id.</u> at 426 (citing <u>Revell v. Lidov</u>, 317 F.3d 467, 474 n.48 (5th Cir. 2002).

In <u>Fielding</u>, the plaintiffs, a married couple living abroad, were suing the German publisher of several articles detailing the alleged affair of the husband and its aftermath. <u>Id.</u> The articles reference the wife's college years and modeling career in Texas, included an interview with her Texan ex-husband, and the plaintiffs' alleged injury to their reputation amongst their family, friends, and acquaintances occurred in Texas. <u>Id.</u> at 424, 426. However, the Court found that these descriptions "served merely to supply background, biographical information." <u>Id.</u> at 426. Despite the publisher's acknowledgment of the use of Texas sources, the Court found that "the clear thrust of the articles, as merely echoing the affair allegations of the Swiss tabloid . . . shows the marginal importance of this Texas research." <u>Id.</u> Lastly, the Court found that the brunt of the injury was suffered in Germany and that the defendant's "[k]nowledge that sufficient harm would be suffered in Texas [was] conspicuously lacking" because the subject of the reporting was on German residents and directed at a German audience. <u>Id.</u> at 427.

17

In comparison, Plaintiffs allege that Defendant's "defamatory statements were aimed at Texas where both Plaintiffs reside and they undoubtedly caused harm in Texas[]" because "[t]wo mentions of Wallace in the Draft Complaint specifically state that he is based in Texas."  (Dkt. # 21 at ¶ 59.) However, stating that Plaintiff Wallace is based in Texas "served merely to supply background, biographical information[,]" and is even less prevalent than the level of detail alleged in the Fielder article.  Id. at 426.  Furthermore, Plaintiffs do not allege that Defendant relied on any Texas sources in writing the CRD and Draft complaints.

Lastly, Plaintiffs have not sufficiently alleged that the defendants "directed their actions towards the forum, and knew their effects would be felt there."  Fielding, 415 F.3d at 425 (citing Calder, 465 U.S. at 789–90).  Plaintiffs argue that Defendant "published the defamatory CRD Complaint and the Draft Complaint and provided the documents to the press who promptly republished them, as she hoped and foresaw, in Texas and elsewhere."  (Dkt. # 29 at 14.) However, while the CRD Complaint was allegedly shared with *The New York Times* and was republished "all over the world, including in Texas," (Dkt. # 18 at ¶ 24) there is nothing to indicate that the article was targeting Texas readers as distinguished from readers in other states.  See Revell v. Lidov, 317 F.3d 467, 473 (5th Cir. 2002).  Furthermore, the CRD and Draft Complaints both focused on

events taking place outside of Texas.  (See Dkts. ## 21-1; 21-2.)  Based on the

foregoing, the Court finds that Defendant's actions do not subject her to the

personal jurisdiction of this Court under the Calder effects test.

C.    Information and Beliefs Statement

Lastly, Plaintiffs contend that "on information and belief, additional

defamatory statements about Plaintiffs were made by Lively at SXSW in Austin,

Texas and later in Waco . . . ."  (Dkt. # 21 at ¶ 64.)  More specifically, Plaintiffs

allege that "when confronted by a Texas resident who stated that 'Blake Lies' and

referenced 'Justice for Justin,' Lively never admitted that her statements were false

but rather allowed her lies to stand . . . ."  (Id. at ¶ 14.)  They further allege that

Defendant "made additional defamatory comments about Plaintiffs" at a hotel in

Waco (id. at ¶ 15), and that further discovery "may reveal whether she made any

additional defamatory remarks about Plaintiffs" at her promotion of the Film at the

Texas Book Bonanza event (id. at ¶¶ 60–63).

Defendant argues that "Information and Belief Statements cannot

satisfy Plaintiffs' burden to plead facts that 'establish a prima facie case of personal

jurisdiction' at the motion to dismiss stage."  (Dkt. # 26 at 18) (citing Salermo v.

Hughes Watters & Askanase LLP, 516 F. Supp. 3d 696, 710 (S.D. Tex. 2021)).  As

to Defendant's alleged silence in response to a fan's confrontation at SXSW,

19

Defendant argues that silence alone does not constitute a defamatory statement. (Id. at 26.)

The Court finds that these allegations are insufficient to support any claim, including to establish personal jurisdiction.  See Elec. & Gas Tech., Inc. v. Universal Commc'n Sys., Inc., No. CIV.A. 303CV1798-G, 2003 WL 22838719, *5 (N.D. Tex. Nov. 24, 2003) ("Unproffered 'information' and unsubstantiated 'belief' that [Defendant] has made 'material contacts in Texas' is clearly insufficient to warrant this court's exercise of in personam jurisdiction over [Defendant].") (citations omitted).  It is Plaintiffs' burden to establish personal jurisdiction when faced with a motion to dismiss for lack of personal jurisdiction, and they have failed to present any "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery" that the Court may use to determine the jurisdictional issue.  Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997); see also Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994).  While the Court recognizes that Plaintiffs may not have had extensive opportunity in the present case to conduct discovery, the issues underlying this case have been under extensive litigation in other courts for nearly a year and yet Plaintiffs fail to provide the Court with any greater level of detail beyond the speculation that "on information and belief," Defendant repeated the defamatory remarks while in Texas.  (See Dkt. ## 21 at ¶¶ 14–15, 29 at 22.)

Accordingly, the Court concludes that Plaintiffs have failed to establish that Defendant is subject to this Court's personal jurisdiction. When a court finds it lacks personal jurisdiction, it may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(2). Because the Court's finding of no personal jurisdiction resolves the motion to dismiss, the Court need not address Defendant's other bases for dismissal. See Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 232 (5th Cir. 2012) (affirming district court's decision to "dispose of the personal jurisdiction issue first and [ ] not proceeding further after concluding that it lacked personal jurisdiction").

<u>CONCLUSION</u>

For the reasons set forth above, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. # 26) for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

**SIGNED:** Austin, Texas, November 12, 2025.

_____
David Alan Ezra
Senior United States District Judge

21