**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JED WALLACE,** | § | |
| **STREET RELATIONS, INC.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **CASE NO. 1:25-CV-00163-DAE** |
| | § | |
| **BLAKE LIVELY,** | § | |
| | § | |
| **Defendant.** | § | |

---

## DEFENDANT'S MOTION FOR COSTS AND ATTORNEYS' FEES

---

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ....................................................................................................................... 1

BACKGROUND .......................................................................................................................... 2

    A.    Plaintiffs Are Retained to Execute a Retaliatory Smear Campaign Against Ms. Lively Following Reports of Sexual Harassment on the Set of It Ends With Us ....................................................................................................... 2

    B.    Ms. Lively Files a Protected CRD Complaint Reporting Sexual Harassment and Retaliation in California ............................................... 3

    C.    Plaintiffs Initiate Litigation in California Following Publication of the CRD Complaint and a New York Times Article Reporting on Its Contents ......... 5

    D.    Plaintiffs File This Frivolous Defamation Action Against Ms. Lively in Texas .......................................................................................................... 6

    E.    Ms. Lively Moves to Dismiss the Amended Complaint, and the Court Dismisses the Action for Lack of Personal Jurisdiction ...................................... 6

LEGAL STANDARD ................................................................................................................... 7

ARGUMENT ............................................................................................................................... 7

    A.    Ms. Lively is Entitled to an Award of Reasonable Attorneys' Fees and Costs Under Cal. Civ. Code § 47.1(b) for "Successfully Defending" Herself in This Action ................................................................................. 7

        1.    Section 47.1(b) applies to Ms. Lively's claim for costs and fees. ............. 7

        2.    Ms. Lively's allegedly defamatory statements are privileged under Section 47.1 ............................................................................... 10

            a.    Ms. Lively's allegedly defamatory statements are "communications" protected by Section 47.1 ............................. 10

            b.    Ms. Lively's allegedly defamatory statements were made without malice .............................................................................. 11

            c.    Ms. Lively had a "reasonable basis" to file her "complaints." ......................................................................... 14

        3.    Ms. Lively Successfully Defended Herself Against Plaintiffs' Claims. ..................................................................................... 15

RULE 54(d)(2)(B)(iii) STATEMENT ....................................................................................... 17

CONCLUSION .......................................................................................................................... 18

CERTIFICATE OF SERVICE ................................................................................................... 20

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Amphastar Pharms. Inc. v. Aventis Pharma SA,*
   856 F.3d 696 (9th Cir. 2017) ........................................................................16

*Bailey v. Shell W. E&P, Inc.,*
   609 F.3d 710 (5th Cir. 2010) .........................................................................8

*Ballard v. Devon Energy Prod. Co., L.P.,*
   678 F.3d 360 (5th Cir. 2012) .........................................................................8

*Barry v. State Bar of California,*
   2 Cal. 5th 318 (2017) ..................................................................................16

*Bruckman v. Parliament Escrow Corp.,*
   190 Cal. App. 3d 1051 (Ct. App. 1987)........................................................17

*Cannon Oil & Gas Well Servs., Inc. v. KLX Energy Servs., L.L.C.,*
   20 F.4th 184 (5th Cir. 2021) ..........................................................................7

*CRST Van Expedited, Inc. v. E.E.O.C.,*
   578 U.S. 419 (2016)......................................................................................16

*Dignity Health v. Mounts,*
   105 Cal. App. 5th 113 (2024) .......................................................................11

*Kapellas v. Kofman,*
   1 Cal. 3d 20 (1969) ......................................................................................11

*Lively v. Wayfarer LLC,*
   No. 24-cv-10049 (S.D.N.Y. Mar. 20, 2025) ...........................................11, 12

*Lively v. Wayfarer Studios LLC,*
   786 F. Supp. 3d 695 (S.D.N.Y. 2025)........................................................6, 13

*Lundquist v. Reusser,*
   7 Cal. 4th 1193 (1994) .................................................................................11

*Mut. Concepts, Inc. v. First Nat. Bank of Omaha,*
   495 Fed. App'x 514 (5th Cir. 2012) ...........................................................7, 9

*Nix v. Major League Baseball,*
   62 F.4th 920 (5th Cir. 2023) .......................................................................8, 9

*Pickle v. Universal Cable Holdings, Inc.,*
   534 F. Supp. 3d 663 (N.D. Tex. 2021) ..........................................................8

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
  No. 18CV967-GPC(MSB), 2023 WL 7597630 (S.D. Cal. Nov. 14, 2023) ............................17

*Sanbourn v. Chronicle Publ'g Co.*,
  18 Cal. 3d 406 (1976) .............................................................................................................12

*Taus v. Loftus*,
  40 Cal. 4th 683 (2007) .......................................................................................................11, 12

*Wayfarer Studios LLC, et al. v. Lively et al.*,
  No. 1:25-cv-0049 ............................................................................................................. *passim*

**Statutes**

Cal. Civ. Code § 47.1............................................................................................................ *passim*

Cal. Civ. Code § 47.1(a) ...................................................................................................1, 10, 11

Cal. Civ. Code § 47.1(b) ................................................................................................2, 7, 16, 17

Cal. Civ. Code § 47.1(c) ...................................................................................................1, 10, 15

Cal. Civ. Code § 47.1(d) ........................................................................................................1, 10

Cal. Civ. Code § 48a(d)(4)...................................................................................................12, 14

**Other Authorities**

Fed. R. Civ. P. 54(d)(2)(A) .........................................................................................................7

Fed. R. Civ. P. 54(d)(2)(B)(i) .....................................................................................................7

Fed. R. Civ. P. 54(d)(2)(C) ....................................................................................................7, 18

Fed. R. Civ. P. 58(a) ...................................................................................................................7

Fed. R. Civ. P. 58(c)(2)...............................................................................................................7

Local Rule CV-1(e)....................................................................................................................18

Local Rule CV-54(b)(2)..............................................................................................................18

Restatement (Second) of Conflict of Laws § 6 cmt. e. ...........................................................9, 10

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

Defendant Blake Lively respectfully submits this motion for attorney's fees pursuant to Federal Rule of Civil Procedure 54(d), Local Rule CV-54, and California Civil Code § 47.1. Pursuant to Local Rule CV-7(g) and CV-54, undersigned counsel certifies that Defendant's counsel conferred with Plaintiffs' counsel for the purpose of resolving all disputed issues relating to attorney's fees prior to making this application, but were unable to resolve the dispute by agreement because Plaintiffs are opposed to the relief requested in this motion.

## INTRODUCTION

This fee motion arises from exactly the kind of retaliatory defamation litigation California sought to deter when it enacted California Civil Code Section 47.1. Plaintiffs[1] brought this action to punish Ms. Lively for reporting sexual harassment and retaliation and for communicating the factual basis of those reports through formal channels—including her protected complaint with the California Civil Rights Department. Having forced Ms. Lively to defend against a meritless defamation suit in a distant and inappropriate forum, Plaintiffs should now be held to the statute's deterrent consequence: payment of Ms. Lively's reasonable attorneys' fees incurred in successfully defending herself in this litigation.

Under Section 47.1, any "communication made by an individual, without malice, regarding an incident of sexual assault, harassment, or discrimination [including retaliation] *is privileged*" so long as the speaker "has, or at any time had, a reasonable basis to file a complaint of sexual assault, harassment, or discrimination, whether the complaint is, or was, filed or not." Cal. Civ. Code § 47.1(a), (c), (d) (emphasis added). Section 47.1 ensures that individuals who experience sexual harassment or retaliation are able to share their experiences with courts, agencies, the press, and others, without fear of being sued for doing so. *Id.* Specifically, Section 47.1 is intended to

---

[1] Plaintiffs refer collectively to Jed Wallace ("Wallace") and Street Relations, Inc. ("Street").

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

deter frivolous claims that force survivors to "defend against a long and expensive retaliatory defamation lawsuit" by imposing "***significant remedies*** for successful defendants in defamation claims." Dkt. 26-17, Ex. O-1, at pp. 29, 64, 162; March 21, 2023 Assembly Committee on Judiciary, p. 1 (emphasis added); Cal. Civ. Code § 47.1(b). Consistent with Section 47.1's stated purpose, the Court should act promptly to remedy the substantial harm Ms. Lively has incurred.

Plaintiffs' suit falls squarely within the Section 47.1's text and purpose. The alleged defamatory statements that formed the basis of the Plaintiffs' lawsuit meet all the elements of privileged statements under that section. Moreover, because Section 47.1 is designed to protect victims from the burden of retaliatory litigation itself, its remedies do not depend on a merits adjudication of the defamation claims. Rather, the statute requires only that the defendant "successfully defend" against the action. Cal. Civ. Code § 47.1(b). Ms. Lively did just that. She therefore qualifies as a prevailing defendant under Section 47.1, and is entitled to a fee award.

## BACKGROUND

**A.    Plaintiffs Are Retained to Execute a Retaliatory Smear Campaign Against Ms. Lively Following Reports of Sexual Harassment on the Set of It Ends With Us**

As set forth in Ms. Lively's Motion to Dismiss (Dkt. 24-2)[2], Ms. Lively reported sexual harassment and misconduct by her director and co-star Justin Baldoni ("Baldoni") and Wayfarer Studios ("Wayfarer") CEO Jamey Heath ("Heath") on the set of the film *It Ends with Us*. Dkt. 21-2 ¶¶ 1, 3, 28–51. Wayfarer ultimately agreed to a contract with Ms. Lively containing 17 specific protections to ensure a safe set, with a prohibition on retaliation against Ms. Lively "for raising concerns or requesting safeguards." *Id*. ¶¶ 2, 29, 56–77.

---

[2] In the interests of judicial economy, Ms. Lively provides a summary of relevant facts from her Motion to Dismiss the Amended Complaint but does not repeat those facts in their entirety here. For completeness, Ms. Lively hereby incorporates by reference the Factual Background in her Motion to Dismiss the Amended Complaint. Dkt. 24-2.

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

Nevertheless, as promotional events for the Film began in the summer of 2024, Baldoni became concerned that Ms. Lively would speak publicly about the on-set misconduct and engaged the help of crisis management expert Melissa Nathan ("Nathan"), her company The Agency Group PR LLC ("TAG"), and others, to ruin Ms. Lively's reputation in retaliation for speaking up. *Id*. ¶¶ 8–9, 83, 89–103.

As part of those efforts, Wayfarer engaged Plaintiffs Jed Wallace ("Wallace") and Street Relations, Inc. ("Street") "about assisting it in social/digital mitigation and remediation regarding Wayfarer Studios[.]" *Id*. ¶ 21. Wallace is the owner and founder of Street, which describes itself as a "crisis mitigation firm primarily helping families and individuals who find themselves unjustly attacked, extorted, doxed, swatted, scammed or needing help navigating their most frightening situations." *Id*. ¶ 19. Street was incorporated in California in 2008 and converted to a Texas corporation on February 6, 2025—after this lawsuit was filed. The address of the California law firm of Bryan Freedman (counsel for Baldoni) is listed as both the "organizer of the Corporation" and as Street's California agent for process. *Id*. ¶ 20.

### B. Ms. Lively Files a Protected CRD Complaint Reporting Sexual Harassment and Retaliation in California

On December 20, 2024, Ms. Lively filed an administrative complaint with the California Civil Rights Department ("CRD") as a prerequisite to initiating a federal lawsuit, consisting of a required intake form (Dkt. 21-1 at 5–7 ("CRD Form")) and an attached complaint in the form of a federal pleading (Dkt. 21-2 ("Attached CRD Complaint")) (collectively, the "CRD Complaint").

The CRD Form identified Ms. Lively as the complainant and named ten respondents, alleging violations of California's Fair Employment and Housing Act ("FEHA") and Title VII of the Civil Rights Act of 1964, including sexual harassment, retaliation, failure to investigate, prevent, and/or remedy harassment, and aiding and abetting harassment and retaliation. Dkt. 21-1

3

at 5–7. The Attached CRD Complaint detailed the on-set harassment (Dkt. 21-2 ¶¶ 26–77) and described the retaliatory campaign launched after production in the summer of 2024, relying heavily on statements from text message communications among the respondents. *Id*. Wallace is referenced throughout portions of the Attached CRD Complaint relating to the retaliatory campaign. *Id*. ¶¶ 18–19, 138–39, 142, 146, 148.

The Attached CRD Complaint describes TAG's August 2, 2024 "Scenario Planning" document, proposing manipulation strategies to "get ahead of" Ms. Lively's grievances if she came forward publicly, including by pushing that she had a "less than favorable reputation," "planting stories about the weaponization of feminism," and misleadingly blaming Ms. Lively for production members' job losses. *Id*. Abel and Nathan exchanged messages stating Baldoni wanted Ms. Lively to be "buried," with Nathan explaining, "you know we can bury anyone [sic]." *Id*. ¶¶ 12–14, 117–99. Nathan later proposed services priced up to $175,000 for "full reddit, full social account take downs" and "full social crisis team" to "engage with audiences in the right way" and "start threads of theories," emphasizing that the work would be "untraceable." *Id*. ¶ 107.

By August 7, 2024, TAG and Plaintiffs were already executing "social combat" strategies, including "proactive fan posting" to counter negative threads and "social manipulation." Id. ¶¶ 122, 132–50. On August 8, 2024, Abel noted a request for Wallace to take "more serious action on the social side" after an online post criticizing Baldoni was circulated. The next day, Wallace reported that "we are crushing it on Reddit," and TAG personnel celebrated having "confused people" with "mixed messaging." *Id*. ¶¶ 132–38. On August 10, 2024, TAG reported that they were starting "to see a shift on social, due largely to [Wallace] and his team's efforts to shift the narrative." *Id*. ¶ 19. TAG and Nathan continued directing negative online content about Baldoni to Wallace and his team for handling and response. *Id*. ¶¶ 147-50.

4

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

**C.      Plaintiffs Initiate Litigation in California Following Publication of the CRD Complaint and a New York Times Article Reporting on Its Contents**

On December 21, 2024, The New York Times published an article titled "'*We Can Bury Anyone': Inside a Hollywood Smear Machine*" ("Article"), reporting on the CRD Complaint. Dkt. 24-2 at 18 n.5. Ten days later, Plaintiffs—along with other respondents named in the CRD Complaint and represented by Freedman—filed suit against The New York Times in California state court, alleging defamation and asserting that the Article falsely accused them of orchestrating a retaliatory PR campaign. Dkt. 24-2, Ex. F ("California Complaint") ¶ 136. The complaint identified Street as a California corporation. Ex. F ¶ 40.

The same day Plaintiffs filed suit in California, Ms. Lively filed her complaint in the Southern District of New York, which was nearly identical in substance to the CRD Complaint and asserted federal and California state law claims against Wayfarer Studios, Baldoni, Heath, Sarowitz, It Ends with Us Movie LLC, Nathan, TAG, and Abel (the "NY Wayfarer Defendants").[3] On January 16, 2025, the NY Wayfarer Defendants—other than TAG—filed a separate action in the New York court asserting defamation claims against Ms. Lively and others based on allegations that the CRD Complaint was "rife with lies and doctored 'evidence.'" *Wayfarer Studios LLC, et al. v. Lively et al.*, No. 1:25-cv-0049 (the "NY Litigation"). On January 31, 2025, the NY Wayfarer Defendants filed an amended complaint in the NY Litigation adding The New York Times as a party.[4] *Id.*, Dkt. 50.

---

[3] Ms. Lively amended her NY complaint on February 18, 2025 to add Plaintiffs as parties and assert claims against them for aiding and abetting harassment and retaliation, infliction of emotional distress, false light invasion of privacy, and conspiracy under California law. Dkt. 24-3, Ex. A.

[4] The New York court dismissed the NY Wayfarer Defendants' claims in their entirety on June 9, 2025. Dkt. 36 at 2; *Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695 (S.D.N.Y. 2025).

**D<small>EFENDANT'S</small> M<small>OTION FOR</small> C<small>OSTS AND</small> A<small>TTORNEY'S</small> F<small>EES</small>**

**D.      Plaintiffs File This Frivolous Defamation Action Against Ms. Lively in Texas**

On February 3, 2025, the parties to the California action, including Plaintiffs, dismissed that case. The very next day, Plaintiffs initiated this action in Texas, asserting a defamation claim and seeking declaratory relief to obtain "issue-preclusive effect" against claims they anticipated Ms. Lively would file in the NY Litigation. Dkt. 1 ¶¶ 17–23. Ms. Lively moved to dismiss the Original Complaint. Rather than respond, Plaintiffs filed the Amended Complaint asserting defamation and defamation per se claims based on Ms. Lively's protected statement in the CRD Complaint and allegedly "identical or similar statements" made in Texas. Plaintiffs alleged defamation based on the CRD Complaint's "overall gist" and two quoted paragraphs describing Wallace's role in the retaliation campaign. Dkt. 21-2 ¶¶ 28–31, 44–50.

**E.      Ms. Lively Moves to Dismiss the Amended Complaint, and the Court Dismisses the Action for Lack of Personal Jurisdiction**

On May 16, 2025, Ms. Lively filed a Motion to Dismiss the Amended Complaint on multiple grounds, including improper venue, lack of personal jurisdiction, and failure to state a claim for defamation. She further argued that the allegedly defamatory statements in the CRD Complaint were protected by the fair report privilege, the litigation privilege, and California Civil Code § 47.1, which protects communications made without malice regarding incidents of sexual assault, harassment, or discrimination. *See* Dkt.24-2.

The Court granted the motion on November 12, 2025, concluding that Plaintiffs failed to establish that Ms. Lively was subject to this Court's personal jurisdiction. Dkt. 42. Although Plaintiffs have appealed from that order, the Court has yet to enter final judgment on a separate document under Rule 58.

6

DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES

**LEGAL STANDARD**

Federal Rule of Civil Procedure 54 provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). "The court may decide issues of liability for fees before receiving submissions on the value of services." Fed. R. Civ. P. 54(d)(2)(C).[5]

**ARGUMENT**

A.    **Ms. Lively is Entitled to an Award of Reasonable Attorneys' Fees and Costs Under Cal. Civ. Code § 47.1(b) for "Successfully Defending" Herself in This Action**

1.    **Section 47.1(b) applies to Ms. Lively's claim for costs and fees.**

Section 47.1 creates a substantive privilege to defamation that applies here because "the award of attorney's fees in a diversity case depends on the law of the state whose rules govern the substantive claims," and here that is California law. *Mut. Concepts, Inc. v. First Nat. Bank of Omaha*, 495 Fed. App'x 514, 517 (5th Cir. 2012) (quoting *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 73 (5th Cir. 1987)).

Federal courts sitting in diversity apply the choice-of-law principles of the forum state. *Cannon Oil & Gas Well Servs., Inc. v. KLX Energy Servs., L.L.C.*, 20 F.4th 184, 188 (5th Cir. 2021). Because Texas has no fee-shifting statute analogous to California's Section 47.1, there is a

---

[5] Rule 54(d) requires that a motion for attorney's fees "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). Because the Court's judgment of dismissal was not subject to any of the exceptions listed in Rule 58(a), it was required to be "set out in a separate document," but was not. Fed. R. Civ. P. 58(a). For such judgments, "judgment is entered . . . when the judgment is entered in the civil docket under Rule 79(a)," which occurred on November 12, 2025, "and the earlier of these events occurs: (A) it is set out in a separate document," which has not occurred, or "(B) 150 days have run from the entry in the civil docket," which occurred on April 13, 2026. Fed. R. Civ. P. 58(c)(2); *see* Fed. Civ. P. 6(a)(1)(C). Judgment was therefore "entered" on April 13, 2026, and the deadline to file a motion for attorney's fees under Rule 54(d)(2)(B)(i) is April 27, 2026. *See* Fed. R. Civ. P. 54(d)(2)(B)(i).

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

conflict between California and Texas law as to Ms. Lively's entitlement to attorney's fees, and therefore the Court must consider which state's law applies. *See Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 723 (5th Cir. 2010); *Pickle v. Universal Cable Holdings, Inc.*, 534 F. Supp. 3d 663, 671 (N.D. Tex. 2021).

Under Texas choice of law principles, the Court must apply the Second Restatement's "most significant relationship" test to determine the applicable law. *Ballard v. Devon Energy Prod. Co., L.P.*, 678 F.3d 360, 365 n.14 (5th Cir. 2012) (quoting *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735 (Tex. 1997)). Specifically, in defamation cases Texas courts apply the factors listed in § 145 of the Second Restatement: "(i) where the injury occurred; (ii) where the tortious conduct occurred; (iii) where the parties reside, are domiciled, are incorporated, and conduct business; and (iv) where the relationship between the parties is centered." *Nix v. Major League Baseball*, 62 F.4th 920, 932 (5th Cir. 2023) (quoting Restatement (Second) of Conflict of Laws § 145).

Those principles weigh heavily in favor of applying California law to Plaintiffs' defamation claim and the accompanying Section 47.1 privilege.

*First*, the conduct causing Plaintiffs' purported injuries took place in California: the basis of Plaintiffs' defamation claim was Ms. Lively's filing of the CRD Complaint in California. Dkt. 24-2, Ex. F ¶ 45. *Second*, at the time of that conduct (and at the time this action was filed), Street was incorporated in California, and Wallace conducted his business through Street, a California corporation. *Id.*[6] Meanwhile, Ms. Lively is (and was) domiciled in New York, not Texas. *Third*, to the extent the parties have a relationship at all, that relationship was "centered" in California

---

[6] Dkt. 1 ¶ 3; Ex. B. Street had been organized in California since 2008 and only *after* this lawsuit was filed changed to Texas.

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

because that is the place Ms. Lively sought relief for the conduct that Plaintiffs had engaged in, through a California corporation. Wallace's sworn declaration in the NY Litigation confirms that for purposes of his work on the Lively matter, he was "doing business and providing" his services to individuals in California and that is where he "considered the impact of" his work to be located. *See* Dkt. 24-2, Ex. M ¶ 28. As in *Nix*, the "only connection to Texas" is that the plaintiff—and here, only *one* of the plaintiffs, Jed Wallace—"was residing in Texas at the time" the allegedly defamatory statement was made. *Nix*, 62 F.4th at 932. But that "does not outweigh all the other factors favoring applying" the law of the state towards which the other § 145 factors point—here, California. *Id.* Further, as in *Nix*—where the plaintiff alleged a "generalized injury that spans the entire country and does not connect to Texas specifically"—Plaintiffs allege an injury based upon the alleged spread of the challenged statements "around the world," without any specific allegations that "connect to Texas specifically" (aside from one of the Plaintiffs' mere residence in Texas, which *Nix* holds is insufficient). *Id.* Accordingly, under Section 145 of the Restatement, and Fifth Circuit precedent, California law must apply to the underlying claims and, in turn, to the award of attorney's fees. *Id.*; *Mut. Concepts, Inc.*, 495 Fed. App'x at 517.

That conclusion is strengthened by looking to the general choice of law principles in Section 6 of the Second Restatement. *See Nix*, 62 F.4th at 932 (citing to Section 6 as a "see also" citation). If "the purposes sought to be achieved by a local statute or common law rule would be furthered by its application to out-of-state facts, this is a weighty reason why such application should be made." Restatement (Second) of Conflict of Laws § 6 cmt. e. California enacted Section 47.1 to clarify and codify existing law, in direct response to repeated attacks upon individuals who report sexual harassment, and to provide a strong remedy to disincentivize retaliatory litigation. Section 47.1 thus provides immunity against claims that seek to hold individuals liable for

9

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

speaking out about their experiences with sexual harassment and related claims, including retaliation and aiding and abetting—whether in a legal proceeding, to the press, or otherwise. *See* Cal. Civ. Code § 47.1. Those purposes are clearly furthered by applying Section 47.1 to this case, which sought to hold Ms. Lively liable for doing just that. This is an additional, "weighty reason" why Section 47.1 should apply in this case.  Restatement (Second) of Conflict of Laws § 6 cmt. e.

        **2.**        **Ms. Lively's allegedly defamatory statements are privileged under Section 47.1.**

        **a.**        **Ms. Lively's allegedly defamatory statements are "communications" protected by Section 47.1.**

The challenged statements are privileged under Section 47.1.  A "communication" is privileged under Section 47.1 when it is (1) "regarding an incident of sexual assault, harassment, or discrimination"; (2) made "without malice"; and (3) made by "an individual that has, or at any time had, a reasonable basis to file a complaint of sexual assault, harassment, or discrimination" whether the complaint is filed or not. Cal. Civ. Code § 47.1(a), (c). Each of those elements is easily satisfied here.

Under Section 47.1, a covered communication is defined as any "factual information related to an incident of sexual assault, harassment, or discrimination experienced by the individual making the communication," including: (1) an act of sexual harassment by a director or producer, under Civil Code Section 51.9, and (2) "[a]n act of workplace harassment or discrimination, failure to prevent an act of workplace harassment or discrimination, aiding, abetting, inciting, compelling, or coercing an act of workplace harassment or discrimination, or an act of retaliation against a person for reporting or opposing workplace harassment or discrimination. . . . " *Id*. §§ 47.1(d)(2)-(3). Plaintiffs' allegations against Ms. Lively indisputably rest on such "communications." In fact, each and every statement that Plaintiffs identified as defamatory relates to incidents of sexual harassment or retaliation experienced by Ms. Lively. *See* Dkt 21, ¶¶ 3, 6, 12, 13, 24, 25, 26, 28,

29, 31, 32, 33, 45, 51, 67, 71. This action was accordingly a "defamation action brought against [Ms. Lively] for making a communication that is privileged under" Section 47.1; *see Kapellas v. Kofman*, 1 Cal. 3d 20, 28 (1969) (Section 47's statutory privileges apply, and the malice requirement is triggered, where the communication's privileged status is "disclose[d]" by the complaint's allegations).

<strong>b.      Ms. Lively's allegedly defamatory statements were made without malice.</strong>

The challenged statements were also made without malice. Under California law, once a statement is shown to fall within a privilege—which these "communications" do, *supra* at p. 10— it is the *plaintiff's* burden to allege and prove that the statements were made with "malice," and are therefore "unprivileged," which is an element of the underlying defamation claim. *Lundquist v. Reusser*, 7 Cal. 4th 1193, 1203-08 (1994); *see id.* at 1202 ("[O]nce it is established that the statement was made upon . . . a privileged occasion, the plaintiff may recover damages for defamation only if the plaintiff successfully meets the burden of proving that the statement was made with malice."); *accord Taus v. Loftus*, 40 Cal. 4th 683, 721 (2007); *Dignity Health v. Mounts*, 105 Cal. App. 5th 113, 121 (2024) ("The party asserting this privilege bears the burden to show that the statement was made on an occasion that falls within the statute. At that point, the opposing party has the burden to prove that the statement was made with malice.").[7]

---

[7] These cases concern related qualified privileges codified in subsections of Section 47, rather than Section 47.1, but must apply to Section 47.1 as well, which was enacted to add to Section 47's codification of qualified privileges and specifically provides: "A communication made by an individual, without malice, regarding an incident of sexual assault, harassment, or discrimination is privileged **under Section 47**." Cal. Civ. Code § 47.1(a) (emphasis added); *see Lively v. Wayfarer LLC*, No. 24-cv-10049 (S.D.N.Y. Mar. 20, 2025), ECF No. 146-1, at 26 (legislative history explaining: "The bill *expands the privileges already encompassed in Section 47* of the Civil Code to include communications made by an individual who has experienced an incident of sexual assault, harassment, or discrimination, regardless of whether or not they have filed any formal complaint regarding the same") (emphasis added).

11

<span style="font-variant:small-caps;"><strong>Defendant's Motion for Costs and Attorney's Fees</strong></span>

Plaintiffs have not carried their burden to demonstrate "malice." Because Plaintiffs could not even establish personal jurisdiction over Ms. Lively, it necessarily follows that they failed to carry their burden to demonstrate that the challenged statements were made with "malice." For purposes of the Section 47.1 privilege analysis, therefore, Ms. Lively's statements were made "without malice," and therefore covered by the privilege.[8]

In any event, Plaintiffs' own pleading confirms that Ms. Lively's allegedly defamatory statements were made "without malice." Although neither Section 47 nor Section 47.1 define "malice," courts applying Section 47 have relied upon California Civil Code section 48a's definition of "actual malice" as the governing standard. *See Taus*, 40 Cal. 4th at 721 (citing Cal. Civ. Code § 48a(d)(4)); *accord Sanbourn v. Chronicle Publ'g Co.*, 18 Cal. 3d 406, 412-14 (1976). Section 48a defines "actual malice" as a "state of mind arising from hatred or ill will toward the plaintiff" and clarifies that "a good faith belief on the part of the defendant in the truth of the libelous publication . . . at the time it is published . . . shall not constitute actual malice." Cal. Civ. Code § 48a(d)(4) (emphasis added).

Here, the CRD Complaint—attached by Plaintiffs themselves to the Amended Complaint—illustrates that at the time of the challenged conduct, Ms. Lively was in possession of documentary evidence implicating Plaintiffs in a retaliation campaign targeted at her. For example,

---

[8] This conclusion, which is inescapable as a logical matter, is also supported by the purpose of Section 47.1 to deter retaliatory litigation. *See Lively v. Wayfarer LLC*, No. 24-cv-10049 (S.D.N.Y. Mar. 20, 2025), ECF No. 146-1, at 27-29 (legislative history explaining that a potential plaintiff "who would otherwise opt to silence survivors by targeting them with litigation may be further dissuaded from filing a defamation claim due to the significant potential damages and penalties provided by this bill"). By imposing the fee-shifting and treble damages remedies on plaintiffs who cannot even establish personal jurisdiction over their litigation targets, Section 47.1 also deters the retaliatory litigation strategy employed by some plaintiffs who file away from the defendant's home forum and/or away from where the events complained of took place. Under Section 47.1's policy purposes, plaintiffs, not defendants who have engaged in privileged conduct, should bear the financial risk of litigating in a forum where personal jurisdiction is questionable.

12

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

Ms. Lively cited texts reporting that "[w]e've also started to see a shift on social, ***due largely to [Wallace] and his team's efforts to shift the narrative towards shining a spotlight on Blake and Ryan***." Dkt. 21-2, ¶ 19 (emphasis added). In another instance, one individual responded to a negative story about Baldoni stating that "we've flagged to [Wallace] and his team for ***more serious action on the social side***." ¶ 146 (emphasis added).  Plaintiffs do not allege that these texts are false, fabricated, or inaccurately attributed to them. To the contrary, they admit that they were working for TAG at the time on "social/digital mitigation." Dkt. 21, ¶¶ 22-23. Ms. Lively's reliance on those text messages, which were not only credible but *in fact* implicate Plaintiffs in the retaliatory campaign against her, demonstrates that she had a good faith belief in the truth of her allegations. The SDNY Court that reviewed a similar allegation of actual malice against the New York Times rejected it based on precisely these documents. *See Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 779 (S.D.N.Y. 2025) (holding, based on these documents, that "[t]he Wayfarer Parties' statements regarding sending negative content to 'digital' and Wallace's attempts to 'shin[e] a spotlight on Blake and Ryan' are inexplicable unless the Wayfarer Parties were spreading negative content about Lively, and this impression is reinforced by messages from Baldoni, Abel, and Nathan suggesting this strategy. It is fair to presume that the Wayfarer Parties did what they said that they planned to do.").

Nor do Plaintiffs even deny that Ms. Lively reported harassment in good faith, rather than targeting Plaintiffs out of ill will or hatred. Instead, the Amended Complaint attempts to split hairs by arguing Plaintiffs could not have participated in any harassment or retaliation because they "were never on the set of the Film or otherwise involved in its production." *Id*. ¶¶ 3, 71, 75. That argument ignores Ms. Lively's specific factual allegations —supported by documentary evidence—showing Plaintiffs participated in a retaliatory smear campaign *after* filming

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

concluded. That Plaintiffs were not present during filming or part of Wayfarer's production is irrelevant, as Ms. Lively has never leveled any accusation that Plaintiffs had a connection to the film's production.

Weaker still, Plaintiffs suggest that Ms. Lively's efforts to seek discovery from Wallace in Texas demonstrate that Ms. Lively lacked a good-faith basis to make the challenged statements. Am. Compl. ¶ 10. That position is absurd. If anything, Ms. Lively's attempt to obtain more discovery to further develop the substantial facts supported by documentary evidence underscores the absence of malice, not the presence of it. Indeed, Plaintiffs' position would turn the entire American legal system on its head. Plaintiffs' assertion that Ms. Lively "purposely turned away" from discovery of Wallace is also meritless. Am. Compl. ¶ 10.  As explained at length in Ms. Lively's Motion to Dismiss the Amended Complaint, Ms. Lively was never able to serve Wallace and withdrew the Rule 202 Petition in Texas only after Wallace repeatedly evaded service, opting instead to add Plaintiffs to the NY Litigation. Dkt. 26 at 8-10; Dkt. 26-9 (process server affidavit); Dkt. 26-10 (process server affidavit); Dkt. 26-13 (nonsuit).

At most, the Amended Complaint alleges that Ms. Lively used "ambiguous group pleading" that "left a reasonable reader with the impression that all causes of actions" were attributable to all defendants, including Plaintiffs. Dkt. 21, ¶ 28. Even if accepted as true, "ambiguous pleading" is a far cry from actual malice. *Supra* at pp. 11-12. The Amended Complaint offers no plausible basis to infer that Ms. Lively made the challenged statements with a "state of mind arising from hatred or ill will toward the plaintiff" rather than with "a good faith belief" in their truth. Cal. Civ. Code § 48a(d)(4).

### c.    Ms. Lively had a "reasonable basis" to file her "complaints."

Finally, to be protected by Section 47.1, the speaker need only have "or at any time had, a reasonable basis to file a complaint of sexual assault, harassment, or discrimination, ***whether the***

14

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

*complaint is, or was, filed or not*." Cal. Civ. Code § 47.1(c) (emphasis added). In other words, the privilege under Section 47.1 attaches regardless of whether a complaint is ever filed and no matter to whom the communication is published. As the California Legislature explained: "The protections . . . would apply to individuals who, after relaying any factual statement, whether in the form of a formal complaint or a statement outside a formal proceeding such as to a media outlet, [are] sued for defamation." Dkt. 26-17, Ex. O-1, at pp. 29, 64, 162.

It is self-evident that Ms. Lively had a more than "reasonable basis" to report her workplace concerns during production and to file her complaints both with the CRD and the NY Litigation, and the Amended Complaint provides no plausible basis to conclude otherwise. As set forth above, Ms. Lively's complaints were grounded in detailed factual allegations, contemporaneous documentary evidence, and third-party communications reflecting a coordinated retaliation campaign following her reports of sexual harassment. *Supra* at pp. 12-13. Nothing in the Amended Complaint plausibly suggests that Ms. Lively fabricated her allegations, acted out of animus, or lacked a reasonable basis to come forward. To the contrary, the Amended Complaint confirms that Ms. Lively invoked formal legal processes and pursued discovery consistent with her obligations as a complainant and litigant. That conduct falls squarely within the core protections Section 47.1 was enacted to provide.

### 3.    Ms. Lively Successfully Defended Herself Against Plaintiffs' Claims.

A "prevailing defendant in any defamation action brought against that defendant for making a communication that is privileged" under Section 47.1 is entitled to "their reasonable attorney's fees and costs for *successfully defending themselves in the litigation*, plus treble damages for any harm caused to them by the defamation action against them, in addition to punitive damages available under Section 3294 or any other relief otherwise permitted by law." *Id*. § 47.1(b) (emphasis added) This case is exactly the kind of retaliatory defamation action

15

<u>DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES</u>

Section 47.1 was enacted to deter—and its fee-shifting provision applies here. Ms. Lively was the "prevailing defendant" in Plaintiffs' defamation action under Section 47.1(b) because she "successfully defend[ed] herself in the litigation." Cal. Civ. Code § 47.1(b); *see* Dkt. 42 (granting Ms. Lively's motion to dismiss the Amended Complaint in its entirety).

Although no court has yet interpreted Section 47.1's fee-shifting provision, the California Supreme Court has held in the analogous Anti-SLAPP context that a defendant who prevails on jurisdictional or other non-merits grounds is nonetheless a prevailing party entitled to fees. In *Barry v. State Bar of California*, 2 Cal. 5th 318 (2017), the plaintiff argued that a defendant cannot "prevail" under Code of Civil Procedure section 425.16 unless it obtained a favorable judgment on the merits. The Court rejected that argument outright, holding that "[a] defendant that successfully moves to strike a plaintiff's cause of action, whether on merits or nonmerits grounds, has 'prevailed' on the motion, and therefore is entitled to attorney's fees and costs." *Id.* at 327–28. The Court emphasized that this interpretation serves the core purpose of fee shifting: compensating defendants for the burden of defending against litigation designed to chill protected conduct. That reasoning applies with equal force here.

Federal courts interpreting similar fee-shifting statutes agree. A "favorable ruling on the merits is not a necessary predicate" to prevailing-party status. *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 421 (2016). Courts routinely award fees where defendants obtain dismissal on jurisdictional or other threshold grounds. *See, e.g.*, *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 708–11 (9th Cir. 2017); *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, No. 18CV967-GPC(MSB), 2023 WL 7597630, at *6 (S.D. Cal. Nov. 14, 2023).

Finally, Section 47.1's text independently compels the same result. It provides that "[a]

16

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

prevailing defendant in any defamation action brought against that defendant for making a communication that is privileged under this section shall be entitled to their reasonable attorney's fees and costs for successfully defending themselves in the litigation." Cal. Civ. Code § 47.1(b) (emphasis added). The statute only requires a successful defense. Interpreting it to require anything more (like a successful *merits* defense) would gut Section 47.1 by allowing plaintiffs to file retaliatory defamation suits, force defendants to incur substantial legal expense, and then avoid fee liability simply because the case was dismissed at the jurisdictional threshold. Perversely, such an interpretation would *reward* plaintiffs who choose a *more* burdensome forum (i.e., one where the defendant is not at home or has not established sufficient case-related contacts) in which to file their retaliatory litigation. California law does not permit that result and neither should this Court. Ms. Lively is entitled to recover her reasonable attorney's fees and costs under Section 47.1(b).

## RULE 54(d)(2)(B)(iii) STATEMENT

Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(iii), Ms. Lively estimates the amount of attorney's fees sought in connection with the dismissal motion and related filings at approximately $800,000.00, not including the fees incurred in connection with preparing and litigating this motion, to which Ms. Lively is also entitled. *See, e.g.*, *Bruckman v. Parliament Escrow Corp.*, 190 Cal. App. 3d 1051, 1062 (Ct. App. 1987) ("[W]hen an amount of attorney's fees is statutorily authorized, the reasonable expenses of preparing the application for fees should be included in the award.").[9]

---

[9] Ms. Lively respectfully submits that the Court should follow Rule 54(d)(2)(C)'s procedure which provides that the Court "may decide issues of liability for fees before receiving submissions on the value of services." Fed. R. Civ. P. 54(d)(2)(C). Ordinarily courts in this District require that an affidavit as to the value of services be submitted with a fee application. Local Rule CV-54(b)(2). However, "[a]ny judge of this court may waive any requirement of these rules regarding the administration of that judge's docket." Local Rule CV-1(e). Ms. Lively understands that Plaintiffs intend to dispute her legal entitlement to fees in this action. *Supra* at p.1. It would serve judicial

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

## CONCLUSION

For the foregoing reasons, the Court should grant Ms. Lively's motion for attorneys' fees and costs under Section 47.1 and set a schedule for determining any disputed factual issues relating to the fee awards pursuant to Rule 54(d)(2)(C), including the amount of costs and fees to which Ms. Lively is entitled.

Respectfully submitted,

 /s/ *Laura Lee Prather*
Laura Lee Prather
Texas Bar No. 16234200
laura.prather@haynesboone.com
Catherine L. Robb
Texas Bar No. 24007924
catherine.robb@haynesboone.com
Michael J. Lambert
Texas Bar No. 24128020
michael.lambert@haynesboone.com
Reid Pillifant
Texas Bar No. 24126157
reid.pillifant@haynesboone.com

**HAYNES AND BOONE, LLP**
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

Michael Gottlieb (*pro hac vice* forthcoming)
2029 Century Park East
Los Angeles, CA 90067
(310) 855-3111
mgottlieb@willkie.com
Kristin E. Bender (*pro hac vice* forthcoming)
1875 K. Street NW
Washington, DC 20006
(202) 303-1000
kbender@willkie.com

---

and party economy to follow Rule 54(d)(2)(C)'s procedure and defer submission of affidavits until after that threshold legal dispute is resolved.

18

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

Aaron E. Nathan (*pro hac vice* forthcoming)
787 Seventh Avenue
New York, NY 10019
(212) 782-8904
anathan@willkie.com

**WILLKIE FARR & GALLAGHER LLP**

**ATTORNEYS FOR DEFENDANT
BLAKE LIVELY**

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the 27th day of April 2026, a true and correct copy of

the above document was served via the CM/ECF system to all counsel of record.

*/s/ Laura Lee Prather*
Laura Lee Prather

**DEFENDANT'S MOTION FOR COSTS AND ATTORNEY'S FEES**