UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JED WALLACE, | § | |
| STREET RELATIONS, INC. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:25-cv-163 |
| | § | |
| BLAKE LIVELY, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR COSTS AND ATTORNEYS' FEES**

Plaintiffs Jed Wallace and Street Relations, Inc. submit this response to Defendant Blake Lively's motion for costs and attorneys' fees ("Motion").

## I.    INTRODUCTION

Unbelievably, Lively is, once again, back for relief from a Texas court. This time, she twists the Court's determination that it lacked personal jurisdiction over the claims against her as a decision on the merits of one of her affirmative defenses. This, she says, entitles her to a staggering $800,000 in fees (or more!), plus court costs, under a wishful reading of a strictly procedural California statute that does not apply in federal court, but even if it did, would not give her the substantive relief she wants.[1]

---

[1] As explained below, Lively is not entitled to any fees. But Plaintiffs reserve the right to challenge on some future date whether this stunning amount was reasonable and necessary otherwise.

Lively's request to make California procedural law[2] apply here is part of an ambitious plan to have Plaintiffs pay her for a lawsuit prompted by her publication to the national media that Plaintiffs, among other things, sexually harassed and retaliated against her (though they've never met her or been in the same room with her) and breached a contract with her (though they've never had a contract with her). As we show again, Lively had no reasonable basis to make these allegations about Plaintiffs to the California Civil Rights Division, the media, or anywhere else. And even if she did, the Fifth Circuit rejects such procedural relief in federal court, *Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019), *as revised* (Aug. 29, 2019) (invalidating the applicability of the Texas Citizens Participation Act in federal court because "state procedural law yields to the applicable Federal Rules"), as does a unanimous United States Supreme Court in *Berk v. Choy*, 146 S. Ct. 546 (2026).

To get to her desired result, Lively works backwards from the answer she wants, performing a surface-level conflict-of-law analysis that ignores where the injuries to Plaintiffs occurred (Texas) and the interests of her home state (New York) before concluding that California law applies. Lively's reason is as obvious as it is self-serving. Neither Texas nor New York have the same procedural statutory scheme that would allow her to recover the hundreds of thousands of dollars she seeks for filing a motion to dismiss.

But even if California law applies, Lively is not a prevailing defendant. The Court has not determined, as Lively says, that Plaintiffs' claims were "meritless"

---

[2] *See infra* Section III.A.

(they were not).[3] Instead, the Court told us that it did not reach the merits of any defense. Nor could it. At the pleading stage, a court is "limited" to making findings of fact "related to jurisdictional matters on a motion to dismiss." *Bickham v. Miller*, 584 F.2d 736, 737 (5th Cir. 1978); *see also Bar Grp., LLC v. Bus. Intelligence Advisors, Inc.*, 215 F. Supp. 3d 524, 534 (S.D. Tex. 2017) ("A court must find that it has personal jurisdiction over that defendant before it makes any decision on the merits."). Even then, it only resolves facts in favor of the parties that invoked the Court's jurisdiction (Plaintiffs), not the one seeking dismissal (Lively). *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

Lively asks the Court to conclude that her statements were privileged under 47.1, while apparently asking the Court to disregard Plaintiffs' well-pleaded allegations of malice that defeat that privilege. *See* Cal. Civ. Code. § 47.1(a) (requiring that a communication can only be privileged if it is made "without malice"); (Dkt. 21 ¶¶ 40–44, 69–71 (pleading in great detail Lively's knowledge that the statements she made about Plaintiffs were false).) She cannot do this at the motion to dismiss stage. This is true under Fifth Circuit law regarding motions to dismiss in federal court, and it is true under California law on motions to dismiss in California reviewing Section 47.1 (and Section 47, which Lively says controls the day). Lively put us in this procedural posture. She cannot now avoid the effects of that decision, much less seek to benefit from it through a novel reading of the law.

In any event, the case is not over, whether by Plaintiffs' appeal pending in the Fifth Circuit or by Plaintiffs' right to replead the same defamation claims against

---

[3] (Dkt. 45 at 5.) All references are to the ECF page number.

Lively elsewhere. (*See* Dkt. 42 at 21 (concluding that Plaintiffs' claims were dismissed *without prejudice*).) That means Lively hardly "successfully defended herself" such that she is entitled to nearly a million dollars in fees and court costs.[4]

The great irony of Lively's Motion is that it forces Plaintiffs to spend substantial time and resources responding to point after point made in her Motion, despite the Motion's substantial flaws from end to end. In the process, Lively turns the true goal of Section 47.1, a foreign statute with noble aims, on its head while refusing to acknowledge the serious consequences of her defamatory conduct.

The Motion should be denied.

## II.    FACTS AND PROCEDURAL HISTORY[5]

Plaintiffs sued Lively for defaming them when she published to the press an employment complaint (the "CRD Complaint") and an attached draft legal complaint (the "Draft Complaint") she filed with the California Civil Rights Division. The CRD Complaint named the Wallace Parties as "Respondents" and alleged they engaged in conduct including "sexual harassment; retaliation; failure to investigate, prevent, and/or remedy harassment; and aiding and abetting harassment and retaliation." (Dkt. 21-1 at 5–6.) The Draft Complaint identified the Wallace Parties as "Defendants" and alleged claims ranging from sexual harassment to breach of contract. (Dkt. 21 ¶ 3.)

The CRD and Draft Complaints were not available online or otherwise available to the public when filed absent a written request for public information. (*Id.*

---

[4] (*Id.* at 19.)

[5] Plaintiffs incorporate by reference the allegations in the First Amended Complaint for completeness but focus on the relevant facts and procedural history below. Fed. R. Civ. P. 10(c).

¶ 4.) Yet, a reporter sent Wallace an "urgent" email the same day for comment, with the reporter stating she had "learned that Ms. Lively filed a legal complaint against you . . . alleging sexual harassment, retaliation . . . among other claims." (*Id.*) By early the next morning, the Draft Complaint was posted on the newspaper's website under the banner "READ THE COMPLAINT." (*Id.* ¶¶ 5–7.)

Ten days later, Lively filed an actual lawsuit in the Southern District of New York. Notably, the document filed in federal court—unlike the CRD and Draft Complaints—did not name Wallace or Street as Defendants. *(Id.* ¶ 7.)

Three weeks after Lively filed suit in New York—and over a month after Lively accused Plaintiffs of sexually harassing her (among other things) in her publications to the media—Lively filed a Rule 202 petition against Wallace in Hays County, Texas (the "Texas Lawsuit"). *(Id.* ¶¶ 8–10; Dkt. 42 at 11–13; Dkt. 26-15 at 36–50.) The Texas Lawsuit conceded that Lively had no facts to support her publications about Plaintiffs; she needed to "investigate" the "scope" of Mr. Wallace's conduct, and she lacked "[t]he critical evidence relevant to Petitioner's potential claims, the specifics of the conduct by Mr. Wallace." (Dkt. 26-15 at 43, 47.)

Plaintiffs then brought this action for defamation and defamation per se to hold Lively accountable for publicizing that Plaintiffs had sexually harassed her (among other things), though they had never met. (*See generally* Dkt. 21.) For example, Lively knew she had never met Plaintiffs, meaning she knew they could not possibly have sexually harassed her, despite what she said in her CRD and Draft Complaints. (*Id.* ¶¶ 71, 75; *see also* Dkt. 26-15 at 32.) She also knew that she did not have a contract with Plaintiffs, meaning she knew they could not breach some non-

existent contract, either. (Dkt. 21 ¶¶ 71, 75.) Plaintiffs alleged in great detail this absence of knowledge, and alleged that Lively committed her defamatory acts with malice. (*See, e.g., id.* ¶¶ 40–44, 69–71.)

Lively later dismissed her Texas Lawsuit and added Wallace and Street to her litigation in New York.[6] (*Id.* ¶¶ 12–13.) Plaintiffs then amended this action to add factual bases for defamation based on Lively's actions in Texas. (*Id.* ¶¶ 14–15.)

Lively moved to dismiss, challenging venue, personal jurisdiction, and the sufficiency of Plaintiffs' pleadings under Rule 12(b)(6). (*See generally* Dkt. 26.) The Court explained that it "must first address jurisdictional matters, and if jurisdiction is lacking the court *will not* reach the merits." (Dkt. 42 at 10 (emphasis added).) The Court ultimately determined that Plaintiffs' pleadings did not "establish that Defendant is subject to this Court's personal jurisdiction" and confirmed that it "need not address Defendant's other bases for dismissal." (*Id.* at 21.) The Court dismissed Plaintiffs' claims against Lively without prejudice to refile. (*Id.*) Plaintiffs appealed that order to the Fifth Circuit on December 12, 2025. (Dkt. 43.)

### III.   ARGUMENT AND AUTHORITIES

### A.   This California Procedural Law Is Inapplicable in Federal Court.

California Civil Code Section 47.1(a) is procedural, not substantive, and inapplicable here. In diversity actions like this one, state substantive law applies,

---

[6] Plaintiffs were dismissed from Lively's New York litigation (twice!) and have been non-parties to that lawsuit since November 5, 2025. (*Lively v. Wayfarer Studios LLC, et al.*, No. 1:24-cv-10049-LJL (S.D.N.Y. Nov. 5, 2025) (Dkt. 912).) The remaining parties to that case announced a settlement on May 4, 2026. *See* Nicki Brown, *Blake Lively and Justin Baldoni's Wayfarer Reach Settlement, Two Weeks Ahead of Trial Start*, CNN (May 5, 2026, 16:54 ET), https://www.cnn.com/2026/05/04/entertainment/blake-lively-justin-baldoni-settlement.

Plaintiffs' Response to Defendant's Motion for
Costs and Attorneys' Fees

"but state procedural law yields to the applicable Federal Rules." *Klocke*, 936 F.3d at 244. Considering a state anti-SLAPP statute that included mandatory fee-shifting to the prevailing defendant, the Fifth Circuit determined that the statute "does not apply to diversity cases in federal court." *Id.* at 242, 244. Lively herself analogizes California Civil Code Section 47.1(a) to California's anti-SLAPP laws. (*See* Dkt. 45 at 16.) Taking her at her word, Section 47.1(a) is a similar procedural state law that is inapplicable here. The Motion should be denied for this threshold reason alone.

Similarly, the Supreme Court recently decided *Berk v. Choy*, which addressed a state statute about pleading requirements for medical malpractice suits. 146 S. Ct. at 553–54. Because that procedural statute conflicted with the pleading requirements of Rule 8, the Supreme Court held that the state procedural law must yield to the federal rules. *Id.* at 554. So too here. Lively's request to determine her privilege defense under California Civil Code Section 47.1(a) conflicts with the plain meaning of Rule 12(b)(2), which limits courts to making jurisdictional findings of fact in deciding motions to dismiss for lack of personal jurisdiction. *See Bickham*, 584 F.2d at 737. Thus, the California procedural law must yield. The Motion should be denied.

## B.    Even if this California Law Were Substantive, Texas Law Applies.

Even if Lively were able to convince the Court that this California fee-shifting statute is substantive, California law still would not apply. Texas substantive law applies to Lively's request for attorneys' fees and costs. Lively is correct that a federal court sitting in diversity applies the choice-of-law rules of the forum state. (Dkt. 45 at 11); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 491 (1941). And as she further acknowledges, Texas follows the "most significant

relationship" test of the Restatement (Second) of Conflict of Laws (the "2d Restatement"), which considers factors relevant to the facts of the suit, as well as policies underlying application of the law of potentially interested states. (Dkt. 45 at 12); *see also Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 696 (Tex. 2002).

Lively relies on a California fee-shifting statute awarding fees to a defendant who prevails in a defamation action following a determination that the defendant's statements were privileged under California law, not available under Texas law. (Dkt. 45 at 5–6, 11–12.) Lively ignores the laws of the State of New York, where she is domiciled, but New York also does not have a similar fee-shifting statute. (*See* Dkt 45 at 8 (acknowledging Lively's New York domicile)); *see also Lively v. Wayfarer Studios LLC* (*Lively I*), 786 F. Supp. 3d 695, 734 (S.D.N.Y. 2025) (recognizing the California privilege on which the fee-shifting statute is based "is not available under New York law"). So, there is no conflict between the laws of Texas and New York, but both states' laws conflict with the laws of California.

As here, when the laws of potentially interested states conflict, Texas choice-of-law principles require courts consider certain factors, including relevant policies of the forum state and other interested states, "certainty, predictability, and uniformity of result," and the court's ease in determining and applying the law. *Gutierrez v. Collins*, 583 S.W.2d 312, 318–19 (Tex. 1979) (quoting 2d Restatement § 6). For tort claims, courts consider these factors in connection with the parties' relevant contacts, including where (1) the injury occurred, (2) the tortious conduct occurred, (3) the parties are at home, and (4) the relationship centers. *Id.* at 319 (citing 2d Restatement § 145).

Lively barely addresses these contacts and policies before reaching the answer she wants: that California law applies. (*See* Dkt. 45 at 8–9.) But the contacts and policies weigh heavily toward the application of either Texas or New York law, which are not in conflict.

**Where the Injury Occurred.** The greatest injuries to Wallace and Street occurred in Texas, the state where both are at home. *Cf. Stabler v. N.Y. Times, Co.*, 569 F. Supp. 1131, 1136 (S.D. Tex. 1983) (refusing a motion to transfer in part because the court found it "only reasonable" that the plaintiff file his defamation action in his home state "where he allegedly has suffered the greatest injury by his loss of reputation"). Wallace is a Texas domiciliary. (Dkt. 21 ¶ 19.). Street is a Texas corporation (formerly a California corporation), headquartered in Texas since long before the complained-of statements in this case. (*Id.* ¶ 20.) Lively contends that this contact points toward California because Street was once a California corporation, but ignores Wallace's domicile in Texas and Street's home in Texas, where it had its headquarters at all relevant times (and still does). (*See* Dkt. 45 at 12.)

Texas has " 'an overriding state interest' in protecting (state) residents from malicious libels." *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 271 (1974) (quoting *Linn v. United Plant Guard Workers of Am.*, 383 U.S. 53, 61 (1966)).[7] This interest weighs toward Texas law.

---

[7] *See also Metis Int'l, L.L.C. v. Ace INA Holdings, Inc.*, 2005 WL 1072587, at *5 (W.D. Tex. May 6, 2005) ("Plaintiffs are Texas residents, and Texas has an interest in protecting its businesses and business owners."); *Alliantgrp., L.P. v. Feingold*, No. CIV.A. H-12-1429, 2012 WL 4485730 (S.D. Tex. Sept. 26, 2012) ("Texas does have an interest in protecting its citizens from defamation, and in protecting its citizens from being targeted as the audience for defamatory statements about Texas-based businesses. The fact that Feingold published his allegedly defamatory statements by using a computer in Massachusetts does not diminish that interest.").

**Where the Tortious Conduct Occurred.** Here, Lively miscasts the underlying record entirely, claiming that "the basis of Plaintiffs' defamation claim was Ms. Lively's filing of the CRD Complaint in California." (Dkt. 45 at 12.) But what Plaintiffs complain about is Lively's *publication* of the CRD Complaint to news media in New York and elsewhere, including in particular (as Lively's Motion recognizes) *The New York Times*. (*See, e.g.*, Dkt. 21 ¶¶ 3–6, 36–39, 67; Dkt. 45 at 9.) Plaintiffs also complain about Lively's actions in Austin, Texas and Waco, Texas. (Dkt. 21 ¶¶ 14–15.) And because Lively is domiciled in New York, much of her tortious conduct likely originated from there, not California. (*See* Dkt. 45 at 11.)

Both Texas and New York have strong interests in regulating conduct within their borders. *E.g.*, *L.K. Station Grp., LLC v. Quantek Media, LLC*, 879 N.Y.S.2d 112, 117 (App. Div. 2009) ("New York has a strong interest in regulating conduct occurring in its borders . . . ."). This weighs heavily toward Texas or New York law.

**Where the Parties Are at Home.** Lively is at home in New York. (Dkt. 45 at 11.) Wallace is at home in Texas. (Dkt. 21 ¶ 19.) Street is at home in Texas *and* (before it reincorporated in Texas) was also previously at home in California. (Dkt. 21 ¶ 20.) This factor weighs toward Texas or New York law.

**Where the Relationship Centers.** The parties do not have a "relationship." Wallace never met Lively (he still has not), certainly had never sexually harassed her, and was never on the set of the film where Lively claimed the alleged harassment occurred. (*See* Dkt. 21 ¶¶ 3, 75.) Lively does not appear to dispute this. (*Cf.* Dkt. 45 at 11 ("to the extent the parties have a relationship at all").) Instead, Lively attempts to create a "relationship" that centers in California because that's where the CRD

Complaint was filed. But again, Plaintiffs' complaint is not about the filing of the CRD Complaint—it is about Lively's subsequent efforts to *publicize* the CRD Complaint to news media, particularly *The New York Times*, and the resulting harm to Plaintiffs' reputations in Texas. Because there is no "relationship" between the parties, this contact is neutral, or at best points to New York (where Lively is domiciled) or Texas (where Plaintiffs are at home), neither of which conflict.

**Texas Law Applies.** No factor weighs toward the application of California law. At least three, and potentially all four, contacts and relevant state policies weigh toward the application of either Texas or New York law. Further, applying Texas or New York law (which are not in conflict, and which are the states where the parties are at home) advances the principle of providing "certainty, predictability, and uniformity of result." *Gutierrez*, 583 S.W.2d at 318–19. And it will be easier for the Court to determine and apply Texas or New York law, particularly because the California law Lively relies on has not yet been interpreted by a published decision in either state or federal court. *See id.*

Because Texas law and New York law are not in conflict on this issue, the law of the forum state, Texas, applies. *See Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 285 n.2 (5th Cir. 2009) ("When there is no conflict, no conflict-of-law analysis is necessary, and the forum law applies.").

Lively's fallback reliance on "the general choice of law principles in Section 6" is unfounded. (Dkt. 45 at 13–14.) These principles are not considered in a vacuum but through the relevant contacts, as here under Section 145. *See Guiterrez*, 583 S.W.2d at 318–19. Whatever interest California may have in "provid[ing] a strong

remedy to disincentivize retaliatory litigation" hardly applies to litigation *in* Texas *by* Texas plaintiffs *against* a New York defendant, the basis of whose complained-of conduct is the publication of defamatory allegations to New York media. (Dkt. 45 at 9.) Nor could California's general interest outweigh the strong interest of Texas in protecting its residents from defamation, or New York in regulating the conduct of its citizens. Both states' interests far outweigh any California interest.[8] And since Texas and New York are not in conflict, Texas law applies.

## C.   Lively Is Not Entitled to Attorneys' Fees and Costs Under Texas Law.

Texas follows the American Rule on damages, and "attorney's fees are not recoverable unless specifically provided for by statute." *Hawbecker v. Hall*, 276 F. Supp. 3d 681, 688 (W.D. Tex. 2017). Lively agrees that there is no such fee-shifting law that would apply. (*See* Dkt. 45 at 11.) Because Texas law applies, and there is no provision shifting attorneys' fees and costs to Lively under Texas law, Lively is not entitled to her attorneys' fees and costs.

## D.   Even if California Law Applied, Lively Cannot Obtain Attorneys' Fees and Costs Because of the Procedural Posture She Created.

But even assuming now that Lively convinces the Court that the fee-shifting statute is substantive and California law applies, Lively does not qualify for fee-shifting because there has been no determination that her communications were privileged. To overcome this, Lively again asks the Court to make a finding it

---

[8] Even California recognizes that "'the place of the wrong' has the predominant interest in regulating the conduct," which is "the state where the last event necessary to make the actor liable occurred." *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1067–68 (S.D. Cal. 2017). Here, publication to news media in New York was the last event necessary to make Lively liable for defamation. So, even California would recognize New York's much stronger interest in regulating Lively's conduct. And New York law is not in conflict with Texas law.

declined to make when granting Lively's motion to dismiss: that her communications were privileged under Section 47.1(a). (*Compare* Dkt. 45 at 10 (acknowledging that Lively asked the Court to find that her statements were "protected by . . . the California Civil Code § 47.1"), *with* Dkt. 42 at 21 (declining to "address Defendant's other bases for dismissal" after personal jurisdiction).) But she cannot overcome the procedural limitations of where she finds herself.

**The Court did not—and cannot—decide the merits of Lively's privilege defense when it decided her motion to dismiss for lack of personal jurisdiction.** When ruling on a motion to dismiss for lack of personal jurisdiction, courts are "limited" to making jurisdictional findings of fact. *Bickham*, 584 F.2d at 737; *see also Bar Grp.*, 215 F. Supp. 3d at 534 (no decisions on the merits absent personal jurisdiction). That is exactly what the Court did in its order on Lively's motion to dismiss, declining to address any other asserted bases for dismissal. (Dkt. 42 at 21.) So, the Court is "powerless" to adjudicate Lively's claim that her communications were privileged under Section 47.1(a). *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999) (no merits decisions absent subject-matter and personal jurisdiction). Indeed, it did not.

Lively gets this backwards. Courts that lack personal jurisdiction over a defendant cannot—and do not—determine the merits of whether a defendant engaged in privileged conduct. *See Bar Grp.*, 215 F. Supp. 3d at 534. They do not make any decisions on the merits for a defendant, like Lively, who is trying to dismiss the case. Instead, courts in this Circuit go no further than to "resolve all factual conflicts in favor of the party seeking to invoke the court's jurisdiction." *Cent.*

*Freight Lines Inc.*, 322 F.3d at 380. In other words, the Court could *at most* resolve Plaintiffs' well-pleaded allegations that Lively acted with malice, not whether Lively's communications were privileged. Lively's contention otherwise is not, as she says, "inescapable as a logical matter"—it entirely contradicts binding (and logical) precedent. (Dkt. 45 at 16 n.8); *Cent. Freight Lines Inc.*, 322 F.3d at 380; *see also Guidry*, 188 F.3d at 623 n.2 (noting that "a dismissal for lack of personal jurisdiction . . . is not a judgment on the merits").

      **Plaintiffs' allegations that Lively acted with malice defeat her conclusion that her communications were privileged.** Even if the Court could reach the merits of Lively's asserted defense, she cannot overcome Plaintiffs' allegations of malice. Lively relies on California Civil Code Section 47.1(b), which states in relevant part:

> A prevailing defendant in any defamation action brought against that defendant for making a communication that is privileged under this section shall be entitled to their reasonable attorney's fees and costs for successfully defending themselves in the litigation . . . .

The statute defines a privileged communication as "[a] communication made by an individual, *without malice*, regarding an incident of sexual assault, harassment, or discrimination." Cal. Civ. Code § 47.1(a) (emphasis added).

      "When interpreting a statute, we begin with the text." *Lackey v. Stinnie*, 604 U.S. 192, 199 (2025). In this case, the text contains at least five requirements: (1) a prevailing defendant; (2) in any defamation action; (3) brought against that defendant; (4) for making a communication; (5) that is privileged under this section. *See* Cal. Civ. Code § 47.1(b). No doubt this is (2) a defamation action (3) brought against Lively as defendant (4) for making one or more communications. But Lively

Plaintiffs' Response to Defendant's Motion for
Costs and Attorneys' Fees
      Page **14** of **22**

is not (1) a prevailing defendant, nor has there been any determination that (5) her communications were privileged under Section 47. Because these two elements are missing, even under California law, Lively cannot obtain attorneys' fees and costs.

For one, Plaintiffs allege that Lively acted with malice—including by listing Wallace as a "defendant" in the Draft Complaint alleging sexual harassment and retaliation and then disseminating it to the media—which is all that is required at the motion-to-dismiss stage. *See* Cal. Civ. Code § 47.1(a) (requiring privileged statements be made without malice); *Green Valley Special Util. Dist. v. Walker*, 324 F.R.D. 176, 182 (W.D. Tex. 2018) ("plead[ing] sufficient facts to state a claim for relief" is sufficient to survive a motion to dismiss); (*see also* Dkt. 21 ¶¶ 40–44, 69–71 (setting out the factual basis for allegations that Lively acted with malice).)

Lively's favored case on Section 47, which she believes "must apply to Section 47.1 as well," makes Plaintiffs' point. (Dkt. 45 at 14 n.7 & 14–15 (citing *Kapellas v. Kofman*, 1 Cal. 3d. 20, 28 (1969).) Even if Lively is right that "the malice requirement is triggered[] where the communication's privileged status is 'disclose[d]' by the complaint's allegations," she disregards the Supreme Court of California's conclusion in *Kapellas* that a plaintiff *defeats* the qualified privilege by pleading malice at the motion to dismiss stage, as Plaintiffs did here. *Compare* (Dkt. 45 at 14–15), *with Kapellas*, 1 Cal. 3d. at 28–29. The *Kapellas* court reversed a dismissal at the demurrer stage (California's dispositive motion at the pleadings stage) on this basis where a complaint alleged that a defendant made an otherwise privileged communication "well knowing that it was false or with reckless disregard of whether it was false or not," because "[t]his court has . . . consistently held that

allegations of malice similar to those set forth [in the complaint] defeated the qualified privilege of section 47." *Kapellas*, 1 Cal. 3d at 29 (quoting live complaint).

No other outcome is proper here at the pleading stage: Lively alleges a communication is privileged, and Plaintiffs sufficiently allege malice to defeat the qualified privilege. If this procedural California law applies (and, again, it does not), the Motion fails for this reason alone.

Even if more were required at this stage (it is not), Lively's statements were not privileged under Section 47.1(a), as Plaintiffs explained in their Response to Lively's Motion to Dismiss. (*See* Dkt. 29 at 25.) Lively does not deny that Wallace had never met her (much less harassed her) nor ever appeared on set of the film where Lively alleges the harassment took place. And she does not refute that her "'ambiguous group pleading' . . . 'left a reasonable reader with the impression that all causes of actions' were attributable to all defendants, including Plaintiffs." (Dkt. 45 at 18 (quoting Dkt. 21 ¶ 28).)

Regardless of whether Lively had a "reasonable basis" to make a CRD Complaint about *other parties*, and regardless of whether any privilege extended to public disclosure of the private CRD and Draft Complaints about those parties (it did not), Lively had *no* reasonable basis to lump Wallace (much less Street) into those Complaints. Lively's ambiguous drafting and subsequent publication to the media was a *choice*, and it shows malice toward Plaintiffs. It does not support, as Lively contends, a "reasonable basis" to implicate a person Lively had never met in sexual harassment charges. (*See id.* at 18–19.) California's privilege, meant to protect victims at the hands of their abusers, does not attach to something this offensive.

Further, the privilege does not apply to defamatory statements extending beyond sexual harassment claims, as the complained-of statements did. (*See* Dkt. 29 at 25.) Though the Court cannot reach the merits of Lively's defense at this stage, even on the merits, Lively's claim of privilege fail. The Motion must be denied.

**Lively is not a prevailing defendant.** Under any plausible reading of Section 47.1(b), Lively is not a prevailing defendant. As the Supreme Court has explained in interpreting similar "prevailing party" language, to "prevail" requires that the court enter "enduring judicial relief that constitutes a 'material alteration of the legal relationship of the parties.'" *Lackey*, 504 U.S. at 202 (quoting *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)).

As to the specific "prevailing defendant" language used in California Civil Code Section 47.1(b), just three cases have cited this language, and two relate to Lively's own filings in the New York case. Neither of the New York decisions interpret the meaning of prevailing defendant. *See Lively v. Wayfarer Studios LLC* (*Lively II*), No. 24-CV-10049, 2025 WL 2841212, at *3 (S.D.N.Y. Oct. 6, 2025); *Lively I*, 786 F. Supp. 3d at 757. The other, an unpublished decision from the Central District of California, recently interpreted the "prevailing defendant" language and determined that when a court does not specifically grant relief under Section 47.1, "there is no basis for an award of fees or damages . . . ." *Evans v. Walker*, No. CV 25-11406-MWF, 2026 WL 973763, at *5 (C.D. Cal. Mar. 24, 2026).

Ignoring this, Lively claims that because Section 47.1 is similar to California's anti-SLAPP laws, and one California decision has decided that fee-shifting is permissible for defendants who successfully defend under California's anti-SLAPP

laws, even on jurisdictional grounds, this Court should just import the anti-SLAPP rules.[9] (Dkt. 45 at 20.) But that California decision does not bind this Court, and it runs headlong into binding authority that "prevailing" requires "enduring judicial relief that constitutes a 'material alteration of the legal relationship of the parties.'" *Lackey*, 504 U.S. at 202 (quoting *Tex. State Tchrs. Ass'n*, 489 U.S. at 792–93).

A decision that this Court lacks personal jurisdiction makes no such material alteration. Among other options, Plaintiffs could prevail on their pending appeal or sue Lively in another jurisdiction where the court has personal jurisdiction and receive a determination on the merits. The Court's decision only addresses *where* Plaintiffs may sue Lively, not whether they can. (*See* Dkt. 42 at 21 (dismissal *without prejudice*).) The parties' legal relationship has not changed.

Lively's other cited authority further undermines her arguments. (*See* Dkt. 45 at 20.) The Supreme Court in *CRST Van* recognized that, in addition to a decision on the merits, a finding that a plaintiff's claims were meritless could support prevailing party status. *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 432 (2016). There was no such decision here. *Amphastar Pharm. Inc. v. Aventis Pharma SA* stands for the same unremarkable proposition. 856 F.3d 696, 711 (9th Cir. 2017). *San Diego County Credit Union v. Citizens Equity First Credit Union* adds the obvious explanation that any determination that "judicially preclude[s] from refiling the claim against the defendant in federal court" is sufficient to trigger prevailing

---

[9] This approach would conflict with the Fifth Circuit's determination that similar anti-SLAPP laws do not apply in federal court. *See supra* Section III.A; *Klocke*, 936 F.3d at 245–46 (holding that the Texas anti-SLAPP law does not apply because "a state rule conflicts with a federal procedural rule when it imposes additional procedural requirements not found in the federal rules").

party status. No. 18CV967, 2023 WL 7597630, at *4 (S.D. Cal. Nov. 14, 2023).[10] That, too, has not happened here. As explained above, Plaintiffs may file the same claims against Lively in another court. In any event, none of the cases she cites awarded fees, despite remarkably being cited for the proposition that "[c]ourts routinely award fees . . . ." (Dkt. 45 at 20 (citing same cases).)

Finally, Lively's narrow reading of Section 47.1(a)'s text completely misses the mark. (Dkt. 45 at 20–21.) The law in this Circuit (and elsewhere) tells us that statutory interpretation requires "consider[ation] of the statute in its entirety." *Comacho v. Tex. Workforce Comm'n*, 408 F.3d 229, 235 (5th Cir. 2005). Words and "statutory phrases [cannot be read] in isolation; we read statutes as a whole." *United States v. Morton*, 467 U.S. 822, 828 680 (1984) ("Thus, the words 'legal process' must be read in light of the immediately following phrase — 'regular on its face.'"). Lively's reading of the phrase "prevailing defendant" in isolation rejects these canons of statutory interpretation and *wholly ignores* the immediately following phrase that the defendant must have prevailed "for making a communication that is privileged." Cal. Civ. Code § 47.1(b). "Prevailing defendant" cannot be read without consideration of the statute as a whole, and as explained above, there has been no determination that Plaintiffs' action was based on a privileged communication.

---

[10] Contrary to Lively's reliance on this case as an example of "[c]ourts routinely award[ing] fees where defendants obtain dismissal on jurisdictional or other threshold grounds" (Dkt. 45 at 20.), *San Diego County* **did not** award attorneys' fees because it found that "both parties obtained significant victories in judicial decisions in each of their favors." 2023 WL 7597630 at *7.

## E.    Lively Is Not Entitled to Costs Under Rule 54.

For similar reasons, Lively cannot obtain court costs as a "prevailing party" under Rule 54. Lively does not claim to seek costs as a "prevailing party" under Rule 54(d)(1). (*See generally* Dkt. 45.); *see also* Fed. R. Civ. P. 54(d)(1). To the extent she raises the argument in her reply, she has waived it. *See Allen v. Hays*, 65 F.4th 736, 746 (5th Cir. 2023); *Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 879 (5th Cir. 2004). But even if such arguments were considered *sua sponte*, Lively is not a prevailing party under Rule 54.

Again, the Supreme Court has routinely found that to "prevail" requires that the court enter "enduring judicial relief that constitutes a 'material alteration of the legal relationship of the parties,'" which could include a finding that the plaintiff's claims were meritless *Lackey*, 504 U.S. at 202 (quoting *Tex. State Tchrs. Ass'n*, 489 U.S. at 792–93); *CRST Van*, 578 U.S. at 432. Again, there has been no such enduring judicial relief here. Plaintiffs could (among other options) sue Lively elsewhere for the same claims. Thus, Lively is not a "prevailing party" under Rule 54(d)(1) and is not entitled to an award of costs.

## IV.    CONCLUSION

For all her protests about litigating in Texas, Lively just can't seem to quit us. Her latest mess with Texas finds no support in choice-of-law principles, Fifth Circuit law about how facts are resolved (or not) in the procedural posture she created, nor even in the plain text of the California statute she invokes for relief. Though we can't blame her for choosin' Texas once again, it doesn't take a crystal ball to see that the Motion should be denied.

Dated: May 11, 2026

Respectfully submitted,

JACKSON WALKER LLP

*/s/ Charles L. Babcock*

Charles L. Babcock
Texas Bar No. 01479500
Joel R. Glover
Texas Bar No. 24087593
Tori C. Emery
Texas Bar No. 24126228
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 308-4110  [FAX]
cbabcock@jw.com
jglover@jw.com
temery@jw.com

Minoo Blaesche
Texas State Bar No. 24075102
Carl C. Butzer
Texas Bar No. 03545900
2323 Ross Avenue, Suite 600
Dallas, Texas 75206
(214) 953-6000
(214) 953-5822 [FAX]
mblaesche@jw.com
cbutzer@jw.com

Matt Dow
Texas Bar No. 06066500
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 391-2113 [FAX]
mdow@jw.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of May, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to all counsel of record.

*/s/ Charles L. Babcock*
Charles L. Babcock
