# Exhibit A

record and the time is 6:33 P.M.

(Recess.)

THE VIDEOGRAPHER: We are back on the
record and the time is 6:42 P.M.

EXAMINATION BY

ATTORNEY BABCOCK:

Q Ms. Lively, my name is Chip Babcock. This
is Joel Glover. We represent Jed Wallace and
Street Relations, Inc.

A Okay.

Q Nice to meet you across the table.

A Nice to meet you.

Q Sorry about the circumstances, but it is
what it is.

A I appreciate it.

Q I've just handed you Exhibit 1000, not
1,001. That's just a notice of deposition. It's
not a big deal, we just like to keep records. So
you're here and thank you for being here.

(Exhibit 1000, marked for identification.)

A Okay. Do I need to take the time to read
this?

Q No.

A Okay.

Q You can if you want, but there is just

18:33:45
18:33:54
18:41:24
18:42:43
18:42:46
18:42:47
18:42:47
18:42:50
18:42:53
18:42:54
18:42:54
18:42:56
18:42:58
18:43:00
18:43:00
18:43:01
18:43:04
18:43:06
18:43:10
18:43:12
18:43:12
18:43:14
18:43:14
18:43:14
18:43:15

legal gobbledygook in there, so not a problem.

Would you tell me what your definition is of personal knowledge?

ATTORNEY HUDSON:  Objection.

A  Knowledge that I retain myself without the -- in this context, without attorneys.

Q  Good.  I was hoping you'd say that, because all of my questions are going to be asking you about your personal knowledge.

A  Okay.

Q  And I don't want you to rely on your attorneys, something your attorneys may have told you, for reasons why there have been objections previously.

A  Yeah.

Q  She can still object if she wants --

A  Okay.

Q  -- but she doesn't have to, because I'm not asking about that.

Have you ever met Jed Wallace?

A  I have not, no.

Q  Have you ever talked with him?

A  Not to my knowledge, no.

Q  Okay.  Have you ever corresponded with him?

A   Not to my knowledge, no.

Q   Do you know what he looks like?

A   I don't.

Q   Okay.  You do know he lives in Texas?

ATTORNEY HUDSON:  Objection.

A   I do.

Q   Okay.  You listed -- I thought I heard -- I may ask you questions you've already been asked, but I didn't catch everything down there.

You listed everybody you thought had harassed you, and I don't think I heard Mr. Wallace's name.

But the question is, is Mr. Wallace among the people that harassed you or not?

ATTORNEY HUDSON:  Objection.

A   I have never met Jed Wallace, so I do not think he participated in physical, sexual harassment.

Q   Okay.

A   I believe he was a part of the retaliation campaign that was a result of that --

Q   And that's --

A   -- harassment.

Q   Were you done with your answer?

ATTORNEY HUDSON:  Sorry.  I just want to

one specific author, which would be Mr. Wallace.

And are you aware of any specific article that he authored himself, maybe in conjunction with others, but that he authored himself?

ATTORNEY HUDSON: Objection.

A With his name on it? No. I understand Mr. Wallace's work to be quite clandestine, so I'm not aware of anything that has his name on it, no.

Q How do you know his work was quite clandestine?

A That's how it's been described to me by everyone who knows him, that -- yeah, that everyone who I've spoken with who knows him. It's also what was described in the documents we received, both in the Joneswork documents, as well as documents in discovery.

Q Who described him to you as quite clandestine? You said that people told you that, who told you that?

A I don't know that those were the words that were used.

Q Sure.

A That was the general sort of descriptor, or the general idea.

ATTORNEY HUDSON: And you're excluding

counsel?

ATTORNEY BABCOCK:  Always.

A  I was told by Stephanie Jones about his -- the nature of the way he works and how he works and -- so Stephanie Jones.

There are -- well, outside of attorneys, yeah, he has that reputation.  Yeah, a lot of what I know of that is through attorneys.

But I -- also in the messages, I don't remember if it was Jennifer Abel or Melissa Nathan who described his work as untraceable.  And there were other messages which --

Q  Okay.  So the three names of people who might have described him as quite clandestine would be Stephanie Jones, Melissa Nathan, and Jennifer Abel.

Would that be correct?

A  There were others.  I don't remember if it was Katie Case or Brianna Koslow, who also described his work in the documents that we've...

Q  Does Ms. Koslow also go by Butler?

ATTORNEY HUDSON:  Objection.

A  I don't know.

Q  Okay.  In any event, are Ms. Case and Koslow, are they part of the conspiracy against

don't remember specifically who else was there. It was a very emotional and upsetting day. It was hard for me and Isabella to continue our work. We kept breaking because we were incredibly distraught.

Q   And the statements by the Sony people that you identified were in person in Copenhagen; is that right?

A   Yes.

Q   Okay.

A   There were also Sony representatives in New York and in California and internationally. And my publicist, Leslie Sloane, I believed to be in New York at the time that she called to let me know of the negativity and of the hiring of Melissa Nathan.

ATTORNEY BABCOCK:  Okay.  Object as nonresponsive.

Q   On December 20th of 2024, you filed a complaint with the civil rights division of the California agency in charge of the Fair Employment and Housing Act, correct?

ATTORNEY HUDSON:  Objection.

A   I'd have to read the document to know --

Q   Sure.  I'm going to show it to you.

A  -- that you recited it accurately.

(Exhibit 1048, marked for identification.)

BY ATTORNEY BABCOCK:

Q  Here you go.  Let me hand you Exhibit 1048.  There you go.

And 1048 is a three-page document that lists Jed Wallace and Street Relations as two of a number of respondents to your complaint of employment discrimination before the State of California, correct?

A  Jed Wallace's name is listed amongst the defendants, yes.

And what was the second part of your question?  I'm sorry.

Q  Street Relations Inc. was also listed, correct, as a respondent?

A  Yes.

Q  All right.  And this complaint was verified by your outstanding lawyer, Esra Hudson, who is sitting next to you, I think; is that right?

ATTORNEY HUDSON:  Objection.

ATTORNEY BABCOCK:  I would object if I were you.

Q  It's on the last page, I think.

19:28:06
19:28:06
19:28:10
19:28:10
19:28:15
19:28:23
19:28:28
19:28:36
19:28:39
19:28:42
19:28:44
19:28:50
19:28:51
19:28:53
19:28:54
19:28:56
19:28:58
19:28:59
19:29:04
19:29:08
19:29:10
19:29:12
19:29:13
19:29:14
19:29:20

A  Yes.

Q  And she was your lawyer with respect to this complaint, correct?

A  Yes.

Q  And the complaint indicates that there is a -- an attachment that says, "Please see attached complaint for specific details."

Do you remember that?  Do you remember that it had an attachment?

A  My initial complaint?

Q  Yes.

A  Yes.

Q  Okay.

(Exhibit 1049, marked for identification.)

BY ATTORNEY BABCOCK:

Q  Let me hand you 1049.

And is that is the attachment?

A  Well, I'm unable to read all of the pages right now, so I'm going to have to go on trust to know if it's the attachment, so I don't know, but...

Q  Does that kind of look like what the attachment was?

ATTORNEY HUDSON:  Objection.

A  It kind of looks like what the attachment

was.

Q Okay. If it turns out not to be, then it's going to be on me, not on you, how about that? Is that fair?

A That's -- let's hope so.

Q And then the -- that same day, one of your lawyers, Mr. Gottlieb, sent a letter to a number of the people who are now defendants here, correct?

ATTORNEY HUDSON: Objection.

ATTORNEY BABCOCK: Do you have those Gottlieb letters? I believe it's going to be 1043 through 1045. Actually, one letter with some attachments.

Maybe I got the wrong number. It's this one.

(Exhibit 1042, marked for identification.)

BY ATTORNEY BABCOCK:

Q Let me hand you what's been marked as 1042, sorry. I stated the wrong number.

Have you ever seen this exhibit before? It's -- it's sent on behalf of not only Mr. Gottlieb but Ms. Hudson as well.

A I need to take a minute to look at it to know if it looks familiar.