# Exhibit B

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
CAMILLE M. VASQUEZ, Cal Bar No. 273377
CVasquez@sheppard.com
SAMUEL A. MONIZ, Cal Bar No. 313274
SMoniz@sheppard.com
HONIEH UDENKA, Cal Bar No. 319103
HUdenka@sheppard.com
MELISSA M. MIKAIL, Cal Bar No. 323212
MMikail@sheppard.com
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone: 714.513.5100
Facsimile: 714.513.5130

Attorneys for Plaintiffs and Cross-Defendants
AMANDA GHOST, GREGOR CAMERON,
and VINCE HOLDEN

**Electronically FILED by**
**Superior Court of California,**
**County of Los Angeles**
**8/25/2026 10:26 AM**
**David W. Slayton,**
**Executive Officer/Clerk of Court,**
**By V. Sino-Cruz, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

AMANDA GHOST, an individual; GREGOR CAMERON, an individual; and VINCE HOLDEN, an individual,

Plaintiffs,

v.

REBEL WILSON, an individual; and DOES 1-50, inclusive,

Defendants.

AND RELATED CROSS-ACTIONS

Case No. 24STCV17314

Assigned for All Purposes to:
Hon. Thomas D. Long, Department 506

**MOTION TO COMPEL FURTHER RESPONSES TO THIRD SET OF REQUESTS FOR PRODUCTION TO THE AGENCY GROUP PR, LLC; JOINT DISCOVERY DISPUTE STATEMENT**

Date: May 27, 2027
Time: 8:30 a.m.

Reservation No.: 581988827149

Discovery Cut-Off: December 21, 2026
Final Status Conference: January 4, 2027
Trial Date: January 19, 2027

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 27, 2027 at 8:30 a.m. in Department 506 of the above-entitled Court, located at 111 N. Hill Street, Los Angeles, California 90012, Plaintiff, Cross-Complainant, and Cross-Defendant Amanda Ghost ("Ms. Ghost"), will and hereby does move for an Order compelling Cross-Defendant The Agency Group PR, LLC ("TAG") to provide further verified responses to her Third Set of Requests for Production, and to thereafter produce all responsive documents in a timely manner.

The Motion is made pursuant to Code of Civil Procedure § 2031.310 *et seq.*, and on the additional authorities set forth in the concurrently-filed Discovery Statement and any further supplemental papers, on the grounds, *inter alia*, that despite diligent meet and confer efforts, TAG has asserted invalid objections and evasive responses, and thereby improperly narrowed the scope of its document production; and has failed to produce all responsive, nonprivileged documents (or even commit to doing so). Ms. Ghost further requests an award of monetary sanctions to compensate for the expense of this Motion, in an amount no less than $11,280, applied jointly and severally to Melissa Nathan and TAG.[1]

This Motion is made and based on this Notice of Motion and Motion; the attached Discovery Statement, the concurrently-filed Declaration of Samuel A. Moniz and exhibits thereto; all pleadings and files in this action; and such further evidence, argument, and law as may be presented at or before the hearing on the Motion.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

[1] As the requests to both parties are functionally identical, the two motions to compel being concurrently filed are essentially duplicative. Thus, the time spent on the Motions should be equally applicable to both TAG and Ms. Nathan, though without double recovery.

Dated: August 24, 2026

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By

CAMILLE M. VASQUEZ
SAMUEL A. MONIZ
Attorneys for Plaintiffs and Cross-Defendants
AMANDA GHOST, GREGOR CAMERON,
and VINCE HOLDEN

**DISCOVERY STATEMENT**

**MS. GHOST'S FACTS AND LAW RELEVANT TO ALL REQUESTS:**

Ms. Ghost's operative Cross-Complaint alleges, in part, that Rebel Wilson, Melissa Nathan, and TAG collectively worked to publish and disseminate defamatory websites about her ("Ghost Websites"), which spread harmful falsehoods about Ms. Ghost, such as that she is engaged in "procuring young women for the pleasure of the extremely wealthy." (*See, e.g.*, Cross-Complaint ¶ 37.) (Declaration of Samuel Moniz ("Moniz Decl.") ¶ 4.) TAG is a public relations firm, and Ms. Ghost understands that Ms. Nathan is its founder and chief executive officer. Ms. Nathan and TAG were engaged to act in a public relations capacity for Ms. Wilson following the commencement of this litigation. Prior to their engagement, Ms. Nathan has testified in deposition to having no knowledge about Ms. Ghost. As noted above, Ms. Ghost alleges that the Cross-Defendants ultimately participated in the creation of the Ghost Websites, which contained false and defamatory statements about her. Substantial evidence has been obtained in discovery to further support that conclusion. (Moniz Decl. ¶ 5-6.). Ms. Nathan and TAG dispute Ms. Ghost's allegations that they were involved in publishing false and defamatory statements concerning Ms. Ghost.

In a claim for defamation, the elements include publication and falsity. See, e.g., Taus v. Loftus (2007) 40 Cal.4th 683, 720. Ms. Nathan and TAG have denied involvement in publishing the Ghost Websites, and also have denied making false statements about Ms. Ghost. Further, Ms. Nathan and TAG have taken the position that actual malice must be shown, which requires establishing that they acted with an awareness of likely falsity. Without conceding that malice must ultimately be shown, Ms. Ghost must nonetheless take discovery pertaining to that issue as well. "Factors such as failure to investigate, anger and hostility, and reliance on sources known to be unreliable or biased" will show malice. Mitchell v. Twin Galaxies, LLC (2021) 70 Cal.App.5th 207, 221. Malice can also be shown "where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call." *St. Amant v. Thompson* (1968) 390 U.S. 727, 732; *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 391. "[E]vidence of negligence, of motive and of intent may be adduced for the purpose of establishing,

by cumulation and by appropriate inferences," malice. *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 257 (citation omitted).

Thus, discovery in this case may appropriately relate to such matters as (1) TAG and Ms. Nathan's general knowledge about Ms. Ghost and Ms. Ghost's background, (2) their attitude toward Ms. Ghost, including any hostility or personal dislike they have toward her; (3) their basis, if any, for accusing her of misconduct; (4) their possible motivation for spreading negative and false information about Ms. Ghost, including their financial and other incentives for doing so; (5) their intentions and goals in doing so; (6) the fact of their involvement in the publication of the Ghost Websites, and any information reasonably tending to show that it is more likely that they were involved in the Ghost Websites; (7) any information tending to support any contention that the content of the Ghost Websites is true; and (8) the involvement of other parties in the Ghost Websites and the identity of other conspirators.

It is well-settled under California law, that the standard for discoverability is low. As set forth in Code of Civil Procedure § 2017.010, "any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." "Discovery may relate to the claim or defense of the party seeking discovery or of any other party to the action." *Id.* Generally, "doubts about the permissible scope of discovery are to be resolved in favor of disclosure." *Advanced Modular Sputtering, Inc. v. Superior Court* (2005) 132 Cal.App.4th 826, 835. "In the context of discovery, evidence is 'relevant' if it might reasonably assist a party in evaluating its case, preparing for trial, or facilitating a settlement." *Glenfed Development Corp. v. Superior Court* (1997) 53 Cal.App.4th 1113, 1117. "Admissibility is *not* the test, and it is sufficient if the information sought might reasonably lead to other, admissible evidence." *Id.* (emphasis in original). Nor has any showing been made of undue burden. *West Pico Furniture Co. of Los Angeles v. Superior Court* (1961) 56 Cal.2d 407, 417 ("burden, alone, is not a ground for objection"). As explained below, each of the particular requests for production at issue is directly relevant to the issues in this action, and appropriately discoverable.

**DISPUTED REQUESTS**

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS and COMMUNICATIONS that refer, reflect, or relate to GHOST.[2]

**RESPONSE TO REQUEST NO. 21:**

The foregoing Preliminary Statement and General Objections are incorporated herein by this reference. Defendant further objects to this Request on the following grounds: (1) it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence; (2) to the extent it seeks information, the disclosure of which would result in an unwarranted invasion of the affected individual's constitutional, statutory and/or common law right to privacy and confidentiality; and (3) it necessitates the preparation or the making of a compilation, abstract, audit, or summary of or from the documents that will be produced by Defendant, and the burden and/or expense of preparing or making such compilation, abstract, audit, or summary would be substantially the same for Plaintiff as for Defendant.

**MS. GHOST'S POSITION:**

The objection-only response is inappropriate, and the asserted objections are inapplicable. The request does not call for a summary of documents; it does not infringe on any valid or identifiable privacy interest; and it is clearly relevant to the subject matter of this action.

The evidence obtained thus far in this action reflects that TAG and its president Melissa Nathan had no familiarity with Ms. Ghost prior to being retained by Rebel Wilson in connection with press activity related to this action. (Moniz Decl. ¶ 5.) Thereafter, the evidence discovered to date reflects that TAG and Ms. Nathan engaged in communications with the press about Ms. Ghost, and are alleged to have participated in the drafting and publication of defamatory material about Ms. Ghost via the Smear Websites that appeared at amandaghost.com and amandaghostsucks.com ("Ghost Websites"). (Moniz Decl. ¶ 6.) Accordingly, there is no reason

[2] The term "GHOST" is defined in Ms. Ghost's Requests for Production as follows: "GHOST" shall refer to Plaintiff, Cross-Defendant, and Cross-Complainant Amanda Ghost, her agents, employees, representatives and/or any other persons and/or entities acting on her behalf."

to believe that TAG or Ms. Nathan are in possession of any significant volume of documents pertaining to Ms. Ghost except for a limited number of documents from the time period of their engagement for Ms. Wilson, that would be directly relevant to this action, i.e., documents that would directly pertain to any research they did into Ms. Ghost, any knowledge they had about Ms. Ghost, or their internal or external communications about Ms. Ghost.

The documents sought by this request are, accordingly, relevant and discoverable for multiple reasons. For instance, the documents requested are relevant to the issues of publication, falsity, and malice, without limitation. *Taus v. Loftus* (2007) 40 Cal.4th 683, 720. Ms. Nathan and TAG appear to dispute, at least in part, that they caused the publication of the Ghost Websites. Documents pertaining to Ms. Ghost are reasonably calculated to lead to the discovery of information about their role and reasons in targeting Ms. Ghost. As well, documents pertaining to Ms. Ghost are reasonably calculated to disclose the factual basis, if any, for any contention that the statements on the Ghost Websites are true. For instance, if Cross-Defendants are in possession of documents purporting to reflect that Ms. Ghost is in the business of procuring young women for a billionaire, then such documents would clearly be relevant and need to be produced. Alternatively, their *lack* of possession of such documents would itself speak volumes. Finally, documents related to Ms. Ghost can reasonably be expected to disclose the Cross-Defendants' attitude toward Ms. Ghost, and their motivations and reasoning for attacking her. Thus, they are relevant to malice. *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 257.

No specific objection on grounds of overbreadth was asserted to this particular request. Assuming that the Cross-Defendant nonetheless argues overbreadth, Ms. Ghost notes that there is no reason to believe that Cross-Defendants are in possession of voluminous documents pertaining to her. Quite the contrary; Ms. Nathan's testimony in deposition suggested that Ms. Ghost was unknown to her before her engagement to act on Rebel Wilson's behalf in responding to this litigation.

Ms. Ghost respectfully requests that a further response and prompt production of documents in response to this request be compelled.

**CROSS-DEFENDANT'S POSITION:**

Ms. Nathan and TAG have already agreed during meet and confer efforts to search for and produce any non-privileged material related to Ms. Ghost in their possession, custody, or control. There is no ongoing issue with respect to this Request and it should not be included in Ms. Ghost's motion or this joint statement.

**REQUEST FOR PRODUCTION NO. 28:**

DOCUMENTS sufficient to show the total amount that YOU were paid for YOUR work on behalf of WILSON, including without limitation all invoices to WILSON.

**RESPONSE TO REQUEST NO. 28:**

The foregoing Preliminary Statement and General Objections are incorporated herein by this reference. Defendant further objects to this Request on the following grounds: (1) it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence; (2) to the extent it seeks information, the disclosure of which would result in an unwarranted invasion of the affected individual's constitutional, statutory and/or common law right to privacy and confidentiality; and (3) it necessitates the preparation or the making of a compilation, abstract, audit, or summary of or from the documents that will be produced by Defendant, and the burden and/or expense of preparing or making such compilation, abstract, audit, or summary would be substantially the same for Plaintiff as for Defendant.

**MS. GHOST'S POSITION:**

The total amount TAG and Nathan were paid by Ms. Wilson is relevant to exploring their relationship to Wilson, and their potential motivation in creating a defamatory website for Wilson. Merely by way of example, if Wilson was a significant client, that may have encouraged Ms. Nathan and TAG to be more willing to break rules on her behalf. As such, it is directly relevant to such issues as malice and publication of the Ghost Websites. The request is narrowly tailored, and limited to "documents sufficient to show" the amount paid by Wilson. Thus, the request does not seek general financial information, does not seek financial information unrelated to the Rebel

Wilson account, and is narrowly tailored to seek the amounts Wilson was invoiced and that she paid.

The request is relevant for another reason. Documents produced in this action and authenticated by Ms. Nathan reflect that Ms. Nathan quoted Wilson a specific price for the creation of an "untraceable site" ($110,000), which would be an amount separate and apart from the regular monthly charges that Ms. Nathan testified TAG charged Wilson. (Moniz Decl. ¶ 6.) To the extent that any such payment was made to TAG, that would be relevant to further confirming the involvement of all Cross-Defendants. Alternatively, to the extent that it was *not* made to TAG, it is relevant to confirming that other persons, and hence other potential witnesses, were involved.

The information sought is not unreasonably sensitive, and meets the standard of being "reasonably calculated to lead to the discovery of admissible evidence." Such information is clearly discoverable.

Ms. Ghost respectfully requests that a further response and prompt production of documents in response to this request be compelled.

**CROSS-DEFENDANT'S POSITION:**

Once again, there is no legitimate issue concerning this Request. Ms. Nathan testified during her deposition concerning her recollection as to the amounts Ms. Wilson paid TAG. Ms. Nathan and TAG have already agreed during meet and confer efforts to search for and produce non-privileged documents within their possession, custody, or control constituting invoices and/or payment records concerning amounts Ms. Wilson paid TAG and/or Ms. Nathan.

**REQUEST FOR PRODUCTION NO. 31:**

All COMMUNICATIONS regarding the WILSON account.

**RESPONSE TO REQUEST NO. 31:**

The foregoing Preliminary Statement and General Objections are incorporated herein by this reference. Defendant further objects to this Request on the following grounds: (1) it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence; (2) to the extent it seeks information, the disclosure

of which would result in an unwarranted invasion of the affected individual's constitutional, statutory and/or common law right to privacy and confidentiality; and (3) it necessitates the preparation or the making of a compilation, abstract, audit, or summary of or from the documents that will be produced by Defendant, and the burden and/or expense of preparing or making such compilation, abstract, audit, or summary would be substantially the same for Plaintiff as for Defendant.

**MS. GHOST'S POSITION:**

The objection-only response is inappropriate, and the asserted objections are inapplicable. The request does not call for a summary of documents; it does not infringe on any valid privacy interest; and it is clearly relevant to the subject matter of this action.

Ms. Nathan and TAG appear to dispute, at least in part, that they caused the publication of the Ghost Websites. Documents pertaining to their work for Ms. Wilson are reasonably calculated to lead to the discovery of information about their role and reasons in targeting Ms. Ghost. Alternatively, even documents not directly pertaining to Ms. Ghost are still relevant given the issues in this case. For instance, Ms. Wilson has recently claimed that she asked TAG and Ms. Nathan to create a website at "rebelwilson.com" to sell merchandise and her memoir, and appears to be trying to argue that her communications about the creation of websites have nothing to do with Ms. Ghost. Thus, documents and communications pertaining to such a purported website unrelated to Ms. Ghost are directly relevant as well, since they are relevant to exploring that contention. (Moniz Decl. ¶ 7.) Moreover, and in general, communications regarding the Wilson account are relevant to exploring Ms. Nathan and TAG's relationship to Wilson, and their potential motivation in creating a defamatory website for Wilson.

Ms. Ghost respectfully requests that a further response and prompt production of documents in response to this request be compelled.

**CROSS-DEFENDANT'S POSITION:**

This Request is overbroad on its face and seeks material that is not relevant to any claim or defense in this matter. Ms. Nathan and TAG have already agreed during meet and confer efforts to search for and produce all documents within their possession, custody, or control constituting

communications "regarding the WILSON account" **to the extent they pertain to Ms. Ghost**. To the extent this Request seeks material unrelated to Ms. Ghost or unrelated to the creation of any website for Ms. Wilson (which ostensibly may be "unrelated" to Ms. Ghost but which Ms. Nathan and TAG do not dispute would be relevant given Ms. Wilson's testimony about "rebelwilson.com" given after Ms. Nathan and TAG served its responses), it seeks material wholly unrelated to any claim or defense in this matter.

While there is clearly material relevant to this case captured by this Request, the Request is not appropriately limited to material concerning Ms. Nathan and TAG's work for Ms. Wilson as it pertains to Ms. Ghost. Ms. Nathan and TAG's provision of general public relations services to Ms. Wilson is not at issue in this case. Ms. Ghost's Cross-Complaint is very narrowly tailored as to Ms. Nathan and TAG. Those claims relate exclusively to their alleged involvement in "attack websites" targeting Ms. Ghost (i.e., what is referred to herein as the "Ghost Websites").

While material related to Ms. Nathan and TAG's work for Ms. Wilson related to Ms. Ghost is obviously responsive to this Request, several other of Ms. Ghost's Requests specifically seek material concerning such work. Accordingly, this Request is duplicative as to any actually relevant material, and to the extent it seeks material wholly unrelated to Ms. Ghost (which it does on its face), any such material is not relevant to any claim or defense in this matter.

Additionally, the suggestion that any documents unrelated to Ms. Ghost would somehow be probative of "motivation" in allegedly creating a defamatory website about Ms. Ghost is illogical on its face. The only material ostensibly relevant to any motivation to create a defamatory website about Ms. Ghost would necessarily relate to Ms. Ghost.

**REQUEST FOR PRODUCTION NO. 32:**

DOCUMENTS sufficient to identify any and all ATTACK WEBSITES[3] that have been prepared for any TAG client, whether directly by TAG or by a third party contractor.

---

[3] "ATTACK WEBSITES" is defined in Ms. Ghost's Third Request for Production as: "ATTACK WEBSITE" shall be construed to mean any website created with TAG's knowledge or involvement, or in connection with any TAG client, that is specifically designed and dedicated to spread unflattering, damaging, defamatory, and/or accusatory information about any other person. "ATTACK WEBSITE" shall be construed to include, but not be limited to, the WEBSITES, as

**RESPONSE TO REQUEST NO. 32:**

The foregoing Preliminary Statement and General Objections are incorporated herein by this reference. Defendant further objects to this Request on the following grounds: (1) it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence; (2) to the extent it seeks information, the disclosure of which would result in an unwarranted invasion of the affected individual's constitutional, statutory and/or common law right to privacy and confidentiality; and (3) it necessitates the preparation or the making of a compilation, abstract, audit, or summary of or from the documents that will be produced by Defendant, and the burden and/or expense of preparing or making such compilation, abstract, audit, or summary would be substantially the same for Plaintiff as for Defendant.

**REQUEST FOR PRODUCTION NO. 33:**

All COMMUNICATIONS that reflect the preparation or publication of any ATTACK WEBSITE for any TAG client.

**RESPONSE TO REQUEST NO. 33:**

The foregoing Preliminary Statement and General Objections are incorporated herein by this reference. Defendant further objects to this Request on the following grounds: (1) it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence; (2) to the extent it seeks information, the disclosure of which would result in an unwarranted invasion of the affected individual's constitutional, statutory and/or common law right to privacy and confidentiality; and (3) it necessitates the preparation or the making of a compilation, abstract, audit, or summary of or from the documents that will be produced by Defendant, and the burden and/or expense of preparing or making such compilation, abstract, audit, or summary would be substantially the same for Plaintiff as for Defendant.

---

well such additional websites as alexanikolas.net, christianlanng.com, stephaniejonesleaks.com, stephaniejoneslies.com, alexanderbrothersextorted.com, and all "whistleblower websites" referenced by Katherine Case in her deposition in this action."

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS and COMMUNICATIONS regarding any ATTACK WEBSITES.

**RESPONSE TO REQUEST NO. 34:**

The foregoing Preliminary Statement and General Objections are incorporated herein by this reference. Defendant further objects to this Request on the following grounds: (1) it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence; (2) to the extent it seeks information, the disclosure of which would result in an unwarranted invasion of the affected individual's constitutional, statutory and/or common law right to privacy and confidentiality; and (3) it necessitates the preparation or the making of a compilation, abstract, audit, or summary of or from the documents that will be produced by Defendant, and the burden and/or expense of preparing or making such compilation, abstract, audit, or summary would be substantially the same for Plaintiff as for Defendant.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS that evidence any rules, guidelines, policies, or procedures with respect to the creation of ATTACK WEBSITES or preparation of written material for such websites.

**RESPONSE TO REQUEST NO. 36:**

The foregoing Preliminary Statement and General Objections are incorporated herein by this reference. Defendant further objects to this Request on the following grounds: (1) it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence; (2) to the extent it seeks information, the disclosure of which would result in an unwarranted invasion of the affected individual's constitutional, statutory and/or common law right to privacy and confidentiality; and (3) it necessitates the preparation or the making of a compilation, abstract, audit, or summary of or from the documents that will be produced by Defendant, and the burden and/or expense of preparing or making such compilation, abstract, audit, or summary would be substantially the same for Plaintiff as for Defendant.

**REQUEST FOR PRODUCTION NO. 37:**

All agreements or contracts with any third party, including without limitation Jed Wallace, that relate to in any way to the creation, preparation, maintenance, or dissemination of ATTACK WEBSITES.

**RESPONSE TO REQUEST NO. 37:**

The foregoing Preliminary Statement and General Objections are incorporated herein by this reference. Defendant further objects to this Request on the following grounds: (1) it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence; (2) to the extent it seeks information, the disclosure of which would result in an unwarranted invasion of the affected individual's constitutional, statutory and/or common law right to privacy and confidentiality; and (3) it necessitates the preparation or the making of a compilation, abstract, audit, or summary of or from the documents that will be produced by Defendant, and the burden and/or expense of preparing or making such compilation, abstract, audit, or summary would be substantially the same for Plaintiff as for Defendant.

**MS. GHOST'S POSITION APPLICABLE TO REQUEST NOS. 32, 33, 34, 36, 37:**

Ms. Ghost has alleged in her Cross-Complaint that TAG and Nathan participated in the creation of websites designed to smear her, at the behest of their client Rebel Wilson, who was involved in a legal dispute with Ms. Ghost at the time the Ghost Websites appeared. (*E.g.*, Cross-Complaint at ¶ 37.) Ms. Ghost is not the only person to have made such an allegation, and there is powerful reason to believe that Ms. Nathan and TAG have engaged in a regular business practice of coordinating the creation and dissemination of websites designed to defame, insult, or harass persons adverse to their clients. Discovery on that issue is reasonably calculated to lead to the discovery of admissible evidence relevant to, *inter alia*, issues of publication (if there was a pattern and practice of putting up such websites), falsity, and malice (if such websites were designed to advance a predetermined, negative narrative).

For instance:

- Ms. Nathan and Rebel Wilson's former attorney have recently been sued by another woman, Alexa Nikolas, in Los Angeles Superior Court for the creation of a website about her that appeared at the domain **alexanikolas.net**, in a case pending in Los Angeles Superior Court as *Alexa Nikolas v. Bryan Freedman, Melissa Nathan,* Case No. 26SMCV00684.
- Ms. Nathan and TAG are presently defendants in a lawsuit pending in the Southern District of New York, brought by Stephanie Jones, which has included the allegation that Ms. Nathan and TAG were involved in the creation of a website about Ms. Jones entitled *stephaniejonesleaks.com*. That case is presently pending as *Jones v. Abel, et al.*, Case No. 1:25-cv-00779 ("Jones Action").
- Katie Case, a witness in this case and former employee of Ms. Nathan and TAG, has offered sworn deposition testimony in this action that she was instructed by Ms. Nathan to prepare written copy for the Ghost Websites and for at least one other website, and that she followed such instructions. In addition, in the Jones Action, publicly-available deposition testimony from Ms. Case indicates that she worked on at least three websites at Ms. Nathan's instruction.

For purposes of discovery, there is more than sufficient justification to warrant the inference that Ms. Nathan and TAG are engaged in a regular business practice of putting up negative websites for their clients. That, in turn, is supportive of Ms. Ghost's contention that the Ghost Websites were published with TAG and Ms. Nathan's assistance. Furthermore, such evidence is also directly relevant to the issue of actual malice. If Ms. Nathan and TAG are regularly engaged in the business of facilitating negative websites, than that would support the inference that the Ghost Websites were deliberately designed to be negative and defamatory, and that there was no concern with truthfulness or objectivity on the part of Ms. Nathan and TAG. *See, e.g., Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 710 (an inference of malice was supported by evidence that the defendant's "way of doing business" was to cause the creation of public reports that "were not the product of an unbiased view;" rather, its

customers would pay "for a report that would heavily favor its negative view of the target," so that the defendant company "colluded with [its client] to publish reports that met the negative expectations of [its client]"). Just as in *Overstock.com, Inc.*, if TAG and Ms. Nathan were in the business of procuring websites that were designed to fit a predetermined, negative narrative for their clients – and there is ample reason to believe that to be the case – then that supports the conclusion that they acted recklessly with respect to the Ghost Websites, and were merely concerned with advancing a predetermined, wholly negative narrative. As such, the involvement of Ms. Nathan and TAG in a pattern and practice of creating such websites is directly relevant and discoverable.

The objections are inapposite. The request does not require a summary of documents. Nor does it seek legitimately private materials. There is certainly no legitimate privacy interest in a business model of smear tactics or publishing anonymous, defamatory websites. If such documents exist in Ms. Nathan's or TAG's possession, then they could hardly be more relevant or appropriately discoverable.

Ms. Ghost respectfully requests that a further response and documents without objections be compelled.

**CROSS-DEFENDANT'S POSITION ON REQUEST NOS. 32, 33, 34, 36, 37:**

Request Nos. 32, 33, 34, 36, and 37 do not seek discovery of relevant material and are not reasonably calculated to lead to the discovery of admissible evidence. They seek material concerning Ms. Nathan and TAG's alleged involvement in wholly unrelated websites concerning wholly unrelated individuals. The only common thread Ms. Ghost advances is that all of these alleged sites were "negative." The question is not whether the Ghost Websites were "negative"—it is whether the Ghost Websites were defamatory, along with what role, if any, Ms. Nathan and TAG had in the creation of the Ghost Websites and whether they acted with actual malice in connection with any such role. Those questions are narrowly tailored to the Ghost Websites and the specific question of Ms. Nathan and TAG's knowledge at the time of any alleged involvement in the Ghost Websites. While admissibility is not the standard for whether material is subject to discovery, Ms. Ghost has failed to identify any legitimate reason why material related to other

alleged websites is actually relevant to this case, would itself be admissible, or would lead to the discovery of admissible evidence. Rather, Ms. Ghost's position makes clear that she seeks such material exclusively for the improper purpose of arguing that if Ms. Nathan or TAG were involved in other websites third-parties allege to be defamatory, they must have been involved in the Ghost Websites and the Ghost Websites must be defamatory. This is clearly improper and discovery concerning Ms. Nathan and TAG's alleged involvement in other websites should be denied.

A "trial centers on a specific incident, not the defendant's general behavior." *Bowen v. Ryan*, 163 Cal. App. 4th 916, 924 (2008). Section 1101 of the Evidence Code provides that, subject to limited exceptions, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

Ms. Nathan and TAG do not dispute the general axiom that material need not be admissible to be discoverable. However, it is equally well-settled that in order to be discoverable, material must be relevant. CCP § 2017.010. In excluding evidence under Evidence Code § 1101(a), numerous courts have explained that such "other acts" evidence when offered for the purpose Ms. Ghost seeks it here—to establish that a defendant did something because they allegedly did the same thing on other occasions—is **not** relevant. *See, e.g., Brokopp v. Ford Motor Co.*, 71 Cal. App. 3d 841, 851 (1977) (reasoning that "[i]t is a fundamental rule of evidence that you cannot prove the commission of an act by showing the commission of similar acts by the same person at other times and under other circumstances. **Such evidence is simply not relevant**…") *Downing v. Barrett Mobile Home Transp., Inc.*, 38 Cal.App. 3d 519, 524 (1974) (evidence of negligence in a prior car accident is not admissible to prove negligence in present case because it had "no probative value"); *Argueta v. Worldwide Flight Services, Inc.*, 97 Cal. App. 5th 822, 836-40 (2024) (reversal required in sexual harassment case where trial court admitted complaints of plaintiff's prior bullying, harassment, retaliation, and other bad behavior and allowed argument that the complaints are consistent with the alleged harasser's contentions that the plaintiff had threatened him, because the substance of such other complains was not relevant); *Clark v. Optical Coating Lab'y, Inc.*, 165 Cal. App. 4th 150, 174 (2008) (affirming trial court's exclusion of

evidence of groundwater contamination on defendant's property in case about whether defendant had improperly disposed of hazardous waste offsite, where offered to show defendant's "practices" were "careless," and reasoning that the evidence "depends on precisely the type of suspect inference that Evidence Code section 1101 is intended to foreclose, namely, that a person's bad conduct in one circumstance shows a propensity to act badly in others" and favorably citing *Brokopp*'s holding that such evidence is simply not relevant); *Pinter-Brown v. Regents of Univ. of Cal.*, 48 Cal. App. 5th 55, 95-98 (2020) (reversing jury verdict for plaintiff in a gender bias case where court allowed introduction of inadmissible propensity evidence, i.e., complaints by others about alleged harassment, noting that such evidence cannot be used to show an employer's general tendency to harass, and characterizing the admitted report with such information as "irrelevant and highly prejudicial").

Ms. Ghost seeks discovery concerning allegations against Ms. Nathan and TAG that they were involved in the creation of negative websites about wholly unrelated parties and wholly unrelated conduct. Ms. Ghost argues that such discovery may lead to evidence that Ms. Nathan and TAG were involved in the publication of the Ghost Websites and acted with malice in connection with their alleged role in the creation of the Ghost Websites. At bottom, Ms. Ghost seeks this material for precisely the prohibited irrelevant purpose—Ms. Nathan/TAG's alleged propensity to act with reckless disregard for the truth. This is improper, and material concerning alleged involvement in other websites is not relevant to or probative of whether Ms. Nathan and TAG were involved in the creation of the Ghost Websites or whether they had reason to believe that the particular content unique to the Ghost Websites was false, as required for actual malice. Put simply, Ms. Nathan and TAG's alleged involvement in other websites does not shed light on what they knew or believed about Ms. Ghost during their alleged involvement in the Ghost Websites.

The irrelevance of the discovery Ms. Ghost seeks concerning other websites is underscored by reference to the actual malice standard in the defamation context. Importantly, "[a]ctual malice may not be inferred solely from evidence of personal spite, ill will, or bad motive." *Id.* (citing *Harte-Hanks Communications, Inc. v. Connaughton* (1989) 491 U.S. 657, 666-667 & fn. 7).

Moreover, "mere failure to investigate the truthfulness of a statement, even when a reasonably prudent person would have done so, is insufficient." *Id.* (citing *Harte-Hanks, supra,* 491 U.S. 657, 688); *Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 947 (reversing trial court order denying anti-SLAPP motion because plaintiff failed to demonstrate that defendant knew his statement that political opponent acted unethically in maintaining a private law practice while employed by the state was false or harbored doubts as to its truth, even in the face of a failure to investigate whether the plaintiff had violated any laws).

Additionally, the existence of actual malice **generally turns on the defendant's subjective belief as to the truthfulness of the allegedly false statement**. *Reader's Digest, supra*, 37 Cal.3d 244, 25-258. "The reckless disregard standard requires a 'high degree of awareness of…probable falsity…'. [Citation.] 'There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.' [Citation.]" *OneTaste, Inc. v. Netflix, Inc.*, 116 Cal. App. 5th 174, 189 (2025). Additionally, in evaluating whether a plaintiff has made a showing of actual malice, courts "bear in mind the higher clear and convincing standard of proof." *Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 358. " 'The burden of proof by clear and convincing evidence "requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind."'' *Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 84 (quoting *Copp v. Paxton* (1996) 45 Cal.App.4th 829, 846).

While it is true that evidence of negligence, motive, and intent may be adduced for the purposes of establishing, by cumulation and appropriate inferences, the fact of a defendant's recklessness or knowledge of falsity (*Readers Digest* at 257) all such evidence must ultimately reflect on the publisher's subjective attitude toward the truth of the specific statements at issue. *McCoy v. Hearst Corp.*, 42 Cal.3d 835, 868, 727 P.2d 711 (1986). Other "negative" websites have absolutely nothing to do with whether Ms. Nathan or TAG knew that the statements on the Ghost Websites were false or whether they entertained serious doubts as to the truth of the statements on the Ghost Websites at the time the statements were made—the only relevant inquiry when it comes to actual malice. *Id.*; *see also Reed v. Gallagher*, 248 Cal.App.4th 841, 204 Cal. Rptr. 3d 178, 193 (2016) (noting that actual malice requires evidence to permit the conclusion that defendant "in fact entertained serious doubts as to the truth of his publication" and that there is a

"significant difference between proof of actual malice and mere proof of falsity" and that actual malice requires evidence that defendant "*realized* that his statement was false or that he *subjectively entertained serious doubt as to the truth of his statement.*") (emphasis in original).

Nothing related to any other alleged website could possibly shed light on these probative questions necessary to a showing of actual malice. Ms. Ghost's reliance on *Overstock* is misguided. *Overstock* involved a unique situation where the defendant's "business practices" regarding report preparations specifically went to the issue of knowledge of falsity because defendant in that case represented that its reports were independent and objective while simultaneously working behind the scenes to modify those reports with biased parties who had commissioned the reports in the first place. The issue was a public representation about the defendant's overall business model that the defendant knew to be false. So the question of malice (i.e., knowledge of falsity or reckless disregard for the falsity) directly implicated the defendant's overall business practices, bringing those overall practices within the sphere of relevance. Additionally and importantly, the defendant's conduct directed at other companies aside from plaintiff was implicated because also at issue were "top ten" rankings lists defendant prepared, and specifically used this to show potential and existing customers this ranking to demonstrate its purported ability to predict and affect stock performance.

Ms. Ghost's theory of actual malice against Ms. Nathan and TAG is nothing like the theory of actual malice against the defendant in *Overstock*. There is no false representation implicating Ms. Nathan or TAG's overarching business model or whether that business model itself is probative of Ms. Nathan or TAG's alleged actual malice in any alleged involvement in the Ghost Websites. Moreover, there is nothing in the *Overstock* decision to suggest that discovery into the defendant's actual preparation of each report related to other publicly traded companies would have been permitted or proper. The only implication of "other reports" in that case, which Ms. Ghost attempts to liken to the other alleged websites, is the general declaration that defendant was engaged in the general business of preparing biased and non-objective reports despite public representations that the reports were unbiased and objective. Ms. Ghost's suggestion that such

opens the door to extremely broad discovery related to everything about creation of wholly unrelated websites for "any TAG client" is entirely without merit.

The circumstances of this case are far more analogous to the facts of *OneTaste, Inc. v. Netflix, Inc.*, 116 Cal. App. 5th 174, 186 (2025). There, OneTaste sued Netflix for defamation arising from a documentary about OneTaste's alleged involvement in a former employee's sexual assault. In opposition to Netflix's anti-SLAPP motion, OneTaste offered, *inter alia*, orders denying Netflix's anti-SLAPP motions in three actions concerning other Netflix documentaries and streaming series, as well as an open letter criticizing a different Netflix documentary about chronically ill and disabled individuals.

The Court of Appeal determined that this evidence was not probative of actual malice and therefore irrelevant. The Court reasoned that different Netflix documentaries are not probative of Netflix's knowledge or beliefs about the challenged statements in the documentary at issue in that case. *Id.* at 189-90. The Court's analysis was grounded in the subjective nature of the actual malice standard: such evidence must shed light on the defendant's subjective belief or knowledge about the truth of specific challenged statements. Evidence of other allegedly defamatory conduct toward unrelated non-parties does not have anything to do with what a particular defendant knew or believed about the particular statements at issue.

In addition to being wholly irrelevant, the sought after discovery related to other websites would result in extreme expansion of this case to require at least five cases within this one. To the extent Ms. Ghost is permitted to conduct discovery on Ms. Nathan's alleged involvement in other sites concerning other people, Ms. Nathan and TAG would be required not only to litigate whether the information on the Ghost Websites was false and whether she knew or had reason to believe it was false, but also whether the information on any other website was false and whether she knew or had reason to believe it was false. It would essentially result in this case becoming numerous cases within a case, and significantly expand the issues beyond those relevant to whether or not the Ghost Websites were defamatory and whether Ms. Nathan and TAG acted with actual malice to the extent they were involved with those Ghost Websites. Indeed, as purported support for seeking material regarding other websites, Ms. Ghost cites the "Jones Action" currently pending in

the Southern District of New York. However, the Court in the Jones Action *denied* plaintiff's motion for leave to amend the complaint to assert a defamation action against Ms. Nathan (and never asserted such an action against TAG). *Jones v. Abel*, No. 25-cv-779 (LJL), 2026 WL 836798, *5 (S.D.N.Y. March 26, 2026). As to the matter involving Alexa Nikolas, Ms. Ghost references mere allegations as purported support for needing the other website discovery.

It is clear that allowing this type of irrelevant discovery will result in the need to litigate essentially new defamation claims within this action. Allowing discovery of alleged involvement in other websites would only serve to require Ms. Nathan and TAG to litigate whether they were involved at all in creating those sites, whether the content of those sites was false, and what they knew at the time those sites were published—issues that have no bearing on whether Ms. Nathan or TAG knew anything about the alleged falsity of the Ghost Websites at the time of publication. For all of these reasons, Ms. Ghost's motion should be denied as to Request Nos. 32, 33, 34, 36, 37 to the extent they seek discovery concerning any websites other than the Ghost Websites at issue in this case.

**REQUEST FOR PRODUCTION NO. 35:**

All COMMUNICATIONS with Jed Wallace regarding any ATTACK WEBSITES.

**RESPONSE TO REQUEST NO. 35:**

The foregoing Preliminary Statement and General Objections are incorporated herein by this reference. Defendant further objects to this Request on the following grounds: (1) it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence; (2) to the extent it seeks information, the disclosure of which would result in an unwarranted invasion of the affected individual's constitutional, statutory and/or common law right to privacy and confidentiality; and (3) it necessitates the preparation or the making of a compilation, abstract, audit, or summary of or from the documents that will be produced by Defendant, and the burden and/or expense of preparing or making such compilation, abstract, audit, or summary would be substantially the same for Plaintiff as for Defendant.

**MS. GHOST'S POSITION:**

Jed Wallace is an individual identified by Rebel Wilson and Ms. Nathan and TAG, as having relevant knowledge. He is alleged in this action to have worked on the actual creation of the Ghost Websites. It is further alleged that he is engaged in doing so as a regular practice. Testimony from third-party Katie Case in this action reflects that Ms. Nathan sent her a voice note from Jed Wallace soon before the Ghost Websites appeared, in which Jed Wallace instructed as follows:

> Oh, also talked about Rebel. Like, here's the -- here's the – the deal with Rebel, and I think you, me, and – and Brian, and maybe Katie since she'll write this thing, what we have to do is we -- the biggest piece here is that we have to connect Amanda Ghost with Blavatnik.
>
> And I -- I was just like, so basically what we need to do is we need to create a path where we expose Amanda Ghost -- Amanda Ghost as like the new Heidi Fleiss. Like, she -- she masquerades as a -- the reason why she sucks so bad at music is because she's actually getting hookers for Blavatnik, right? And that's what she does. She's a -- she's a -- she's an absolute madam, and that's why she's so lethal, blah, blah, blah. But that's -- he's right. Like, we can't just do like, oh, she's a bitch, she sucks. It's like, it's got to be really, really heavy and connected to something that heavy. So we'll talk about that tomorrow too.

Ms. Case further testified that she worked on written copy that eventually appeared in the public domain via the Ghost Websites, in accordance, in part, with the instructions in Jed Wallace's voice note. Jed Wallace, in short, was directly involved in the publication of the Ghost Websites.

His involvement in the Ghost Websites – and in other websites – is therefore directly relevant. Ms. Ghost has alleged in her Cross-Complaint that TAG and Nathan participated in the creation of websites designed to smear her, at the behest of their client Rebel Wilson, who was involved in a legal dispute with Ms. Ghost at the time the Ghost Websites appeared. (*E.g.*, Cross-Complaint at ¶ 37.) Ms. Ghost is not the only person to have made such an allegation, and there is powerful reason to believe that Ms. Nathan and TAG have engaged in a regular business practice of coordinating the creation and dissemination of websites designed to defame, insult, or harass persons adverse to their clients. Discovery on that issue is reasonably calculated to lead to the discovery of admissible evidence relevant to, *inter alia*, issues of publication (if there was a

pattern and practice of putting up such websites), falsity, and malice (if such websites were designed to advance a predetermined, negative narrative).

For instance:

- Ms. Nathan and Rebel Wilson's former attorney have recently been sued by another woman, Alexa Nikolas, in Los Angeles Superior Court for the creation of a website about her that appeared at the domain **alexanikolas.net**, in a case pending in Los Angeles Superior Court as *Alexa Nikolas v. Bryan Freedman, Melissa Nathan,* Case No. 26SMCV00684.
- Ms. Nathan and TAG are presently defendants in a lawsuit pending in the Southern District of New York, brought by Stephanie Jones, which has included the allegation that Ms. Nathan and TAG were involved in the creation of a website about Ms. Jones entitled *stephaniejonesleaks.com*. That case is presently pending as *Jones v. Abel, et al.*, Case No. 1:25-cv-00779 ("Jones Action").
- Katie Case, a witness in this case and former employee of Ms. Nathan and TAG, has offered sworn deposition testimony in this action that she was instructed by Ms. Nathan to prepare written copy for the Ghost Websites and for at least one other website, and that she followed such instructions. In addition, in the Jones Action, publicly-available deposition testimony from Ms. Case indicates that she worked on at least three websites at Ms. Nathan's instruction.

For purposes of discovery, there is more than sufficient justification to warrant the inference that Ms. Nathan and TAG are engaged in a regular business practice of putting up negative websites for their clients, and that Jed Wallace has knowledge relevant to that practice and is directly involved in it. That, in turn, is supportive of Ms. Ghost's contention that the Ghost Websites were published with TAG and Ms. Nathan's assistance. Furthermore, such evidence is also directly relevant to the issue of actual malice. If Ms. Nathan and TAG are regularly engaged in the business of facilitating negative websites, than that would support the inference that the Ghost Websites were deliberately designed to be negative and defamatory, and that there was no concern with truthfulness or objectivity on the part of Ms. Nathan and TAG. *See, e.g.,*

*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 710 (an inference of malice was supported by evidence that the defendant's "way of doing business" was to cause the creation of public reports that "were not the product of an unbiased view;" rather, its customers would pay "for a report that would heavily favor its negative view of the target," so that the defendant company "colluded with [its client] to publish reports that met the negative expectations of [its client]"). Just as in *Overstock.com, Inc.*, if TAG and Ms. Nathan were in the business of procuring websites that were designed to fit a predetermined, negative narrative for their clients – and there is ample reason to believe that to be the case – then that supports the conclusion that they acted recklessly with respect to the Ghost Websites, and were merely concerned with advancing a predetermined, wholly negative narrative. As such, the involvement of Ms. Nathan and TAG in a pattern and practice of creating such websites is directly relevant and discoverable.

The objections are inapposite. The request does not require a summary of documents. Nor does it seek legitimately private materials. There is certainly no legitimate privacy interest in a business model of smear tactics or publishing anonymous, defamatory websites. If such documents exist in Ms. Nathan's or TAG's possession, then they could hardly be more relevant or appropriately discoverable.

Ms. Ghost respectfully requests that a further response and documents without objections be compelled.

**REQUEST FOR PRODUCTION NO. 40:**

All COMMUNICATIONS with Jed Wallace regarding WILSON.

**RESPONSE TO REQUEST NO. 40:**

The foregoing Preliminary Statement and General Objections are incorporated herein by this reference. Defendant further objects to this Request on the following grounds: (1) it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence; (2) to the extent it seeks information, the disclosure of which would result in an unwarranted invasion of the affected individual's constitutional, statutory and/or common law right to privacy and confidentiality; and (3) it necessitates the preparation or the making of a compilation, abstract, audit, or summary of or from the documents

that will be produced by Defendant, and the burden and/or expense of preparing or making such compilation, abstract, audit, or summary would be substantially the same for Plaintiff as for Defendant.

**MS. GHOST'S POSITION:**

Testimony from third-party Katie Case in this action reflects that Ms. Nathan sent her a voice note from Jed Wallace in which Jed Wallace stated as follows:

> Oh, also talked about Rebel. Like, here's the -- here's the – the deal with Rebel, and I think you, me, and – and Brian, and maybe Katie since she'll write this thing, what we have to do is we -- the biggest piece here is that we have to connect Amanda Ghost with Blavatnik.
>
> And I -- I was just like, so basically what we need to do is we need to create a path where we expose Amanda Ghost -- Amanda Ghost as like the new Heidi Fleiss. Like, she -- she masquerades as a -- the reason why she sucks so bad at music is because she's actually getting hookers for Blavatnik, right? And that's what she does. She's a -- she's a -- she's an absolute madam, and that's why she's so lethal, blah, blah, blah. But that's -- he's right. Like, we can't just do like, oh, she's a bitch, she sucks. It's like, it's got to be really, really heavy and connected to something that heavy. So we'll talk about that tomorrow too.

Ms. Case further testified that she worked on written copy that eventually appeared in the public domain via the Ghost Websites, in accordance, in part, with the instructions in Jed Wallace's voice note. Jed Wallace, in short, was directly involved in the publication of the Ghost Websites. His communications with Ms. Nathan and TAG are, therefore, directly relevant and discoverable.

**CROSS-DEFENDANT'S POSITION AS TO REQUESTS 35 AND 40:**

First, to be clear, Ms. Nathan and TAG do not object to searching for and producing documents within their possession, custody, and control constituting non-privileged communications with Jed Wallace concerning Ms. Ghost, and have done so.

However, to the extent that these Requests seek documents concerning individuals or TAG clients other than Ms. Ghost, the Requests are wholly irrelevant for the same reasons detailed above in response to Ms. Ghost's position as to Request Nos. 32, 33, 34, 36, 37 concerning discovery aimed at alleged involvement in other websites. Accordingly, that response is incorporated here by reference. There is simply no possible relevance of alleged involvement in

other websites, as such is irrelevant to whether Ms. Nathan or TAG were involved in the creation of the Ghost Websites or Ms. Nathan and TAG's subjective belief as to the content of the Ghost Websites as required for actual malice.

Dated: August 24, 2026

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By ______________________

CAMILLE M. VASQUEZ
SAMUEL A. MONIZ
Attorneys for Plaintiffs and Cross-Defendants
AMANDA GHOST, GREGOR CAMERON,
and VINCE HOLDEN

Dated: August 24, 2026

Respectfully submitted,

MEISTER SEELIG & SCHUSTER PLLC

By /s/ Richard T. Lobas

MITCHELL SCHUSTER
KEVIN A. FRITZ
RICHARD T. LOBAS
Attorneys for Defendants MELISSA NATHAN
and THE AGENCY GROUP PR LLC

PROOF OF SERVICE

**Amanda Ghost, et al. v. Rebel Wilson**
**Case No. 24STCV17314**

STATE OF CALIFORNIA, COUNTY OF ORANGE

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Orange, State of California. My business address is 650 Town Center Drive, 10th Floor, Costa Mesa, CA 92626-1993.

On August 25, 2026, I served true copies of the following document(s) described as **MOTION TO COMPEL FURTHER RESPONSES TO THIRD SET OF REQUESTS FOR PRODUCTION TO THE AGENCY GROUP PR, LLC; JOINT DISCOVERY DISPUTE STATEMENT** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address CSuda@sheppard.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 25, 2026, at Costa Mesa, California.

Casey Suda
Casey Suda

**SERVICE LIST**
**Amanda Ghost, et al. v. Rebel Wilson**
**Case No. 24STCV17314**

| | |
|---|---|
| Allyson Thompson<br>Melody A. Kramer<br>HART KIENLE PENTECOST<br>4 Hutton Centre Drive, Suite 900<br>Santa Ana, CA 92707-8713<br>Telephone: (714) 432-8700<br>Email: athompson@hkplawfirm.com<br>mkramer@hkplawfirm.com<br>rfernandez@hkplawfirm.com | Attorneys for Defendant and Cross-Complainants REBEL WILSON and CAMP SUGAR PRODUCTIONS PTY LTD |
| Michael B. McClellan<br>C. Kendie Schlecht<br>NEWMEYER & DILLION LLP<br>895 Dove Street, Second Floor<br>Newport Beach, California 92660<br>Telephone: (949) 854-7000<br>Facsimile: (949) 854-7099<br>Email: Michael.McClellan@ndlf.com<br>Kendie.Schlecht@ndlf.com | Attorneys for Specially Appearing Cross-Defendant AI FILM PRODUCTION LTD. |
| Tom Clare<br>Camilla J. Hundley<br>Jonathan Reuvane Kaiman<br>CLARE LOCKE LLP<br>10 Prince Street<br>Alexandria, Virginia 22314<br>Telephone: (202) 628-7440<br>Facsimile: (202) 478-0475<br>Email: tom@clarelocke.com<br>camilla@clarelocke.com<br>jon.kaiman@clarelocke.com<br>page@clarelocke.com | Attorneys for Specially Appearing Cross-Defendant AI FILM PRODUCTION LTD. |
| Mark B. Chassman<br>Ana Vásquez<br>MEISTER SEELIG & SCHUSTER LLP<br>1250 Sixth Street, Suite 403<br>Santa Monica, CA 90401<br>Telephone: (310) 929-7192<br>Facsimile: (310) 929-7627<br>Email: mbc@mss-pllc.com<br>acv@mss-pllc.com<br>msantos@mss-pllc.com | Attorneys for Cross-Defendants MELISSA NATHAN and THE AGENCY GROUP PR, LLC |

Mitchell Schuster
Richard T. Lobas
Kevin A. Fritz
MEISTER SEELIG & SCHUSTER PLLC
125 Park Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 655-3500
Email: ms@mss-pllc.com
rtl@mss-pllc.com
kaf@mss-pllc.com

Attorneys for Cross-Defendants MELISSA NATHAN and THE AGENCY GROUP PR, LLC

Journal Technologies eFiling Portal

# Court Reservation Receipt

## Reservation

| | |
|---|---|
| Reservation ID:<br>581988827149 | Status:<br>RESERVED |
| Reservation Type:<br>Motion to Compel Further Discovery Responses | Number of Motions:<br>1 |
| Case Number:<br>24STCV17314 | Case Title:<br>AMANDA GHOST, AN INDIVIDUAL, et al. vs REBEL WILSON, AN INDIVIDUAL |
| Filing Party:<br>Amanda Ghost (Cross-Defendant) | Location:<br>Stanley Mosk Courthouse - Department 506 |
| Date/Time:<br>May 27th 2027, 8:30AM | Confirmation Code:<br>CR-GUF8NYFSGK49DR5DK |

## Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Motion to Compel Further Discovery Responses | 0.00 | 1 | 0.00 |
| TOTAL | | | **$0.00** |

## Payment

| | |
|---|---|
| Amount:<br>$0.00 | Type:<br>NOFEE |

< Back to Main

Print Page

Copyright © Journal Technologies, USA. All rights reserved.